# Rosner Moscow & Napierala, LLP
ATTORNEYS AT LAW

THREE NEW YORK PLAZA - 14TH FLOOR
NEW YORK, NEW YORK 10004-2442
(212) 785-2577
TELEFAX: (212) 785-5203

BRIAN ROSNER, ESQ.
JOHN W. MOSCOW, ESQ.
NATALIE A. NAPIERALA, ESQ.

HEATHER J. HAASE, ESQ.*
TIFFANY E. CALE, ESQ.**
JACK A. BLUM, ESQ.***
  OF COUNSEL

*Also Admitted in TX
**Also Admitted in CA and NJ
***Admitted in DC



April 14, 2005

*Via Hand Delivery*
Honorable Shira A. Scheindlin
United States District Judge
  for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Rom 1620
New York, NY 10007-1312

      Re:    *U.S. Commodity Futures Trading Commission v. Richmond Global Associates, LLC, Richmond Global Director, LLC, Richmond Global MCA, LLC, Richmond Global Managed Account, LLC, Richmond Global, Ltd., RG Group Holdings, LLC, Vincenzo Danio, Joseph Pappalardo, Ronald Turner, and Miron Vinokur*, 05 CV 2181 (S.D.N.Y.) (S. Scheindlin)

Dear Judge Scheindlin:

      Enclosed please find the Receiver's First Request for Compensation, which the Receiver submits pursuant to Paragraph VIII of the *ex parte* statutory restraining order (the "Order") entered on February 16, 2005 in the above-referenced matter. The First Request for Compensation covers services provided between February 17, 2005 and March 31, 2005.

      The Request for Compensation includes hourly billing for services rendered. Due to the public-service nature of this appointment, the Receiver has agreed to waive his hourly rate as

well as any receivership fee.[1] The Receiver's law firm, Rosner Moscow & Napierala, LLP (the "Law Firm"), will bill at rates that are substantially lower than those rates the Law Firm ordinarily charges its private clients. The Receiver's expert has agreed to a rate far below that of other experts in the field ($200 per hour).

The Law Firm is cognizant of the need to conserve receivership funds and will strive to minimize Receivership costs and expenses. We expect that the Law Firm's experience will reduce Receivership expenses.[2] The Receiver has relationships with most of the relevant banking and financial institutions, and has created many of the documents – such as subpoenas, letters to clients, vendors and banks, and expert reports – required to administer this Receivership. From prior experience, the Law Firm is familiar with the processes of liquidation, investigation and distribution, and the legal issues that are likely to arise in connection therewith.

I.  **Liquidation of Premises**

   A.  *The Richmond Global Premises*

The Richmond Global premises, located at 106 New Dorp Plaza 2B, Staten Island, New York, were liquidated and closed on February 17, 2005. On that date, the Receiver changed the locks, both to the outside and to the inside doors, at the premises and secured the defendants' books and records. Having kept guards at the location until the next day, the Receiver immediately boxed up, moved, and stored, for a nominal charge, computers, computer hard drives and 36 boxes of documents at a Long Island storage facility, and has retained approximately 10 boxes of documents at the Law Firm premises.[3]

Based on conversations with law enforcement personnel, the Receiver hired T&M Protection Resources to guard the premises until the documents and computers were secured.

The Receiver has also learned that, in violation of the Order, the defendants' landlord, Frank DiMattina, changed the locks, illegally gained access to the premises and discarded furniture. The Receiver has corresponded with Mr. DiMattina's counsel and may move the Court for sanctions and an order restraining him from further violations of the Order. Copies of related correspondence are enclosed herewith.

---

[1] In addition to payment of legal fees and reimbursement of expenses, equity receivers often receive a "receivership fee." A receivership fee is usually calculated as a percentage of the assets under receivership management.

[2] Honorable Gerard Lynch and Honorable George B. Daniels, United States District Judges for the Southern District of New York, have appointed members of the Law Firm to act as Receivers of other foreign exchange companies.

[3] The defendants' books and records are available for the defendants' and/or their counsel's review and copying.

The Receiver has retrieved and reviewed the Defendants' mail received from the closing of the premises to and including the middle of March 2005. With respect to mail received after that date, the Receiver has notified the relevant post offices that the Defendants' mail should be returned to the respective senders. Additionally, the Receiver has corresponded with all known vendors notifying them that they should immediately cease providing services to the defendants.

The Receiver is also assisting a former employee in obtaining unemployment benefits and continued healthcare coverage.

## II.     The Defendants' Former Customers

The receivership has been in contact with former customers concerning the Receiver's investigation, the status of the pending civil and criminal suits, and asset allocation. Also, to reconcile Richmond Global bank and client accounts, we have contacted former customers to request specific deposit and withdrawal information.

The Receiver recently sent an introductory letter, along with 1099B forms previously prepared by Richmond Global, to over 200 customers. A copy of the Receiver's March 30, 2005 letter is enclosed herewith.

## III.    Receiver's Expert

The Receiver has retained Joseph Merlino, an expert in foreign currency trading, who will investigate the Defendants' allegedly fraudulent trading practices, assess clients' deposits, withdrawals, profits and losses, prepare a report of his findings and opinions, and formulate equitable proposed asset allocation plans.

Mr. Merlino has acted as the Law Firm's expert in two prior cases involving foreign exchange companies that were placed into receivership. As a result, Mr. Merlino has specific experience in researching and analyzing organizations similar to those at issue here. Moreover, Mr. Merlino was employed in the foreign exchange industry for more than thirty years, and has held senior positions with a number of well-respected banking and financial institutions. His professional experience includes actively trading foreign currency, supervising large currency trading groups, and directly managing and marketing customer relationships. He has also assisted in establishing and monitoring operational procedures required by internal and external regulatory authorities.

## IV.    Restrained Funds

The Receivership continues to identify the defendants' assets, which may be held in the form of cash, escrow accounts, margin accounts held nominally for customer trading, IRA accounts and real property.

The Receiver has communicated with numerous banking and financial institutions to inform such institutions about the relevant orders entered in these cases, and to direct them to freeze assets pending the Receiver's further investigation. Once the Receiver has investigated

such assets, the Receiver will direct that these assets be transferred to an interest-bearing Receivership account.

As of April 7, 2005, the Receiver has restrained and requested a transfer of a total of $314,000 to the receivership account. This figure includes assets located outside of the United States.

The Receiver continues to search for the defendants' assets. To date, the Receiver has issued numerous subpoenas to banks, individuals, and other third parties, nearly all of whom have provided the Receiver with requested information. The Receiver is using this information to locate and recover additional assets and to assist Mr. Merlino with the account reconciliation necessary for creating asset allocation plans and the expert report.

### V. Individual Defendants' Living Expenses and Payment of Legal Fees

Despite diligent efforts, the Receiver has not restrained any of the individual defendants' assets (either real or personal).[4] In short, there are presently no restrained funds available to allocate to the individual defendants for living expenses and/or attorneys' fees.

### VI. Trading Analysis

The Receiver and Mr. Merlino are currently reviewing and analyzing Richmond Global's books and records, as well as those of its related entities. The receivership is also interviewing former employees, customers, futures commission merchants, clearing agents and other third-parties to determine the reasons underlying the pattern of trading losses. The receivership is also reconstructing historical information about customers' trading accounts, including account deposits, withdrawals and equity. The Receiver has received invaluable assistance from a former employee who assisted the Receiver's expert in analyzing computer data and various client documents.

### VII. Asset Allocation Plans

Once client account activity is fully reconstructed and verified, the Receiver and Mr. Merlino will jointly propose to the Court various asset allocation plans for the restrained funds. After approval of a plan, notice to the clients, an opportunity for clients' objections, and the Court's possible modifications to the approved plan, the Receiver will undertake an asset allocation of the restrained funds to former Richmond Global customers recorded in the defendants' books and records.

---

[4] As of February 16, 2005, the individual defendants' bank accounts contained either zero or negative balances.

\*\*\*

Enclosed for the Court's review and approval are the Receiver's and Mr. Merlino's detailed bills, which include disbursements. Should these bills be approved for payment, such payment will be made from the Receiver's operating account.

The First Request for Compensation is:

• Receiver: $42,785.54; and

• Joseph Merlino: $14,270.00

For the Court's convenience, this letter contains an approval line to authorize payment of the Receiver's First Request for Compensation. I am pleased to answer any questions the Court may have regarding the foregoing or the enclosed bills.

Very truly yours,

Natalie A. Napierala,
Counsel to the Receiver,
John Moscow

encls.

cc: Counsel of Record

Payment of the Receiver's First Request for Compensation is approved in the amounts submitted.

SO ORDERED, at New York, New York, this ___ day of _____, 2005

_____
UNITED STATES DISTRICT JUDGE