UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x
U.S. COMMODITY FUTURES TRADING      :
COMMISSION,                                                    :
                      Plaintiff,               :
      v                                                                  
                                                     :    05 CV 2181 (SAS)
RICHMOND GLOBAL ASSOCIATES, LLC,  :
et. al.                                                               :    **PLAINTIFF'S MOTION**
                                                     :    **FOR SUMMARY JUDGMENT**
                   Defendants.              :    **AGAINST DEFENDANTS**
                                                   :    **JOSEPH PAPPALARDO,**
                                                   :    **RONALD TURNER, AND**
                                                   :    **MIRON VINOKUR**
                                                   :
---------------------------------------------------------x

      Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, plaintiff U.S. Commodity Futures Trading Commission ("Commission") respectfully moves for entry of summary judgment against defendants Joseph Pappalardo, Ronald Turner, and Miron Vinokur (collectively "the summary judgment Defendants") and in favor of the Commission with respect to all claims in the Commission's Complaint against the summary judgment Defendants.

      In support of its motion, the Commission submits herewith its Memorandum of Law, Statement of Material Facts pursuant to Local Rule 56.1, the Declaration of Karin N. Roth, the Declaration of Natalie A. Napierala, the Affidavit of Joseph Merlino, and the exhibits attached thereto.

      WHEREFORE, the Commission respectfully requests that its motion for summary judgment be granted.

Respectfully submitted,

Dated: January 5, 2007
New York, New York

U.S. COMMODITY FUTURES TRADING
COMMISSION

*[signature]*
Karin N. Roth [KR 2669]
David MacGregor [DM 1633]
Division of Enforcement
U.S. Commodity Futures Trading Commission
140 Broadway, 19th Floor
New York, New York  10005
Ph. (646) 746-9764
Fax (646) 746-9940

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> RICHMOND GLOBAL ASSOCIATES, L.L.C., et al., <br><br> Defendants. | Case No. 05-CV-2181 (SAS) |

## AFFIDAVIT OF JOSEPH MERLINO IN
## SUPPORT OF THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

STATE OF NEW YORK    )
                     ) ss:
COUNTY OF NEW YORK   )

Joseph Merlino being duly sworn declares as follows:

1. I was employed in the foreign exchange industry for more than thirty years, and have held many senior positions with a number of well-respected banking and financial institutions. My professional experience ranges from actively trading currencies, to supervising large currency trading groups and marketing desks, to directly managing and marketing client accounts. I have also assisted in establishing and monitoring operational and audit procedures required by internal and external regulatory authorities.

2. I am familiar with this proceeding and have personal knowledge of the facts set forth herein.

3. The Receiver appointed in this case, John W. Moscow Esq., retained me to analyze the books and records of Richmond Global Associates, L.L.C., Richmond Global

Director L.L.C., Richmond Global MCA, L.L.C, Richmond Global Managed Account, L.L.C., Richmond Global, Ltd., R.G. Group Holdings, L.L.C., Vincenzo Danio, Joseph Pappalardo, Ronald Turner and Miron Vinokur (collectively referred to as "Defendants" or "RGA").

4. Some of the books and records and computer data that I reviewed were obtained from Defendants' premises.

5. Third-parties have also produced additional information in compliance with requests made, and subpoenas served, by the Receiver.

6. After a comprehensive analysis of Defendants' books, records and computer data, as well as conversations with former RGA traders and clients, I reached the following conclusions.

7. The Complaint alleges that RGA solicited more than $3.5 million. I found that RGA solicited approximately $3.86 million in client funds.

8. The $3.86 million RGA solicited is comprised of approximately $3.084 million solicited for foreign exchange trading, $226,000 solicited for real estate investment, and $550,000 solicited for loans made to RGA by clients.

9. RGA foreign exchange investment clients had reported losses of approximately $1.7 million (or 55% of their total investments), and no client profits were reported in Defendants' books and records. My conversations with clients confirm these findings.

10. With respect to the foreign exchange investment clients, the majority of client losses were caused by excessive and not fully disclosed commission and fee charges.

11. In addition, bank records indicate that Defendants paid salaries, commissions to themselves and other introducing brokers, and other operating expenses from client funds.

12. Also, bank records and Defendants' notes indicate that Defendants used client funds to make loans to themselves.

13. RGA also had three real estate investment clients.

14. These clients do not appear in any of Defendants' computer data. Thus, I obtained initial information about them from handwritten notes discovered in Defendants' files; I confirmed this information by comparing the notes with Defendants' bank statements.

15. Based upon my investigation, it appears that only three clients participated in the real estate investment program.

16. I did not identify any investments made on behalf of the real estate clients.

17. RGA also had approximately 40 loan clients, who loaned RGA a total of more than $550,000 purportedly for branch expansion and business operations.

18. RGA's books and records list these loan clients as "Investors in Corporation."

19. I was unable to identify these funds being used by Defendants for any branch expansion or enhancement of business operations as originally marketed to the loan clients by Defendants.

20. On November 21, 2005, the Court entered an order providing that loan clients should not be included in the proposed asset allocation plans.

21. Handwritten and printed scripts discovered among Defendants' books and records, as well as discussions with clients, suggest that Defendants made false promises that clients would receive high rates of return on their investments.

22. I prepared numerous spreadsheets detailing RGA's client account activity.

23. I prepared these spreadsheets at the request of the Receiver and his counsel.

24. These spreadsheets identify all RGA clients and will assist in the distribution of Defendants' restrained assets to these clients.

25. I also prepared spreadsheets at the request of the United States Attorney's Office, the Probation Office of the Eastern District of New York, and Defendant Miron Vinokur's civil and criminal counsel.

26. These spreadsheets are designed to assist in restitution in the criminal matters.

27. All of the spreadsheets include, among other things, total investments, total withdrawals, total losses resulting from trading, which includes commissions and fees, remaining equity and amounts owed by RGA to the clients.

28. The "amounts owed" is comprised of total investments minus withdrawals, and does not include the results of trading activity.

29. I prepared a separate spreadsheet detailing information about Defendant Miron Vinokur's foreign exchange clients.

30. Mr. Vinokur was directly responsible for soliciting approximately $380,500 in foreign exchange client funds and his clients withdrew a total of $110,107 of their funds.

31. As a result, my findings indicate that Mr. Vinokur's clients are owed $270,393.

32. I prepared a separate spreadsheet detailing foreign exchange clients who had active accounts during Defendant Joseph Pappalardo's employment with RGA.

33. During this time, RGA solicited approximately $2,586,325 in foreign exchange client funds and clients withdrew a total of $1,058,525 of their funds.

34. As a result, my findings indicate that Mr. Pappalardo's RGA clients are owed $1,527,800.

35. I did not prepare a separate spreadsheet for Defendant Ronald Turner because records indicate that he was employed by RGA during the approximate period of time that Defendant Pappalardo was employed by RGA.

36. My findings indicate that Mr. Turner's RGA clients are owed $1,527,800.

37. The amounts Defendants owe to the foreign exchange clients set forth in paragraphs 31, 34, and 36 *supra* exclude amounts owed to the real estate investment clients ($180,693) and loan investment clients ($550,275).

Respectfully submitted.

*Joseph Merlino*
Joseph Merlino

SUBSCRIBED and SWORN TO BEFORE ME by Joseph Merlino on this 4 day of January 2007, to certify which witness my hand and official seal.

Tiffany E. Cole
Notary Public State Of New York
No. 02CA6153154
Qualified In New York County
Expires September 25, 2010

Notary Public, State of New York

My Commission Expires: 9/25/2010

Tiffany Cole
Print or Type Notary's Name

5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>RICHMOND GLOBAL ASSOCIATES, L.L.C., et al.,<br><br>Defendants. | Case No. 05-CV-2181 (SAS) |

**DECLARATION OF NATALIE A. NAPIERALA**

Natalie A. Napierala, being duly sworn, deposes and says:

1. I am a partner with the law firm of Rosner Moscow & Napierala, LLP.

2. I have personal knowledge of the facts set forth below.

3. On February 16, 2005, the United States Commodity Futures Trading Commission ("CFTC"), Plaintiff in the above-captioned action, filed a civil complaint against Richmond Global Associates. L.L.C., Richmond Global Director L.L.C., Richmond Global MCA, L.L.C, Richmond Global Managed Account, L.L.C., Richmond Global, Ltd., R.G. Group Holdings, L.L.C., Vincenzo Danio, Joseph Pappalardo, Ronald Turner and Miron Vinokur.

4. On the same date, this Court appointed my partner, John Moscow, Esq., to act as a temporary Receiver for all of the Defendants in this case.

5. Since that time, this firm has acted as his counsel.

6. The Defendant entities previously operated out of offices located at 106 New Dorp Plaza, Suite 2B, Staten Island, New York 10306 (the "New Dorp Premises").

7. On February 17, 2005, Mr. Moscow secured the New Dorp Premises by, among others, changing the locks.

8. On February 17 and February 18, 2005, Mr. Moscow and other attorneys and paralegals with this firm assembled and organized the Defendants' documents and computer hard-drives and placed the majority of the documents and the computer hard-drives in a locked storage facility located in Long Island City, New York: those documents that were not placed in storage are maintained on the law firm premises.

9. Between February 17, 2005 and the present, only attorneys and paralegals with my firm, my firm's foreign currency exchange expert, and I have had access to these documents and hard drives.

10. On occasion, representatives of the United States Attorney's Office and defense counsel have also been given access to these documents and hard drives, but always in my, or my expert's, presence.

11. Also, once the Court gave approval, representatives of the CFTC were given access to these documents and hard drives, but, again, always in my, or my expert's, presence.

Dated: January 3, 2007
New York, New York

_____
Natalie A. Napierala