UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------x
U.S. COMMODITY FUTURES                            :
TRADING COMMISSION.                               :
                  Plaintiff.    :
      v.                                          :
                            :
RICHMOND GLOBAL ASSOCIATES, LLC,                  :      05 CV 2181  (SAS)
*et. al.*                                         :
                Defendants.   :
                            :
--------------------------------------------------------------x

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANTS JOSEPH PAPPALARDO. RONALD TURNER AND MIRON VINOKUR

U.S. COMMODITY FUTURES TRADING
COMMISSION

Karin N. Roth [KR 2669]
David W. MacGregor [DM 1633]
Division of Enforcement
140 Broadway. 19th Floor
New York. New York 10005
(646) 746-9764
(646) 746-9940 (facsimile)

## TABLE OF CONTENTS

TABLE OF AUTHORITIES............................................................................................i

Introduction.......................................................................................................... 1

Procedural Background ....................................................................................... 1

    The Related Criminal Indictment and Guilty Pleas ................................... 3

Undisputed Facts.................................................................................................. 5

    Fraudulent Conduct..................................................................................... 5

    Pappalardo and Turner Controlled the Richmond Global Entities ........... 7

Legal Analysis...................................................................................................... 7

    Standard for Summary Judgment................................................................ 7

    Admissions of Fraudulent Conduct by Pappalardo and Vinokur in their Criminal Allocutions 8

    Admissions by Pappalardo and Turner as a Result of their Failure to Respond to the Plaintiff's Requests for Admissions.................................................................................... 10

    Pappalardo, Turner and Vinokur Violated Section 4b(a)(2)(C)(i) and (iii) of the Act............. 10

    Pappalardo and Turner are also liable as Controlling Persons ................. 13

Relief Requested ................................................................................................. 15

    Entry of a Permanent Injunction ............................................................... 15

    Imposition of a Civil Monetary Penalty.................................................... 17

    Restitution .................................................................................................. 18

    Disgorgement ............................................................................................. 20

Conclusion .......................................................................................................... 20

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .................................................. 11

*Balderman v. United States Veterans Admin.*, 870 F.2d 57 (2d Cir. 1989). ................................... 11

*CFTC v. Baragosh*, 278 F.3d 319 (4th Cir. 2002) ......................................................... 16

*CFTC v. American Bd. Of Trade*, 803 F.2d 1242 (2d Cir. 1986) ........................................... 22, 24

*CFTC v. AVCO Financial Corp.*, 28 F. Supp.2d 104 (S.D.N.Y. 1998). *aff'd in relevant part sub nom, CFTC v. Vartuli*. 228 F.3d 94 (2d Cir. 2000) ................................................. 14, 15. 17. 22

*CFTC v. British American Commodities Corp.*, 560 F.2d 135, (2d Cir. 1977), *cert. denied*. 438 U.S. 905 (1978) ................................................................... 19

*CFTC v. Cheung*. No. 93 Civ. 5598, 1994 WL 583169 (S.D.N.Y. 1994) ..................................... 19

*CFTC v. Co Petro Marketing Group, Inc.*, 680 F.2d 566 (9th Cir. 1981) ................................... 21

*CFTC v. Hunt*, 591 F.2d 1211 (7th Cir. 1979), *cert. denied*, 442 U.S. 921 ............... 19, 20, 21, 22

*CFTC v. Muller*, 570 F.2d 1296 (5th Cir. 1978) .......................................................... 20

*CFTC v. Vartuli*, 228 F.3d 94 (2d Cir. 2000) ........................................................... 16

*D'Amico v. City of New York*. 132 F.3d 145 (2d Cir. 1998), *cert. denied*, 524 U.S. 911 (1998). 11

*Do v. Lind-Waldock & Co.*, [1994-1996 Transfer Binder] Comm. Fut., L. Rep. (CCH) 26,516 (CFTC Sept. 27, 1995) ................................................................... 15

*Donohoe v. Consolidated Operating & Production Corp.*. 982 F.2d 1130 (7th Cir. 1992) ......... 17

*Donovan v. Carls Drugs Co.*, 703 F.2d 650 (2d Cir. 1983) .............................................. 13

*Drexel Burnham Lambert Inc. v. CFTC*, 850 F.2d 742 (D.C. Cir. 1988) .............................. 15. 24

*Gelb v. Royal Global Ins. Co.* 798 F.2d 38 (2d Cir. 1986) ............................................ 12

*General Elec. Co. v. New York State Dep't of Labor*, 936 F.2d 1448 (2d Cir. 1991) ................. 11

*Hammond v. Smith Barney, Harris Upham & Co.*, [1987-1990 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 24.617 (CFTC March 1, 1990) ................................................. 15

*Healthfirst Inc. v. Medco Health Solutions, Inc.,* 2006 U.S. Dist. LEXIS 90785 (S.D.N.Y. 2006) ................................................................................................................................... 13

*Hecht v. Bowles*, 321 U.S. 331 (1944) ........................................................................ 20

*Heyman v. Commerce & Indus. Ins. Co.,* 524 F.2d 1317 (2d Cir. 1975) ...................... 11

*In re Apache Trading Corp.,* [1990-92 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 25, 252 (CFTC 1992) ................................................................................................................ 17

*In re Glass,* [1996-1998 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 27,337 (CFTC 1998).. 17

*In re Spiegel.* [1987-90 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 24, 103  (CFTC 1988) . 17

*Investigations Officer v. Paccione,* 2002 U.S. Dist. LEXIS 791 (S.D.N.Y. 2002). ...................... 12

*McLaughlin v. Richland Shoe Co.,* 486 U.S. 128 (1988) ................................................. 13

*Miller v. CFTC.* 197 F.3d 1227 (9th Cir. 1999) ........................................................... 22

*Monieson v. CFTC,* 996 F.2d 852 (7th Cir. 1993) ........................................................ 17

*Nat'l Union Fire Ins. Co., v. Sun,* 1997 U.S. App. LEXIS 6174 (2d Cir. 1997) .......................... 12

*Passo v. United States Postal Serv.,* 631 F. Supp. 1017 (S.D.N.Y. 1986). ................... 11

*Porter v. Warner Holding Co.,* 328 U.S. 395 (1946) ..................................................... 21

*Reddy v. CFTC,* 191 F.3d 109 (2d Cir. 1999) .............................................................. 21

*Saxe v. E.F. Hutton & Co., Inc.,* 789 F.2d 105 (2d Cir. 1986) ...................................... 15

*SEC v. 800America.com Inc.,* 2006 U.S. Dist. LEXIS 85571 (S.D.N.Y. 2006) ........................... 12

*SEC v. Batterman,* 2002 U.S. Dist. LEXIS 18556 (S.D.N.Y. 2002) ............................... 13

*SEC v. Drexel Burnham Lambert.* 956 F. Supp. 503 (S.D.N.Y. 1997) ......................... 23

*SEC v. Dynasty Fund Ltd,* 121 Fed. Appx.  410 (2d Cir. 2005) .................................... 13

*SEC v. First Jersey Sec., Inc..* 101 F.3d 1450 (2d Cir. 1996). *cert. denied* 522 U.S. 812 (1997) 22

*SEC v. Grossman,* 887 F. Supp. 649 (S.D.N.Y. 1995) ................................................. 12

*SEC v. Holschuh.* 694 F.2d 130 (7th Cir. 1980) ........................................................... 20

SEC v. Management Dynamics. Inc.. 515 F.2d 801 (2d Cir. 1975).........................................19, 20

*SEC v. Monarch Funding Crop.* 1996 WL 348209 (S.D.N.Y. 1996). .........................................12

*SEC v. Youmans*, 729 F.2d 413 (6th Cir.), *cert. denied*, 469 U.S. 1034 (1984) ...........................20

*U.S. v. Corr*, 543 F.2d 1042 (2d Cir. 1976) ..................................................................................17

*United States v. Podell*, 572 F.2d 31 (2d Cir. 1978)......................................................................12

*Williams v. Krieger*, 61 F.R.D. 142 (S.D.N.Y. 1973)....................................................................13

**Statutes**

Section 13(b) of the Act. 7 U.S.C. § 13(c)(b) ....................................................................16, 17, 19

Section 4b(a)(2)(C)(i) of the Act, 7 U.S.C. § 6b(a)(2)(C)(i) ......................................13, 14, 16, 22

Section 4b(a)(2)(C)(iii) of the Act. 7 U.S.C. § 6b(a)(2)(C)(iii)..................................13, 14, 16, 22

Section 6c(c) of the Act, 7 U.S.C. § 13a-1 ......................................................................................20

Section 6c(d)(1) of the Act, 7 U.S.C. § 13a-1(d)(1) .......................................................................21

**Rules**

Local Rule 56.1 of the Southern District of New York .....................................................................4

Rule 36(a) of the Federal Rules of Civil Procedure....................................................................6, 13

Rule 56(a) of the Federal Rules of Civil Procedure.........................................................................4

**Regulations**

Section 143.8(a)(1)(ii) of the Commission's Regulations, 17 C.F.R. §143.8(a)(1)(ii) ................21

## Introduction

Plaintiff, the U.S. Commodity Futures Trading Commission (the "Commission") submits this memorandum in support of its Motion for Summary Judgment against defendants Joseph Pappalardo ("Pappalardo"), Ronald Turner ("Turner"), and Miron Vinokur ("Vinokur") pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, and Local Rule 56.1. All material facts supporting the allegations in the Commission's Complaint have been conclusively admitted by Pappalardo, Turner and Vinokur. These facts establish that Pappalardo, Turner and Vinokur violated the anti-fraud provisions of the Commodity Exchange Act (the "Act"), 7 U.S.C. § 1 *et se..* and that Pappalardo and Turner were also controlling persons of the corporate defendants collectively known as the Richmond Global Entities[1] and as such they are liable for the fraud committed by the corporate defendants. The Commission therefore should be awarded summary judgment against Pappalardo, Turner and Vinokur for their respective violations of the Act. As sought in the Complaint, the Court should also issue an Order permanently enjoining Pappalardo, Turner and Vinokur's unlawful acts and practices, impose a civil monetary penalty, and require Pappalardo, Turner and Vinokur to pay restitution to their defrauded customers.

## Procedural Background

On February 16, 2005, the Commission commenced this action under seal with the filing of the Complaint alleging that the defendants defrauded retail customers in violation of the Act

---

[1] The Complaint named as defendants Richmond Global Associates, LLC, Richmond Global Director. LLC. Richmond Global MCA, LLC. Richmond Global Managed Account. LLC. Richmond Global, Ltd., RG Group Holdings, LLC (collectively the "Richmond Global Entities"), all corporations who held themselves out to the public as a unitary financial services company that managed funds for retail customers in the foreign exchange ("forex") markets.

1

and the Commission's Regulations promulgated thereunder (the "Regulations").[2] Also on

February 16, 2005, the Court granted the Commission's application for an *ex parte* statutory

restraining order freezing Defendants' assets, prohibiting Defendants from destroying or altering

any books, records or other documents and appointing a temporary receiver and an order to show

cause why a preliminary injunction should not be entered ("SRO").[3] The Court's SRO remains

in effect.[4] This matter was unsealed on February 23, 2005.[5]

In March 2005, Pappalardo, Turner, and Vinokur filed single-sentence Answers to the

Complaint generally denying the allegations therein.[6] All other Defendants failed to answer the

Complaint, and in April 2005, the Clerk of the Court entered orders holding the remaining

defendants in default.[7]

On April 13, 2005, the Court ordered the Clerk to place the case on the suspense docket.[8]

On January 9, 2006, the Court ordered the case removed from the suspense docket.[9] This Order

also required the non-defaulting parties to propose a discovery schedule and permitted the

Commission access to the Defendants' books and records being maintained by the Court-

appointed Receiver.[10] On March 24, 2006, the Court issued a Joint Discovery Order that, *inter*

---

[2] Declaration of Karin N. Roth dated January 4, 2007 ("Roth Decl.") at ¶ 2. In its Complaint, the Commission alleged that the defendants fraudulently solicited retail customers by, among other things, making false promises of high returns, failing to disclose hidden commission charges, issuing account statements that falsely characterized the undisclosed commissions as trading losses, making false representations regarding the risk of forex trading as well as their experience and past performance in trading forex, and misappropriating customer funds.

[3] Roth Decl. at ¶2.

[4] *Id.*

[5] *Id.*

[6] Roth Decl. at ¶ 3.

[7] Roth Decl. at ¶ 4.

[8] Roth Decl. at ¶ 5.

[9] *Id.*

[10] *Id.*

*alia*. required that all dispositive motions be served by January 5, 2007.[11]

On April 27. 2006. the Commission served defendants Pappalardo and Turner with requests for admissions pursuant to Fed. R. Civ. P. 36(a).[12]  Pappalardo and Turner failed to respond to the Commission's requests for admissions.[13]

The Related Criminal Indictment and Guilty Pleas

In an indictment filed on February 10, 2005 in the U.S. District Court for the Southern District of New York, Pappalardo, Turner and Vinokur, along with defendant Vincent Danio ("Danio"), were charged with one count of conspiracy to commit mail fraud and wire fraud, and four counts of wire fraud in connection with the same fraudulent conduct that is the basis for the Complaint in the present case.[14]

Vinokur pled guilty to Count One of the criminal indictment against him on November 2, 2005 in a hearing before the Honorable Barbara S. Jones during which he admitted to having defrauded customers of the Richmond Global Entities.[15]  On March 3. 2006. Judge Jones sentenced Vinokur to a prison term of one year and one day. three years of supervised release,

---

[11] Roth Decl. at ¶ 6.

[12] Roth Decl. at ¶ 7.

[13] *Id.*

[14] Roth Decl. at ¶ 8.  Local Rule 56.1 Statement at ¶ 1.  *See* Indictment in *U.S. v. Danio, et al.*. Doc. No. 05 Cr. 157 (BSJ).  The Indictment charged that Pappalardo. Turner. Vinokur and Danio engaged in an illegal scheme to defraud customers who invested in the forex market through the Richmond Global Entities.  The Indictment further charged that to effectuate this scheme. Pappalardo. Turner. Vinokur and Danio made, or caused sales brokers to make. various misrepresentations to potential retail customers to induce them to invest with the Richmond Global Entities for the purpose of trading in the forex market and that they provided customers with false and fraudulent account statements that disguised commissions taken by the Richmond Global Entities as trading losses.  In addition, the Indictment charged that Pappalardo. Turner. Vinokur and Danio caused customer funds, in five distinct instances, to be improperly transferred from one of the Richmond Global Entities' clearing brokers to a Richmond Global bank account.  The indictment alleged that Pappalardo, Turner, Vinokur and Danio misappropriated approximately $981.500 of investors' funds.

[15] Roth Decl. at ¶ 9. Exh. C.  Local Rule 56.1 Statement at ¶ 3.

and an assessment of $100.[16] The restitution portion of Vikokur's sentence was suspended but "will become part of the special conditions of [Vinokur's] supervised release."[17] Vinokur is currently incarcerated.[18] His projected release date is April 11, 2007.[19]

On October 10, 2005. Pappalardo consented to transfer the pending criminal indictment against him to the U.S. District Court for the Eastern District of New York for plea and sentencing.[20] On June 28, 2006. Pappalardo pled guilty to Count One of the criminal indictment before the Honorable Cheryl L. Pollack, United States Magistrate Judge for the Eastern District of New York.[21] During this hearing. Pappalardo admitted to having defrauded customers of the Richmond Global Entities.[22] Pappalardo has yet to be sentenced for his criminally fraudulent conduct in connection with the Richmond Global Entities.[23]

On October 10, 2005. Turner consented to transfer the related criminal indictment against him to the U.S. District Court for the Eastern District of New York for plea and sentencing.[24] In the form filed with the Court consenting to transfer the case, Turner stated that he intended to plead guilty.[25] Further proceedings in Turner's criminal case have been sealed.[26]

---

[16] Roth Decl. at ¶ 10. Exh. D. Local Rule 56.1 Statement at ¶ 12.

[17] *Id.*

[18] Roth Decl. at ¶ 11. Exh. E. Local Rule 56.1 Statement at ¶ 13.

[19] *Id.*

[20] Roth Decl. at ¶ 12. The criminal case against Pappalardo was docketed in the Eastern District as 05 CR 868. *Id.*

[21] Roth Decl. at ¶ 13. Exh. F.

[22] *Id.* Local Rule 56.1 Statement at ¶ 11. At the same time Pappalardo pled guilty to the extortionate collection of a debt in an unrelated criminal matter entitled *U.S. v. Kuretski et al.*, 05 CR 059 (RJD) that was pending in the Eastern District of New York. Roth Decl. at ¶ 13, Exh. F.

[23] Roth Decl. at ¶ 14. Exh. G.

[24] Roth Decl. at ¶ 15. Exh. H. The criminal case against Turner was docketed in the Eastern District as 05 CR 810. Roth Decl. at ¶ 15. Exh. I.

[25] Roth Decl. at ¶ 15.

[26] Roth Decl. at ¶ 15, Exh. I.

4

Danio, who is in default in the present case, also plead guilty to Court One of the criminal indictment and admitted that he defrauded customers of the Richmond Global Entities.[27]

**Undisputed Facts**

Fraudulent Conduct

From at least March 2003 through February 2005, Pappalardo, Turner and Vinokur together with others solicited funds from customers purportedly to be used by the Richmond Global Entities for trading foreign currency ("forex") futures contracts.[28]  In so doing, Pappalardo, Turner and Vinokur made misrepresentations to attract customers to open accounts and to entrust funds to the Richmond Global Entities.[29]  Pappalardo, Turner and others under their control also referred potential customers to the Richmond Global Entities' website, which contained material misrepresentations of fact.[30]

Specifically, Turner and Pappalardo falsely represented to potential and actual customers that the Richmond Global Entities employed as many as twelve researchers and analysts and had between $10 and $12 million under management in the forex market.[31]  This was untrue.[32]  In addition, Turner and Pappalardo falsely represented to retail customers that the Richmond Global entities generated profits as high as 40% annually, and that they would, in the future, generate profits of 45% annually.[33]  This was untrue since the Richmond Global entities rarely generated any net profits for their customers.[34]  Turner and Pappalardo also falsely represented to Richmond Global entities' customers that money invested in the forex market was like money

---

[27] Roth Decl. at ¶ 16, Exh. K., Local Rule 56.1 Statement at ¶ 16.
[28] Local Rule 56.1 Statement at ¶¶ 6, 11, 20.
[29] Local Rule 56.1 Statement at ¶¶ 7, 11, 21.
[30] Local Rule 56.1 Statement at ¶¶ 28-29.
[31] Local Rule 56.1 Statement at ¶ 38.
[32] Local Rule 56.1 Statement at ¶ 39.
[33] Local Rule 56.1 Statement at ¶ 40.
[34] Local Rule 56.1 Statement at ¶ 41.

placed in a bank account when they knew that investments in the forex market were highly speculative and volatile.[35]

Turner, Pappalardo and Vinokur misrepresented to Richmond Global Entities' customers that stop-loss mechanisms were in place to limit trading losses.[36] No such limits were in place and they knew that the losses of the Richmond Global Entities' customers were far larger than were common in the forex industry.[37]

The Richmond Global Entities mailed account opening documents to potential customers.[38] Included with the account opening documents was a power of attorney authorizing the Richmond Global Entities to trade on behalf of, or for the benefit of, their customers.[39] *To* open a managed currency trading account, customers completed and signed account opening documents and sent them with their funds directly to the Richmond Global entities.[40] After receiving customers' funds, the Richmond Global Entities sent these funds, after deducting a disclosed 2% management fee, to one of three futures commission merchants ("FCMs"), after which the FCMs executed trades on behalf of the Richmond Global Entities' customers.[41] Then, at rates set by the Richmond Global Entities, the FCMs deducted additional commissions on executed transactions from the customer funds they held.[42] These commissions, which were never disclosed to customers and which ranged from approximately 16% to 39%, were then paid directly to the Richmond Global Entities.[43] In order to conceal the unauthorized commissions,

---

[35] Local Rule 56.1 Statement at ¶¶ 42-43.
[36] Local Rule 56.1 Statement at ¶¶ 6, 8, 44.
[37] Local Rule 56.1 Statement at ¶¶ 6, 8, 45.
[38] Local Rule 56.1 Statement at ¶ 31.
[39] Local Rule 56.1 Statement at ¶ 32.
[40] Local Rule 56.1 Statement at ¶ 33.
[41] Local Rule 56.1 Statement at ¶ 34.
[42] Local Rule 56.1 Statement at ¶ 35.
[43] Local Rule 56.1 Statement at ¶¶ 35 and 47.

Pappalardo, Turner and Vinokur issued false account statements to customers that disguised the commissions as trading losses.[44]

### Pappalardo and Turner Controlled the Richmond Global Entities

Pappalardo and Turner controlled the business activities of the Richmond Global Entities.[45]  Pappalardo was Vice President and Senior Account Manager of Richmond Global Associates and President and Senior Account Manager of Richmond Global Director.[46] Pappalardo or others under his control made misleading representations to potential retail customers over the telephone and through the mails and referred potential customers to the Richmond Global Entities' website which contained additional material misrepresentations.[47] Pappalardo was a signatory on Richmond Global Associates' bank accounts and considered himself an agent of the Richmond Global Entities.[48]

Turner was the President of Richmond Global Associates, was signatory on its bank accounts and was an agent of the Richmond Global Entities. [49]  Turner, or others under his control made misleading representations to potential retail customers over the telephone.[50] Turner or others under his control referred potential customers to the Richmond Global Entities' website which contained additional material misrepresentations.[51]

**Legal Analysis**

### Standard for Summary Judgment

The Commission is entitled to summary judgment where the court is convinced that there

---

[44] Local Rule 56.1 Statement ¶¶ 9, 11. 36, 37, and 48.
[45] Local Rule 56.1 Statement at ¶¶ 21. 28. 38, 40, 42, 44. 46 and 51.
[46] Local Rule 56.1 Statement at ¶ 11 and 25
[47] Local Rule 56.1 Statement at ¶¶ 11. 21 and 28.
[48] Local Rule 56.1 Statement at ¶¶ 26 and 27.
[49] Local Rule 56.1 Statement at ¶¶ 22-24.
[50] Local Rule 56.1 Statement at ¶ 21.
[51] Local Rule 56.1 Statement at ¶ 28.

are no genuine issues of material fact and when the law as applied to the undisputed facts, entitles the Commission to judgment as a matter of law.[52] A fact is material when its resolution would "affect the outcome of the suit under the governing law," and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."[53] Whether any disputed issue of fact exists is for the Court to determine.[54] The substantive law determines the facts which are material to the outcome of the litigation.[55]

The material facts which warrant entry of summary judgment in the Commission's favor are conclusively established by Pappalardo's and Vinokur's admissions in their criminal plea allocutions, and by the facts deemed admitted by Pappalardo and Turner's failure to respond to the Commission's requests for admissions.

<u>Admissions of Fraudulent Conduct by Pappalardo and Vinokur in their Criminal Allocutions</u>

Pappalardo and Vinokur have pled guilty to mail and wire fraud charges based on the same activities underlying the instant Complaint. When entering their guilty pleas, Pappalardo and Vinokur admitted that they defrauded customers of the Richmond Global Entities.

Specifically, Vinokur admitted, during his allocution, that from March 2003 to February 2005, he, along with others, defrauded customers of Richmond Global Associates, where he worked as a salesman.[56] Vinokur admitted that as a salesman, he solicited customers to invest in forex when he knew the representations made by him and others regarding the profits that potential customers could reasonably expect to make trading in the foreign currency markets, the

---

[52] *D'Amico v. City of New York*, 132 F.3d 145, 148 (2d Cir. 1998), *cert. denied*, 524 U.S. 911 (1998); *see Passo v. United States Postal Serv.*, 631 F. Supp. 1017, 1022 (S.D.N.Y. 1986).
[53] *General Elec. Co. v. New York State Dep't of Labor*, 936 F.2d 1448, 1452 (2d Cir. 1991), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[54] *Balderman v. United States Veterans Admin.*, 870 F.2d 57, 60 (2d Cir. 1989).
[55] *Anderson*, 477 U.S. at 250; *Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317, 1320 (2d Cir. 1975).
[56] Roth Decl. at ¶ 8, Exh. C, Vinokur Tr. at 14:18-21; Local Rule 56.1 Statement at ¶ 5.

risks involved in trading foreign currency, and that stop-loss mechanisms existed that would limit losses, were untrue.[57] Vinokur further admitted that he realized his conduct was wrong and illegal while he was defrauding customers of the Richmond Global Entities.[58]

During his plea allocution, Pappalardo admitted to providing customers of the Richmond Global Entities with "false and fraudulent accounts statements that disguised commissions taken by Richmond Global as trade losses. [He] also gave false information, minimizing the risk to induce investors. Meaning that when [he] was on the phone, [he] would lessen the risk and make it appear better than what it was."[59]

Because of their criminal pleas, Pappalardo and Vinokur are collaterally estopped from asserting that they did not commit the conduct alleged in the Commission's Complaint.[60] Their criminal convictions, and the facts admitted to during their plea allocutions, bind Pappalardo and Turner in this parallel civil matter.[61] All facts material to the conviction bind the criminal defendant in a later civil litigation whether established at plea allocution or at a trial.[62] The fact that the Commission was not a party to the criminal case does not alter this conclusion.[63]

Pappalardo and Vinokur's admissions during their allocutions describe their criminal involvement in the fraudulent activities alleged in the Commission's Complaint. These facts establish Pappalardo's and Vinokur's pleas as knowing and voluntary admissions of guilt.

---

[57] Roth Decl. at ¶ 8, Exh. C, Vinokur Tr. at 15:3-8; Local Rule 56.1 Statement at ¶ 6.

[58] Roth Decl. at ¶ 8, Exh. C, Vinokur Tr. at 15:2-8; 17:9-18:2; Local Rule 56.1 Statement at ¶ 10

[59] Roth Decl. at ¶ 12, Exh. F, Pappalardo Tr. 27:4-13, Local Rule 56.1 Statement at ¶ 11.

[60] *SEC v. 800America.com Inc.*, 2006 U.S. Dist. LEXIS 85571 at *4 (S.D.N.Y. 2006); *Nat'l Union Fire Ins. Co., v. Sun*, 1997 U.S. App. LEXIS 6174 at *4, (2d Cir. 1997); *Investigations Officer v. Paccione*, 2002 U.S. Dist. LEXIS 791 at *4 (S.D.N.Y. 2002).

[61] *See, e.g., Gelb v. Royal Global Ins. Co.*, 798 F.2d 38, 42-44 (2d Cir. 1986) (federal criminal convictions have collateral estoppel effect in federal civil proceedings).

[62] *United States v. Podell*, 572 F.2d 31, 35 (2d Cir. 1978); *SEC v. Monarch Funding Crop.* 1996 WL 348209 at *4 (S.D.N.Y. 1996).

[63] *See SEC v. Grossman*, 887 F. Supp. 649, 659 (S.D.N.Y. 1995); *SEC v. Monarch Funding Crop.*, 1996 WL 348209 at *3.

Pappalardo and Vinokur are now precluded from denying the facts underlying their criminal convictions, which establish the Complaint's allegations that they defrauded customers in violation of Section 4b(a)(2)(C)(i) and (iii) of the Act. In addition, during his allocution, Pappalardo admitted facts establishing that he was a controlling person of the Richmond Global Entities[64] and therefore is liable for their violations of the Act.

## Admissions by Pappalardo and Turner as a Result of their Failure to Respond to the Plaintiff's Requests for Admissions

Under Rule 36(a) of the Federal Rules of Civil Procedure, a party may serve upon another party, written requests for admission of the truth of statements of fact, or the application of law to facts, including the genuineness of any document described in the request.[65] Each matter as to which an admission is requested "is admitted unless, within 30 days after service of the request,…the party to whom the request is directed serves…a written answer or objection addressed to the matter (emphasis added)." Courts within the Second Circuit have held that Rule 36 admissions may be used as a basis for summary judgment when the facts deemed admitted are dispositive of the case.[66] Pappalardo and Turner failed to respond to the Commission's requests for admissions served on April 27, 2005. Therefore, all matters as to which the Commission requested admissions are deemed conclusively established.[67]

## Pappalardo, Turner and Vinokur Violated Section 4b(a)(2)(C)(i) and (iii) of the Act

Pappalardo, Turner and Vinokur committed solicitation fraud in violation of Section

---

[64] Roth Decl. at ¶ 12, Exh. F, Pappalardo Tr. 27:4-13, Local Rule 56.1 Statement at ¶ 11.

[65] Fed.R.Civ.P. 36(a): *Healthfirst Inc. v. Medco Health Solutions, Inc.*, 2006 U.S. Dist. LEXIS 90785 at *3 (S.D.N.Y. 2006).

[66] *See Donovan v. Carls Drugs Co.*, 703 F.2d 650, 651 (2d Cir. 1983): *Williams v. Krieger*, 61 F.R.D. 142, 144 (S.D.N.Y. 1973): *SEC v. Batterman*, 2002 U.S. Dist. LEXIS 18556 at *3 (S.D.N.Y. 2002).

[67] Fed. R. Civ. P. 36(b). *See also Donovan v. Carls Drug Co.*, 703 F.2d 650, 651-2 (2nd Cir. 1983), *rejected on other grounds McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 134 (1988): *SEC v. Dynasty Fund Ltd*, 121 Fed. Appx. 410 (2d Cir. 2005).

4b(a)(2)(C)(i) and (iii) of the Act. To establish a violation of Section 4b(a)(2)(C)(i) and (iii) of the Act the defendant must have made (1) a false or misleading representation or omission, (2) of a material fact, (3) with scienter, and (4) in connection with a futures transaction.[68]

As discussed above. Pappalardo, Turner and Vinokur, have admitted that they. together with others, fraudulently solicited funds from customers purportedly to trade foreign currency contracts. They further admitted that they made false and misleading statements during solicitation calls to potential retail customers by misrepresenting the profits that potential customers could reasonably expect to make trading in the foreign currency markets. minimizing the risks involved in trading foreign currency, and falsely claiming that stop-loss mechanisms would limit losses. Pappalardo and Turner have also admitted that they referred potential customers to the Richmond Global Entities` website, which also contained false statements. Pappalardo, Turner and Vinokur have admitted that they knew the representations they used to solicit and retain customers were false.

Pappalardo and Turner have also admitted that they falsely represented to customers that the Richmond Global Entities would charge only a 2% management fee and 10% of any profits generated through trading. Customers were actually charged undisclosed commissions of approximately 16-39%. In order to conceal the unauthorized commissions, Pappalardo and Turner have admitted that they issued false account statements that disguised commissions as trading losses, and that they knew the account statements they sent to customers were false.

These misrepresentations made by Pappalardo. Turner and Vinokur were material. "A statement is material if there is a substantial likelihood that a reasonable investor would consider

---

[68]  7 U.S.C. § 6(b)(a)(2)(C)(i) & (iii); *see CFTC v. AVCO Financial Corp.*. 28 F. Supp.2d 104, 115 (S.D.N.Y. 1998). *aff'd in relevant part sub nom. CFTC v. Vartuli*, 228 F.3d 94 (2d Cir. 2000).

it important in making an investment decision."[69]  Courts have held that representations

regarding profitability of futures trading and the risk of loss resulting from such trading are

clearly material.[70]  Accordingly, Pappalardo, Turner and Vinokur's misrepresentations that

customers could expect large profits with minimal risks are material misrepresentations.

Pappalardo, Turner and Vinokur made these material misrepresentations with scienter.

Scienter requires proof that the defendant committed the alleged wrongful acts "intentionally or

with reckless disregard for his duties under the Act."[71]  Courts have found that material

misrepresentations of profitability and minimizations of the risk of loss were made with scienter

where defendants have continued to make such claims even though the claims are belied by the

losses that their previous customers have suffered.[72]  In their admissions of guilt in their criminal

allocutions, Danio and Vinokur both stated that they knew the information they were imparting to

potential customers was false and misleading.  In addition, Pappalardo, Turner and Vinokur's

continued misrepresentations that customers would profit with little risk of loss while omitting the

fact that customers had suffered serious losses shows that they made these false claims with

scienter.

Pappalardo, Turner and Vinokur's material misrepresentations were made in connection

with futures transactions.  A representation is "'in connection with futures trading 'if it relates to

---

[69]  *CFTC v. AVCO Financial Corp.*, 28 F. Supp. 2d 104, 115 (S.D.N.Y. 1998), *aff'd in relevant part sub nom, CFTC v. Vartuli*, 228 F.3d 94 (2d Cir. 2000) *quoting Saxe v. E.F. Hutton & Co., Inc.*, 789 F.2d 105, 111 (2d Cir. 1986).
[70]  *Saxe*, 789 F.2d at 112; *AVCO*, 28 F. Supp. 2d at 115-16
[71]  *Hammond v. Smith Barney, Harris Upham & Co.*, [1987-1990 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 24,617 at 36.657-59 (CFTC March 1, 1990)(scienter is a necessary element to establish futures fraud); *Do v. Lind-Waldock & Co.*, [1994-1996 Transfer Binder] Comm. Fut., L. Rep. (CCH) 26.516 at 43,321 (CFTC Sept. 27, 1995) (a reckless act is one where there is so little care that it is difficult to believe the [actor] was not aware of what he was doing): *see also Drexel Burnham Lambert Inc. v. CFTC*, 850 F.2d 742, 748 (D.C. Cir. 1988) (holding that "recklessness is sufficient to satisfy section 4b's scienter requirement").
[72]  *E.g., AVCO*, 28 F. Supp. 2d at 116.

the risk of the trading`."[73] The contracts purportedly traded by the Richmond Global Entities were futures contracts[74] and the material misrepresentations made by Pappalardo. Turner and Vinokur related to the risks of trading these contracts.

Accordingly, Pappalardo. Turner and Vinokur's misrepresentations violated Section 4b(a)(2)(C)(i) and (iii) of the Act.

Pappalardo and Turner are also liable as Controlling Persons

Pappalardo and Turner are liable as controlling persons of the Richmond Global Entities for the fraud committed by the entities pursuant to Section 13(b) of the Act.[75] An individual who "directly or indirectly" controls a corporation that has violated the Act "may be held liable for such violation in any action brought by the Commission to the same extent as such controlled [corporation ]."[76] Based on their positions within the Richmond Global Entities and their power to direct the entities` business practices, Pappalardo and Turner knowingly induced, directly or indirectly, the Richmond Global Entities violations of the Act.

Section 13(b) of the Act requires that to impose liability as a controlling person the person must exercise general control, *i.e.*, the power to direct the management and the policies of the firm, and possess "the power or ability to control the specific transaction or activity upon which the primary violation was predicated, even if such power [is] not exercised`."[77] "A fundamental purpose of Section 13(b) is to allow the Commission to reach behind the business entity to its controlling individual and to impose liability for violations of the Act directly on

---

[73] *CFTC v. Vartuli*, 228 F.3d 94. 102 (2d Cir. 2000).
[74] Roth Decl. at ¶ 6, Exh. B, Turner RFA p. 9, ¶ 36; Roth Decl. at ¶ 6. Exh. A. Pappalardo RFA p. 11, ¶ 40, Local Rule 56.1 Statement at ¶ 54.
[75] 7 U.S.C. § 13c(b).
[76] *CFTC v. Baragosh*, 278 F.3d 319. 330 (4th Cir. 2002).
[77] *Monieson v. CFTC*, 996 F.2d 852. 859 (7th Cir. 1993) *quoting Donohoe v. Consolidated Operating & Production Corp.*, 982 F.2d 1130. 1138 (7th Cir. 1992).

such individual as well as on the entity itself."[78]

The Second Circuit has stated that the issue of control is a determination based upon the totality of the circumstances. including an appraisal of the influence upon management and policies of a corporation by the alleged controlling person.[79]   The controlling person must also either (1) knowingly induce, directly or indirectly, the acts constituting the violation; or (2) failed to have acted in good faith.[80]  "Knowing inducement" includes any "actual or constructive knowledge of the core activities that constitute the violation at issue and allowing them to continue." [81]

Pappalardo had and exercised the power to control the business activities of the Richmond Global Entities.  In his criminal allocution, Pappalardo admitted that he was a Vice President of and Senior Account Manager of Richmond Global Associates and President and Senior Account Manager of Richmond Global Director.[82]  In addition, Pappalardo has admitted that he or others under his control made misleading representations to potential retail customers over the telephone to attract customers to open accounts and to entrust funds to the Richmond Global Entities for the purpose of trading foreign currency futures contracts.[83] Pappalardo and others under his control referred potential customers to the Richmond Global Entities' website which contained material misrepresentations.[84]  Pappalardo was a signatory on Richmond Global

---

[78] *In re Glass*. [1996-1998 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 27,337 (CFTC 1998): *see also In re Apache Trading Corp.*. [1990-92 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 25, 252 at 38, 794 (CFTC 1992).
[79] *AVCO*. 28 F. Supp.2d at 117 (*citing U.S. v. Corr*. 543 F.2d 1042. 1050 (2d Cir. 1976)).
[80] *In re Apache Trading Corp.*, at 38.794.
[81] *In re Spiegel*, [1987-90 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 24, 103 at 34, 767 (CFTC 1988).
[82] Local Rule 56.1 Statement ¶¶ 11 and 25.
[83] Local Rule 56.1 Statement at ¶ 21.
[84] Local Rule 56.1 Statement at ¶ 28.

14

Associates' bank accounts and considered himself an agent of the Richmond Global Entities.[85]

Turner also had and exercised the power to control the business activities of the Richmond Global Entities. Turner has admitted that he or others under his control made misleading representations to potential retail customers over the telephone to attract customers to open accounts and to entrust funds to the Richmond Global Entities.[86] Turner and others under his control referred potential customers to the Richmond Global Entities' website which contained material misrepresentations.[87] Turner was the President of Richmond Global Associates, was signatory on their bank accounts and was an agent of the Richmond Global entities.[88]

By these admitted facts, Pappalardo and Turner possessed the requisite degree of control and both failed to act in good faith and knowingly induced the acts constituting the violations of the anti-fraud provisions of the Act. Therefore, Pappalardo and Turner are liable as controlling persons for the fraudulent solicitations practices Richmond Global Entities pursuant to Section 13(b) of the Act.

## Relief Requested

Entry of a Permanent Injunction

The Commission is entitled to injunctive relief upon a showing that a violation of the Act has occurred and that there is a reasonable likelihood of future violations.[89] Unlike private actions, which are rooted in the equity jurisdiction of the federal court, Commission actions for

---

[85] Local Rule 56.1 Statement at ¶¶ 26 and 27.

[86] Local Rule 56.1 Statement at ¶ 21.

[87] Local Rule 56.1 Statement at ¶ 28.

[88] Local Rule 56.1 Statement at ¶¶ 22-24.

[89] *See CFTC v. Cheung*, 1994 WL 583169 at *2 (S.D.N.Y. 1994) (*citing CFTC v. British American Commodities Corp.*, 560 F.2d 135, 141 (2d Cir. 1977). *cert. denied.* 438 U.S. 905 (1978)).

injunctive relief are creatures of statute.[90]  The injunctive relief contemplated in Section 6c of the Act[91] is remedial in nature, and is designed to prevent injury to the public and to deter future illegal conduct.[92]

In determining whether a "reasonable likelihood" of future violations exists, courts generally have considered the egregiousness of the defendant's actions. the isolated. recurrent or systematic nature of the violations. the degree of scienter involved, the defendant's recognition of the wrongfulness of the conduct, and the likelihood that the defendant's customary business activities will present opportunities for future violations.[93]  The likelihood of future violations of law can be inferred from a defendant's past illegal conduct,[94] and the "totality of circumstances and factors suggesting that the infraction might not have been an isolated occurrence are always relevant."[95]

---

[90] *CFTC v. British American Commodity Options Corp.* 560 F.2d 135. 1142 (2d Cir. 1977) *quoting* SEC v. Management Dynamics, Inc.. 515 F.2d 801, 808 (2d Cir. 1975) ("SEC appears in these proceedings not as an ordinary litigant. but as a statutory guardian charged with safeguarding the public interest in enforcing the [federal] laws.  Hence, by making the showing required by statute that the defendant 'is engaged or about to engage' in illegal acts. the Commission is seeking to protect the public interest, and 'the standards of the public interest not the requirements of private litigation measure the propriety and need for injunctive relief'") (*internal citation omitted*).

[91] 7 U.S.C. § 13a-1.

[92] Restrictive concepts ordinarily associated with private litigation. such as proof of irreparable injury or inadequacy of other remedies. are inapplicable to statutory actions brought by the Commission for injunctive relief. *See CFTC v. Hunt*, 591 F.2d 1211, 1220 (7th Cir. 1979). *cert. denied.* 442 U.S. 921; *CFTC v. British American Commodity Options Corp.*, 560 F.2d 135. 141-142 (2d Cir. 1977), *cert. denied*, 438 U.S. 905 (1978); *see also Hecht v. Bowles*, 321 U.S. 331 (1944); *CFTC v. Muller.* 570 F.2d 1296, 1300 (5th Cir. 1978) (upholding imposition of a preliminary judgment); *SEC v. Youmans.* 729 F.2d 413, 415 (6th Cir.). *cert. denied,* 469 U.S. 1034 (1984) (availability of injunctive relief by statute eliminates the need for traditional equitable prerequisites in SEC actions).

[93] *Hunt,* 591 F.2d at 1220; *SEC v. Holschuh,* 694 F.2d 130, 144 (7th Cir. 1980);.

[94] *Hunt,* 591 F.2d at 1220 (past misconduct is "highly suggestive of the likelihood of future violations")*quoting SEC v. Management Dynamics, Inc..* 515 F.2d. 801. 807 (2d Cir. 1975).

[95] *Id.* at 1220. *quoting SEC v. Management Dynamics, Inc., supra*, 515 F.2d at 807.

Here, as demonstrated by the facts admitted by Pappalardo, Turner and Vinokur, the defendants knowingly violated the anti-fraud provisions of the Act. These were not isolated instances, but a pattern of fraudulent behavior that indicates the likelihood of future violations of the Act.

Once the Commission makes its showing of illegality and establishes a reasonable likelihood of future violations, Section 6c(c) of the Act empowers the District Court to enforce compliance with the Act by taking "such action as is necessary to remove the danger of violation..."[96] In sum, based upon the egregious, admitted fraud in this matter, the Commission respectfully requests that this Court issue a permanent injunction prohibiting Pappalardo, Turner and Vinokur from (a) violating Section 4b(a)(2) of the Act and from (b) trading on or subject to the rules of any trading facility registered with the Commission.[97]

Imposition of a Civil Monetary Penalty

Because enforcement proceedings under Section 6c of the Act involve the public interest rather than a private controversy, the equitable jurisdiction of the district court is very broad.[98]

A civil monetary penalty should be assessed against the defendants pursuant to Section 6c(d)(1) of the Act,[99] which provides that this Court may impose a civil penalty in the amount of "not more than the higher of $120,000 or triple the monetary gain to the person for each such violation."[100] "The purpose of sanctions under the Act is twofold: to further the [Act]'s

---

[96] *CFTC v. Co Petro Marketing Group, Inc.*, 680 F.2d 566, 583 (9th Cir. 1981).

[97] *See* Complaint, Section VI "Relief Requested," pp. 7-8.

[98] *CFTC v. Hunt*, 591 F.2d 1211, 1223 (7th Cir. 1979). *cert. denied*, 442 U.S. 921 (1979) *citing Porter v. Warner Holding Co.*, 328 U.S. 395, 398 (1946).

[99] 7 U.S.C. § 13a-1(d)(1).

[100] Pursuant to 17 C.F.R. §143.8(a)(1)(ii)(2005) the statutory maximum applicable to violations under Section 6(c) of the Act was increased from $100,000 to $120,000 per violation for violations committed on or after October 23, 2000, and to $130,000 per violation for violations committed on or after October 23, 2004.

17

remedial policies and to deter others in the industry from committing similar violations.'"[101]
This Court should assess a civil monetary penalty that is appropriate to the gravity of the
defendants' offenses and sufficient to act as a deterrent.[102]  A civil monetary penalty against
Pappalardo, Turner and Vinokur is warranted because their conduct was intentional and they
benefited personally from their fraudulent conduct.

In the Complaint. Vinokur was charged with one count of violating Section 4b
(a)(2)(C)(i) and (iii) of the Act .  Thus, a civil monetary penalty in the amount of $120.000
should be imposed against him.  Pappalardo and Turner were charged with two counts of
violating Section 4b (a)(2)(C)(i) and (iii) of the Act in the Complaint (one for their direct
conduct, and one as controlling persons of the Richmond Global Entities).  Thus, a civil
monetary penalty of $240.000 should be imposed against both Pappalardo and Turner.[103]

Restitution

Restitution is intended "to make the damaged persons whole and compensate them for a
defendant's wrongful acts."[104]  In this matter, the objectives of the Act are best served by
ordering full restitution to all persons whose funds were received or disposed of by the
defendants in violation of the Act.  Restitution is appropriate here because there is an accurate
record of the total losses suffered by the customers based on extensive review of the customer

---

[101] *Reddy v. CFTC*, 191 F.3d 109. 123 (2d Cir. 1999).

[102] *Miller v. CFTC*, 197 F.3d 1227, 1236 (9th Cir. 1999).

[103] Alternatively, the Court can choose to impose a civil monetary penalty equal to triple the
monetary gain by each defendant from their illegal conduct.  Under this formulation. the Court
can impose a civil monetary penalty of $348.900 against Turner. since Turner received payments
in excess of $116, 300 from the Richmond Global Entities.  Local Rule 56.1 Statement at ¶ 56.
The Court can impose a civil monetary penalty of $237,900 against Pappalardo, since
Pappalardo received payments in excess of $79. 300.  Local Rule 56.1 Statement at ¶ 55.  The
Court can impose a civil monetary penalty of $ 69,900 against Vinokur since Vinokur received
payments in excess of $23.300.  Local Rule 56.1 Statement at ¶ 57.

[104] *AVCO*, 28 F.Supp.2d at 121 *citing SEC v. Drexel Burnham Lambert*. 956 F. Supp. 503. 507
(S.D.N.Y. 1997)).

accounts by the Court-appointed Receiver's expert,[105] and customers may be repaid based on the specific losses they suffered. Thus, the Commission requests that the Court order Pappalardo and Turner to jointly and severally pay restitution and disgorgement in the total amount of $1,527,800, which is the amount, calculated by the Receiver's expert, owed to the Richmond Global Entities' customers for the time period during which Pappalardo and Turner were officers and controlling persons the Richmond Global Entities.[106] The Commission also requests that the Court order Vinokur to pay restitution of $270,393, which is the amount, calculated by the Receiver's expert, that Vinokur's customers are owed.[107] Because the Commission seeks to repay the damaged customers first and foremost, the Commission respectfully requests that the judgement entered against Pappalardo, Turner and Vinokur provide that the full amount of money recovered from the defendants in this matter as restitution shall be used to repay the damaged customers before any funds collected are applied to pay any civil monetary penalty.

---

[105] The Receiver seized the business records of the Richmond Global Entities and maintains custody and control over those records. *See* Declaration of Natalie A. Napierala dated January 3, 2007 at ¶¶ 6-11. The expert retained by the Receiver used those business records of the Richmond Global Entities and records subpoenaed by the Receiver to perform his analysis. Affidavit of Joseph Merlino dated January 4, 2006 ("Merlino Aff.") at ¶¶ 4-6.

[106] Merlino Aff. at ¶¶ 34-38, Local Rule 56.1 Statement at ¶ 58.

[107] Merlino Aff. at ¶¶ 31-33, Local Rule 56.1 Statement at ¶ 59.

Disgorgement

District courts have "broad equitable power to fashion appropriate remedies. including ordering that culpable defendants disgorge their profits."[108]    Unlike restitution, "the disgorgement remedy is not intended to compensate the investors: rather, it is intended to deprive the violator of his ill-gotten gains and to further the deterrence objectives of the [Commodity Exchange Act]."[109]   Disgorgement is appropriate in the instant matter to deprive the defendants of their ill-gotten gains and to serve the deterrence objectives of the Act.  Turner received payments in excess of $116, 300 from the Richmond Global Entities.[110]  Thus, the Commission requests that the Court order Turner to disgorge the amount of $116,300.  Pappalardo received payments in excess of $79, 300.[111]   Thus, the Commission requests that the Court order Pappalardo to disgorge $79,300.  Vinokur received payments in excess of $23.300.[112]  Thus. the Commission requests that the Court order Vinokur to disgorge the amount of $23.300.

### Conclusion

As there are no genuine issues of material fact and the Commission is entitled to summary judgment against Pappalardo. Turner and Vinokur, the Commission respectfully requests that the Court grant its Motion for Summary Judgment and impose (1) a permanent injunction against future violations of the Act; (2) a civil monetary penalty against Pappalardo. Turner and Vinokur; (3) order Pappalardo, Turner and Vinokur to pay restitution to the

---

[108]  *AVCO*. 28 F. Supp.2d at 121 *citing SEC v. First Jersey Sec., Inc..* 101 F.3d 1450. 1474 (2d Cir. 1996), *cert. denied* 522 U.S. 812 (1997); *CFTC v. American Bd. Of Trade*. 803 F.2d 1242. 1252 (2d Cir. 1986); *CFTC v. Hunt*. 591 F.2d 1211. 1222-23 (7th Cir. 1979)).

[109] *AVCO*. 28 F. Supp. 2d at 121 (*citing American Bd. Of Trade*, 803 F.2d at 1252: *Drexel Burnham Lambert*, 956 F. Supp. at 507)).

[110] Local Rule 56.1 Statement at ¶ 56.

[111] Local Rule 56.1 Statement at ¶ 55.

[112] Local Rule 56.1 Statement at ¶ 57.

customers of the Richmond Global Entities; and (4) to disgorge their ill-gotten gains.

Dated:    New York, New York
          January 5, 2007

                              U.S. COMMODITY FUTURES TRADING
                              COMMISSION. Plaintiff

                              Karin N. Roth [KR 2669]
                              David MacGregor [DM 1633]
                              Division of Enforcement
                              U.S. Commodity Futures Trading Commission
                              140 Broadway. 19th Floor
                              New York, New York  10005
                              Ph. (646) 746-9764
                              Fax (646) 746-9940

21