UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x
U.S. COMMODITY FUTURES
TRADING COMMISSION,                            :    05 CV 2181 (SAS)
                 Plaintiff,          :
     v.                                        :
                                             :    **LOCAL RULE 56.1**
RICHMOND GLOBAL ASSOCIATES, L.L.C.,           :    **STATEMENT OF UNDISPUTED**
*et. al.*,                                    :    **MATERIAL FACTS IN**
                                             :    **SUPPORT OF PLAINTIFF'S**
                                             :    **MOTION FOR SUMMARY**
                Defendants.                :    **JUDGMENT AGAINST**
                                           :    **DEFENDANTS JOSEPH**
                                           :    **PAPPALARDO, RONALD**
                                           :    **TURNER, AND MIRON**
                                           :    **VINOKUR**
                                           :
-----------------------------------------------------------------x

Pursuant to Local Rule 56.1, Plaintiff U.S. Commodity Futures Trading Commission ("Commission") submits this statement of material facts as to which Plaintiff contends there is no genuine issue to be tried, in support of Plaintiff's motion for summary judgment against Defendants Joseph Pappalardo ("Pappalardo"), Ronald Turner ("Turner"), and Miron Vinokur ("Vinokur").

       1.       In an indictment filed on February 10, 2005 in the U.S. District Court for the Southern District of New York, Doc. No. 05 Cr. 157 (BSJ) (the "Indictment"), Pappalardo, Turner and Vinokur were charged with conspiracy to commit mail fraud and wire fraud, and with wire fraud, in connection with an illegal scheme to defraud customers who invested in foreign currency ("forex") futures contracts through entities that operated under a variety of "Richmond Global" names. Declaration of Karin N. Roth dated January 4, 2007 ("Roth Decl.") at ¶ 8.

2.  Among the Richmond Global entities through which the Indictment alleged that Papalardo, Turner and Vinokur committed fraud were Richmond Global Ltd., Richmond Global Directors LLC, Richmond Global MCA LLC, Richmond Global Managed Account LLC, and Richmond Global Associates LLC (collectively the "Richmond Global Entities"). Roth Decl. at ¶ 8.

3.  Vinokur and Pappalardo have each pled guilty to Count One of the Indictment (conspiracy to commit mail fraud and wire fraud), and Turner has requested that the Indictment as against him be transferred to the Eastern District of New York for plea and sentencing. Roth Decl. at ¶¶ 9, 13. In his request to transfer the Indictment to the Eastern District of New York, Turner states that he too intends to plead guilty. *Id.*

4.  When entering their guilty pleas to the Indictment, Vinokur and Pappalardo admitted that they defrauded investors in the Richmond Global entities. Roth Decl. at ¶ 9, Exh. C, ¶ 12. Exh. F.

5.  Specifically, when entering his guilty plea Vinokur admitted that "[d]uring the period of March 2003 to February 2005, I engaged with others in a scheme to defraud investors in a company known as Richmond Global Associates, where I was employed as a salesman." Roth Decl. at ¶ 9, Exh. C ("Vinokur Tr.") at 14:18-21.

6.  Vinokur further admitted that he "helped sell investments in the foreign exchange currency market knowing that representations made by myself and others were, you know, with respect to positive performance and optimistic predictions, the existence of a stop loss program and other representations used to sell and hold onto investments were untrue." Roth Decl. at ¶ 9, Exh. C, Vinokur Tr. at 15:3-8.

7. Vinokur further admitted that he made false statements over the telephone to potential retail customers to attract retail customers to open accounts and to entrust funds to the Richmond Global Entities for the purpose of trading foreign currency. Roth Decl. at ¶ 9, Exh. C, Vinokur Tr. at 14:18-15:22

8. Vinokur further admitted that he defrauded customers by minimizing the risks involved in investing in foreign currency and falsely claiming that stop-loss mechanisms would limit losses. Roth Decl. at ¶ 9, Exh. C, Vinokur Tr. 15:12-22.

9. Vinokur made false profitability claims during his solicitation of potential customers of the Richmond Global Entities. Roth Decl. at ¶ 9, Exh. C. Vinokur Tr. 15:2-8.

10. Vinokur also admitted that he came to realize while he was in the process of defrauding Richmond Global investors that his conduct was wrong and illegal. Roth Decl. at ¶ 9, Exh. C, Vinokur Tr. 15:2-8; 17:9 -18:2.

11. When entering his guilty plea Pappalardo admitted "I was vice president of Richmond Global Associates from March of 2003 to February 2005. I agreed with my co-defendants [Turner, Vinokur, and Vincenzo Danio] to get investors in Richmond Global Associates by providing them with false and fraudulent account statements that disguised commissions taken by Richmond Global as trade losses. I also gave false information, minimizing the risk to induce investors. Meaning that when I was on the phone, I would lessen the risk and make it appear better than what it was." Roth Decl. at ¶ 13, Exh. F ("Pappalardo Tr.") 27:4-13.

12. For his illegal conduct Vinokur was sentenced to a prison term of one year and a day, three years of supervised release, an assessment of $100, and restitution (which will become part of the conditions for his supervised release). Roth Decl. at ¶ 10. Exh. D.

13. Vinokur is currently incarcerated. His projected release date is April 11, 2007. Roth Decl. ¶ 11, Exh. E.

14. Pappalardo has yet to be sentenced for his illegal conduct. Roth Decl. at ¶ 14, Exh. G.

15. Vincenzo Danio ("Danio"), a co-defendant of Pappalardo, Turner and Vinokur under the Indictment, has also pled guilty to Count One of the Indictment. Roth Decl. at ¶ 16, Exh. J ("Danio Tr.").

16. In pleading guilty, Danio admitted that "[he] made misleading representations to potential retail customers over the telephone to attract customers to open accounts and which entrusted funds to Richmond Global for the purpose of trading in the forex market. [He] also provided these customers through the mail with misleading account statements that disguised commissions taken by Richmond Global as trading losses." Danio further admitted that he knew the account statements that he and other representatives sent were misleading. Roth Decl. at ¶ 16, Exh. J, Danio Tr. at 16:2-25, 15:5-18. Danio also exaggerated the number of staff employed at the Richmond Global Entities and falsely stated that customers' investments had low risk and high upside potential. Roth Decl. at ¶ 16, Exh. J, Danio Tr. at 18:1-15.

17. For his illegal conduct, Danio was sentenced to a prison term of thirty months, three years of supervised release, and ordered to pay $400,000 in restitution to the Court appointed receiver for the Richmond Global entities. Roth Decl. at ¶ 16, Exh. K.

18. On April 27, 2006, Plaintiff served Requests for Admissions on defendants Pappalardo and Turner, neither of whom responded. Roth Decl. at ¶ 7.

4

19. By virtue of failing to respond to the Plaintiff's Requests for Admissions, Pappalardo and Turner have admitted the facts sets forth below. *See* Roth Decl. at ¶ 7, Exh.s A ("Pappalardo RFA") and B ("Turner RFA").

20. From at least March 2003 through February 2005, Pappalardo, Turner and Vinokur together with others solicited funds from customers purportedly to be used for trading foreign currency ("forex") contracts. *See* Roth Decl. at ¶ 7, Exh. A. Pappalardo RFA p.3, ¶ 1. Roth Decl. at ¶ 13, Exh. F, Pappalardo Tr. 27:4-13. Roth Decl. at ¶ 7, Exh. B, Turner RFA p. 3, ¶ 1. Roth Decl. at ¶ 9, Exh. C , Vinokur Tr. 14:18-15:8.

21. Pappalardo, Turner or others under their control made misleading representations to potential retail customers over the telephone to attract customers to open accounts and to entrust funds to the Richmond Global Entities for purposes of trading foreign currency futures contracts. *See* Roth Decl. at ¶ 7, Exh. A, Pappalardo RFA p.3, ¶ 2, Roth Decl. at ¶ 13, Exh. F Pappalardo Tr. 11:7-12:19, 28:11-18; Roth Decl. at ¶ 7, Exh. B, Turner RFA p. 3, ¶ 2.

22. Turner held himself out to customers of the Richmond Global entities as the President of RG Associates. Roth Decl. at ¶ 7, Exh. B, Turner RFA p. 3, ¶ 3.

23. Turner was signatory on bank accounts at HSBC maintained by RG Associates. Roth Decl. at ¶ 7, Exh. B, Turner RFA, p. 3, ¶ 4.

24. Turner was an agent of the Richmond Global entities. Roth Decl. at ¶ 7, Exh. B, Turner RFA. p. 3, ¶ 5.

25. Pappalardo held himself out to customers of the Richmond Global entities as the Vice President and Senior Account Manager of RG Associates and President and Senior Account Manager of RG Director. Roth Decl. at ¶ 7, Exh. A, Pappalardo RFA p. 5, ¶¶ 6a, 7.

26. Pappalardo was a signatory on RG Associates' bank accounts. Roth Decl. at ¶ 7, Exh. A, Pappalardo RFA p. 6, ¶¶ 8h, 10a-b.

27. Pappalardo was an agent of the Richmond Global Entities. Roth Decl. at ¶ 7, Exh. A, Pappalardo RFA p. 5, ¶ 7.

28. Pappalardo, Turner or others under their control referred potential customers to the Richmond Global Entities' website, www.richmondglobal.com, which contained material misrepresentations. Roth Decl. at ¶ 7, Exh. A., Pappalardo RFA p.6, ¶¶ 12-13. Roth Decl. at ¶ 7, Exh. B, Turner RFA p. 4, ¶¶ 8-9.

29. Turner and Pappalardo, through the Richmond Global Entities' website, telephone solicitations and other materials, made false representations to prospective customers to induce these individuals to open accounts with the Richmond Global entities. Roth Decl. at ¶ 7, Exh. B, Turner RFA p. 4, ¶ 8; Roth Decl. at ¶ 7, Exh. A, Pappalardo RFA p. 6 ¶ 12.

30. Turner, Pappalardo and other Richmond Global personnel mailed promotional materials to potential customers of the Richmond Global entities. Roth Decl. at ¶ 7, Exh. B, Turner RFA p. 5, ¶ 11a; Roth Decl. at ¶ 7. Exh. A, Pappalardo RFA p. 7, ¶ 15.

31. Turner, Pappalardo and other employees of the Richmond Global entities mailed account opening documents to potential customers of the Richmond Global entities. Roth Decl. at ¶ 7, Exh. B. Turner RFA p. 5, ¶ 13; Roth Decl. at ¶ 7, Exh. A, Pappalardo RFA p.7 ¶ 16, p. 8, ¶ 17. *See* Roth Decl. at ¶ 13, Exh. F. Pappalardo Tr. at 28:1-5.

32. Included with the account opening documents was a power of attorney authorizing the Richmond Global Entities to trade on behalf of, or for the benefit of, their customers. Roth Decl. at ¶ 7. Exh. B, Turner RFA p. 6, ¶ 14; Roth Decl. at ¶ 7. Exh. A, Pappalardo RFA p.8, ¶ 18.

33. To open a managed currency trading account, Richmond Global customers completed and signed account opening documents and sent them with their funds directly to the Richmond Global entities. Roth Decl. at ¶ 7, Exh. B, Turner RFA, p. 6, ¶ 13a; Roth Decl. at ¶ 7, Exh. A, Pappalardo RFA, p. 8, ¶ 17a.

34. After receiving customers' funds, Turner, Pappalardo and other employees of the Richmond Global Entities sent these funds, after deducting a disclosed two percent management fee, to one of three futures commission merchants ("FCMs"), after which the FCMs executed trades on behalf of the Richmond Global entities' customers. Roth Decl. at ¶ 7, Exh. B, Turner RFA p. 7, ¶ 17; Roth Decl. at ¶ 7, Exh. A, Pappalardo RFA p. 9, ¶ 21.

35. At rates set by the Richmond Global Entities, the FCMs deducted additional commissions on executed transactions from the customer funds they held. These commissions, which ranged from approximately 16% to 39% and were never disclosed to customers, were then paid directly to the Richmond Global Entities. Roth Decl. at ¶ 7, Exh. B, Turner RFA p. 7, ¶¶ 18 and 30, Roth Decl. at ¶ 7, Exh. A, Pappalardo RFA p. 9, ¶¶ 22 and 34.

36. Each of the FCMs provided the Richmond Global Entities with transaction records showing the profit/loss from each executed forex futures trade and showing the commission charged on the transaction and which was then returned to the Richmond Global Entities. Roth Decl. at ¶ 7, Exh. B, Turner RFA p. 7, ¶ 19, Roth Decl. at ¶ 7, Exh. A, Pappalardo RFA p. 9, ¶ 23.

37. The account statements issued by the Richmond Global Entities to their customers detailed only the customers' net cash position: the balance at the beginning of the period, customer deposits, customer withdrawals, profit or loss, management fees, and the balance at the end of the period. The statements did not provide any information regarding the forex futures

trading executed on the customer's behalf or for the customer's benefit. Roth Decl. at ¶ 7, Exh. B. Turner RFA p. 7, ¶ 20; Roth Decl. at ¶ 7, Exh. A, Pappalardo RFA p.10, ¶ 24.

38. Turner, Pappalardo, or others under their control falsely represented to customers that the Richmond Global Entities employed as many as twelve researchers and analysts and had between $10 and $12 million under management in the forex market. Roth Decl. at ¶ 7. Exh. B, Turner RFA p. 8, ¶ 21; Roth Decl. at ¶ 7, Exh. A. Pappalardo RFA p. 10. ¶ 25.

39. The Richmond Global Entities did not employ researchers or analysts. and never had more than $ 1.2 million under management. Roth Decl. at ¶ 7, Exh. B, Turner RFA p. 8. ¶ 22; Roth Decl. at ¶ 7, Exh. A. Pappalardo RFA p. 10, ¶ 26.

40. Turner, Pappalardo or others under their control falsely represented to retail customers that the Richmond Global entities generated profits as high as 40% annually. and that they would, in the future, generate profits of 45% annually. Roth Decl. at ¶ 7, Exh. B. Turner RFA p. 8, ¶ 23; Roth Decl. at ¶ 7, Exh. A, Pappalardo RFA p. 10. ¶ 27.

41. The Richmond Global entities rarely generated any net profits for their customers trading in the forex market. Roth Decl. at ¶ 7, Exh. B, Turner RFA p. 8. ¶ 24; Roth Decl. at ¶ 7, Exh. A, Pappalardo RFA p. 10. ¶ 28.

42. Turner. Pappalardo or others under their control falsely represented to the Richmond Global entities' customers that money invested in the forex market was like money placed in a bank account. Roth Decl. at ¶ 7, Exh. B, Turner RFA p. 8. ¶ 25; Roth Decl. at ¶ 7, Exh. A. Pappalardo RFA p. 10. ¶ 29.

43. Turner and Pappalardo knew that investments in the forex market were highly speculative and volatile. Roth Decl. at ¶ 7, Exh. B, Turner RFA p. 8. ¶ 26; Roth Decl. at ¶ 7, Exh. A. Pappalardo RFA p. 10. ¶ 30.

44.   Turner, Pappalardo or others under their control misrepresented to the Richmond Global Entities' customers that stop-loss mechanisms were in place to limit trading losses to 10% of the customers' investments. Roth Decl. at ¶ 7, Exh. B, Turner RFA p. 8, ¶ 27; Roth Decl. at ¶ 7, Exh. A, Pappalardo RFA p. 10, ¶ 31.

45.   Turner and Pappalardo knew that the Richmond Global Entities' customer losses were far larger than that were common in the forex industry. Roth Decl. at ¶ 7, Exh. B, Turner RFA p. 8, ¶ 28; Roth Decl. at ¶ 7, Exh. A, Pappalardo RFA p. 11, ¶ 32.

46.   Turner, Pappalardo or others under their control falsely represented to the Richmond Global Entities' customers that the Richmond Global entities charged customers only a 2% management fee and 10% of any profits generated through trading. Roth Decl. at ¶ 7, Exh. B, Turner RFA p. 8, ¶ 29; Roth Decl. at ¶ 7, Exh. A, Pappalardo RFA p. 11, ¶ 33.

47.   The Richmond Global entities charged customers undisclosed commissions ranging from approximately 16% to 39%. Roth Decl. at ¶ 7, Exh. B, Turner RFA p. 9, ¶ 30; Roth Decl. at ¶ 6, Exh. A, Pappalardo RFA p. 11, ¶ 34.

48.   In order to conceal the unauthorized commissions, the Richmond Global Entities, Pappalardo, Turner and others under their control issued false account statements to customers that disguised commissions as trading losses. Roth Decl. at ¶ 7, Exh. B, Turner RFA p. 9, ¶ 34; Roth Decl. at ¶ 7, Exh. A, Pappalardo RFA p.11, ¶ 38, Roth Decl. at ¶ 12, Exh. F, Pappalardo Tr. at 27:6-9.

49.   The Richmond Global entities received the undisclosed commissions by instructing the FCMs executing the trades to deduct a portion of the customers' funds and to return those funds to the Richmond Global entities as commissions. Roth Decl. at ¶ 7, Exh. B, Turner RFA p. 9, ¶ 31; Roth Decl. at ¶ 7, Exh. A, Pappalardo RFA p. 11, ¶ 35.

50. Commissions totaling approximately $981,500 were returned from the FCMs to the Richmond Global entities. Roth Decl. at ¶ 7, Exh. B, Turner RFA p. 9, ¶ 32; Roth Decl. at ¶ 7, Exh. A, Pappalardo RFA p. 11, ¶ 36.

51. Turner, Pappalardo and others at the Richmond Global entities then used the undisclosed commissions for their own purposes. Roth Decl. at ¶ 7, Exh. B, Turner RFA p. 9, ¶ 33; Roth Decl. at ¶ 7, Exh. A, Pappalardo RFA p. 11, ¶ 37.

52. In order to conceal the unauthorized commissions, Turner, Pappalardo and others under their control at the Richmond Global entities issued false account statements to customers that disguised commissions as trading losses. Roth Decl. at ¶ 7, Exh. B, Turner RFA p. 9, ¶ 34; Roth Decl. at ¶ 7, Exh. A, Pappalardo RFA p. 11, 38¶ 33.

53. Turner and Pappalardo knew that the account statements they or others under their control sent to customers of the Richmond Global entities were fraudulent. Roth Decl. at ¶ 7, Exh. B, Turner RFA p. 9, ¶ 35; Roth Decl. at ¶ 7, Exh. A, Pappalardo RFA p. 11, ¶ 39.

54. Turner and Pappalardo, for or on behalf of the Richmond Global Entities' customers, entered into foreign currency futures contracts with a FCM. Roth Decl. at ¶ 7, Exh. B, Turner RFA p. 9, ¶ 36; Roth Decl. at ¶ 7, Exh. A, Pappalardo RFA p. 11, ¶ 40.

55. Pappalardo received, for the period of March 2003 to January 2004, payments totaling in excess of $ 79,300 from the Richmond Global Entities. Declaration of Ronald Carletta ("Carletta Decl.") dated January 28, 2005 at ¶ 16. *See* docket entry no. 10.

56. For the period of March 2003 to January 2004, Turner received in excess of $116,300 from the Richmond Global Entities. Carletta Decl. at ¶ 16.

57. Vinokur received from the Richmond Global Entities in excess of $ 23,300 in payments for April 2003 to February 2004. Carletta Decl. at ¶ 16.

58. During Turner and Pappalardo's tenure at the Richmond Global Entities. the entities solicited approximately $2,586,325 from their clients for trading foreign currency. Turner and Pappalardo's clients withdrew $1,085,525 of their investments; thus, these clients are still owed $1,527,800. Affidavit of Joseph Merlino dated January 4, 2007 ("Merlino Aff.") at ¶¶ 34-39.

59. Vinokur was directly responsible for soliciting approximately $380,500 from clients who invested with the Richmond Global Entities. His clients withdrew $110,107 of their investments; thus Vinokur's clients are still owed $270,393. Merlino Aff. at ¶¶ 31-33, 39.

Dated:   New York, New York
         January 5, 2007

U.S. COMMODITY FUTURES TRADING COMMISSION

Karin N. Roth [KR 2669]
David W. MacGregor [DM 1633]
Division of Enforcement
U.S. Commodity Futures Trading Commission
140 Broadway, 19th Floor
New York, New York 10005
Ph. (646) 746-9764
Fax (646) 746-9940