UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

U.S. COMMODITY FUTURES
TRADING COMMISSION,
                      Plaintiff,

        v.

RICHMOND GLOBAL ASSOCIATES, LLC,
*et. al.*
                  Defendants.

-------------------------------------------------------------x

05 CV 2181  (SAS)

**MOTION FOR ENTRY OF DEFAULT JUDGMENT AGAINST THE RICHMOND GLOBAL ASSOCIATES, LLC, RICHMOND GLOBAL DIRECTOR, LLC, RICHMOND GLOBAL MCA, LLC, RICHMOND GLOBAL MANAGED ACCOUNT, LLC, RICHMOND GLOBAL, LTD, RG GROUP HOLDINGS, LLC, AND VINCENT DANIO**

**PLEASE TAKE NOTICE** that the plaintiff, the U.S. Commodity Futures Trading Commission (the "Commission") is moving pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure and Local Rule 55.2(b), for the entry of a default judgment including a permanent injunction, civil monetary penalty, and other ancillary equitable relief including restitution and disgorgement, against Defendants Richmond Global Associates, LLC, Richmond Global Director, LLC, Richmond Global MCA, LLC, Richmond Global Managed Account, LLC, Richmond Global, Ltd., RG Group Holdings, LLC (collectively the "Richmond Global Entities") and Vincent Danio ("Danio"). In support of this motion, the Commission respectfully submits the accompanying Memorandum of Law and the Declaration of Karin N. Roth in Support of the Commission's Motion, the Affidavit of Joseph Merlino and the attached Exhibits.

**PLEASE TAKE FURTHER NOTICE** that pursuant to Local Civil Rule 6.1(b), any papers opposing the Commission's motion must be served by October 1, 2007, [ten business

days after service]. Any reply papers shall be served within five business days after service of the answering papers.

WHEREFORE, the Commission requests that the Court order the requested default judgment, permanent injunction, civil monetary penalty, and other ancillary equitable relief including restitution and disgorgement, against the Richmond Global Entities and Danio.

Respectfully submitted,

Dated:  September 17, 2007
New York, New York

U.S. COMMODITY FUTURES TRADING
COMMISSION, Plaintiff

Karin N. Roth [KR 2669]
David W. MacGregor
Division of Enforcement
U.S. Commodity Futures Trading Commission
140 Broadway, 19th Floor
New York, New York  10005
Ph. (646) 746-9764
Fax (646) 746-9940

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>RICHMOND GLOBAL ASSOCIATES, L.L.C., et al.,<br><br>　　　　　　Defendants. | Case No. 05-CV-2181 (SAS) |

**AFFIDAVIT OF JOSEPH MERLINO IN
SUPPORT OF THE PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**

STATE OF NEW YORK　　)
　　　　　　　　　　　　　ss:
COUNTY OF NEW YORK　)

Joseph Merlino being duly sworn declares as follows:

1.　　I was employed in the foreign exchange industry for more than thirty years, and have held many senior positions with a number of well-respected banking and financial institutions.  My professional experience ranges from actively trading currencies, to supervising large currency trading groups and marketing desks, to directly managing and marketing client accounts.  I have also assisted in establishing and monitoring operational and audit procedures required by internal and external regulatory authorities.

2.　　I am familiar with this proceeding and have personal knowledge of the facts set forth herein.

3.　　The Receiver appointed in this case, John W. Moscow Esq., retained me to analyze the books and records of Richmond Global Associates, L.L.C., Richmond Global

Director L.L.C., Richmond Global MCA, L.L.C, Richmond Global Managed Account, L.L.C.,

Richmond Global, Ltd., R.G. Group Holdings, L.L.C., Vincenzo Danio, Joseph Pappalardo,

Ronald Turner and Miron Vinokur (collectively referred to as "Defendants" or "RGA").

4.     Some of the books and records and computer data that I reviewed were obtained

from Defendants' premises.

5.     Third-parties have also produced additional information in compliance with

requests made, and subpoenas served, by the Receiver.

6.     After a comprehensive analysis of Defendants' books, records and computer data,

as well as conversations with former RGA traders and clients, I reached the following

conclusions.

7.     The Complaint alleges that RGA solicited more than $3.5 million.  I found that

RGA solicited approximately $3.86 million in client funds.

8.     The $3.86 million RGA solicited is comprised of approximately $3.084 million

solicited for foreign exchange trading, $226,000 solicited for real estate investment, and

$550,000 solicited for loans made to RGA by clients.

9.     RGA foreign exchange investment clients had reported losses of approximately

$1.7 million (or 55% of their total investments), and no client profits were reported in

Defendants' books and records.  My conversations with clients confirm these findings.

10.    With respect to the foreign exchange investment clients, the majority of client

losses were caused by excessive and not fully disclosed commission and fee charges.

11.    In addition, bank records indicate that Defendants paid salaries, commissions to

themselves and other introducing brokers, and other operating expenses from client funds.

12.    Also, bank records and Defendants' notes indicate that Defendants used client funds to make loans to themselves.

13.    RGA also had three real estate investment clients.

14.    These clients do not appear in any of Defendants' computer data.    Thus, I obtained initial information about them from handwritten notes discovered in Defendants' files; I confirmed this information by comparing the notes with Defendants' bank statements.

15.    Based upon my investigation, it appears that only three clients participated in the real estate investment program.

16.    I did not identify any investments made on behalf of the real estate clients.

17.    RGA also had approximately 40 loan clients, who loaned RGA a total of more than $550,000 purportedly for branch expansion and business operations.

18.    RGA's books and records list these loan clients as "Investors in Corporation."

19.    I was unable to identify these funds being used by Defendants for any branch expansion or enhancement of business operations as originally marketed to the loan clients by Defendants.

20.    On November 21, 2005, the Court entered an order providing that loan clients should not be included in the proposed asset allocation plans.

21.    Handwritten and printed scripts discovered among Defendants' books and records, as well as discussions with clients, suggest that Defendants made false promises that clients would receive high rates of return on their investments.

22.    I prepared numerous spreadsheets detailing RGA's client account activity.

23.    I prepared these spreadsheets at the request of the Receiver and his counsel.

24.    These spreadsheets identify all RGA clients and will assist in the distribution of Defendants' restrained assets to these clients.

25.    I also prepared spreadsheets at the request of the United States Attorney's Office, the Probation Office of the Eastern District of New York, and Defendant Miron Vinokur's civil and criminal counsel.

26.    These spreadsheets are designed to assist in restitution in the criminal matters.

27.    All of the spreadsheets include, among other things, total investments, total withdrawals, total losses resulting from trading, which includes commissions and fees, remaining equity and amounts owed by RGA to the clients.

28.    The "amounts owed" is comprised of total investments minus withdrawals, and does not include the results of trading activity.

29.    Richmond Global Associates, L.L.C., Richmond Global Director L.L.C., Richmond Global MCA, L.L.C, Richmond Global Managed Account, L.L.C., Richmond Global, Ltd., R.G. Group Holdings, L.L.C., through the Defendants, Vincenzo Danio, Joseph Pappalardo, Ronald Turner and Miron Vinokur, solicited approximately $ 3.084 million in foreign exchange funds from 259 clients, and the clients withdrew a total of approximately $1.296 million of their funds.

30.    As a result, my findings indicate that 256 foreign exchange clients are owed $1,788,580.   No foreign exchange client had a profitable account.  Of the three clients who are not owed money, one client had insufficient account information and the remaining account balance was withdrawn; and the remaining two clients had either stopped payment on their checks or their accounts had insufficient funds.

4

31.    The amounts Defendants owe to the foreign exchange clients exclude amounts owed to the three real estate investment clients ($180,693) and 40 loan investment clients ($550,275).

Respectfully submitted,

_____
Joseph Merlino

SUBSCRIBED and SWORN TO BEFORE ME by Joseph Merlino on this 12ᵗʰ day of September 2007, to certify which witness my hand and official seal.

_____
Notary Public, State of New York

My Commission Expires: June 10, 2010

_____
Natalie A. Napierala
Print or Type Notary's Name

NATALIE A. NAPIERALA
Notary Public, State of New York
No. 02NA4995028
Qualified In New York County
Commission Expires June 10, 2010

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------------------------------------x
U.S. COMMODITY FUTURES               :
TRADING COMMISSION,                  :        05 CV 2181  (SAS)
                    Plaintiff,       :
          v.                         :        DECLARATION OF
                                     :        KARIN N. ROTH
RICHMOND GLOBAL ASSOCIATES, LLC,     :
et. al.                              :
                    Defendants.      :
                                     :
-------------------------------------------------------------x
```

I, Karin N. Roth, do hereby declare under penalty of perjury as follows:

1.       I am a Trial Attorney in the Division of Enforcement of the U.S. Commodity

Futures Trading Commission ("Commission"), Plaintiff in this action.  I am also a member of the

bar of this Court.  I make this declaration pursuant to Rule 55.1 and 55.2(a) of the Local Rules of

the Southern District of New York, in support of the Commission's motion for entry of a default

judgment against Defendants Richmond Global Associates, LLC, Richmond Global Director,

LLC, Richmond Global MCA, LLC, Richmond Global Managed Account, LLC, Richmond

Global, Ltd., RG Group Holdings, LLC (collectively the "Richmond Global Entities") and

Vincent Danio ("Danio").

Procedural History

2.       On February 16, 2005, the Commission commenced this action by filing a

complaint (the "Complaint") under seal against the Richmond Global Entities, Danio and others,

seeking injunctive and other equitable relief and civil penalties arising from the Defendants'

violations of the Commodity Exchange Act, 7 US.C. §§ 1 *et seq.* and the Commission's

Regulations promulgated thereunder.   Attached as Exhibit 1 is a copy of the Commission's

Complaint.

act or practice constituting a violation of any provision of the Act or any rule, regulation or order thereunder. In addition, Sections 2(c)(2)(B) and 2(c)(2)(C) of the Act, 7 U.S.C. §§ 2(c)(2)(B) and 2(c)(2)(C) (2002) provide that the Commission has jurisdiction over certain retail transactions in foreign currency for future delivery, including the transactions alleged in this complaint.

11. Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e) (2002), in that Defendants are found in, inhabit, or transact business in this district, and the acts and practices in violation of the Act have occurred, are occurring, or are about to occur within this district, among other places.

III.

**THE PARTIES**

A.    **Plaintiff**

12. The <u>U.S. Commodity Futures Trading Commission</u> is an independent federal regulatory agency that is charged with responsibility for administering and enforcing the provisions of the Act, 7 U.S.C. §§ 1 et seq. (2002), and the Regulations, 17 C.F.R. §§ 1 et seq. (2004).

B.    **Defendants**

13. <u>Richmond Global Ltd.</u> was incorporated in August 2001, as a New York domestic business corporation with offices located at 106 New Dorp Plaza, Suite 2b, Staten Island, New York. RG Ltd. has never been registered with the Commission in any capacity. RG Ltd. is not a futures commission merchant ("FCM"), an affiliate of a FCM, a broker or dealer, an associated person of a broker or dealer, an insurance company, a regulated subsidiary of an insurance

company, a financial holding company or an investment bank holding company (collectively, an "enumerated counterparty").

14. Richmond Global Director LLC became a New York limited liability company in April 2002, with offices located at the same Staten Island address. RG Director was registered with the Commission as a commodity pool operator between April 2002 and October 2002. RG Director is not an enumerated counterparty.

15. Richmond Global MCA LLC became a New York limited liability company in June 2003, with offices located at the same Staten Island address. RG MCA has never been registered with the Commission in any capacity and was not an enumerated counterparty.

16. Richmond Global Managed Account LLC became a New York limited liability company in April 2002, with offices located at the same Staten Island address. RG Managed has never been registered with the Commission in any capacity and is not an enumerated counterparty.

17. Richmond Global Associates, LLC became a New York limited liability company in February 2003, with offices at the same Staten Island address, and was purportedly created as a "branch office" of Richmond Global. RG Associates has never been registered with the Commission in any capacity and is not an enumerated counterparty.

18. RG Group Holdings, LLC  became a New York limited liability company in November 2003, with offices at the same Staten Island address. RG Group has never been registered with the Commission in any capacity and is not an enumerated counterparty.

19. Vincenzo Danio, who resides in Staten Island, New York, has held himself out as the President of RG Director, RG MCA and RG Managed, the bookkeeper of RG Ltd, and the Senior Account Manager of RG Associates. Danio was a signatory on six of the seven of the

Richmond Global Entities bank accounts. On monthly and quarterly statements sent to the

Richmond Global Entities customers, Danio was identified as the Director of Client Services.

Danio has never been registered with the Commission in any capacity.

20.    Joseph Pappalardo who resides in Staten Island, New York, has held himself out as

the Vice President and Senior Account Manager of RG Associates.  He is also a signatory on RG

Associates' bank accounts.  Pappalardo has never been registered with the Commission in any

capacity.

21.    Ronald Turner who resides in Staten Island, New York, has held himself out as

President of RG Associates.  He is a signatory on bank accounts maintained by RG Associates.

Turner has never been registered with the Commission in any capacity.

22.    Miron Vinokur who resides in Staten Island, New York, has held himself as a

Senior Vice President of RG Associates and a Vice President of RG Director.  Vinokur has never

been registered with the Commission in any capacity.

IV.

**STATUTORY BACKGROUND**

23.    Section 2(c)(2)(B)(i)-(ii) of the Act, 7 U.S.C. § 2(c)(2)(B)(i)-(ii) (2002), provides

that the Commission shall have jurisdiction over an agreement, contract or transaction in foreign

currency that is a sale of a commodity for future delivery, and is "offered to, or entered into with,

a person that is *not* an eligible contract participant, unless the counterparty, or the person offering

to be the counterparty, of the person is" a regulated entity, as defined therein (emphasis added).

Section 2(c)(2)(B)(i)-(ii) of the Act was enacted by Congress as part of the Commodity Futures

Modernization Act of 2000 ("CFMA"), CFMA § 2(5), Pub. L. No. 106-554, 114 Stat. 2763

(2000), in an effort "to clarify the jurisdiction of the Commodity Futures Trading Commission

over certain retail foreign exchange transactions and bucket shops that may not be otherwise regulated."

24.    Section 1a(12)(A)(xi) of the Act, 7 U.S.C. § 1a(12)(A)(xi) (2002), defines an "eligible contract participant" as, *inter alia*, an individual who has total assets exceeding:  (a) $10 million; or (b) $5 million and who enters into the agreement, contract, or transaction in order to manage the risk associated with an asset owned or liability incurred, or reasonably likely to be owned or incurred by the individual.  Thus, persons whose total assets are below those levels are not eligible contract participants.

25.    Section 2(c)(2)(B) of the Act, 7 U.S.C. § 2(c)(2)(B)(ii)(I) through (VI) (2002), further provides in pertinent part that the Commission shall have jurisdiction over an agreement, contract, or transaction in foreign currency involving  persons that are not eligible contract participants unless the counterparty, or the person offering to be the counterparty, of the person is a counterparty enumerated in that section.

26.    Section 2(c)(2)(C) of the Act, 7 U.S.C. § 2(c)(2)(C) (2002), however, provides that the Commission retains jurisdiction over such agreements, contracts, or transactions in foreign currency where one of the counterparties is an FCM for purposes of enforcing section 4b of the Act, 7 U.S.C. §6b (2002), among others.

27.    Section 4b(a)(2) of the Act, 7 U.S.C. § 6b(a)(2) (2002), provides, in pertinent part, it is unlawful for any person in or in connection with any sale of any futures contract of any commodity that is or may be used for hedging or determining the price basis of any transaction or for delivering any commodity in interstate commerce for or on behalf of any other person (i) to cheat or defraud or attempt to cheat or defraud such other person, (ii) willfully to make or cause to be made any false report or statement thereof, or to enter or cause to be entered any false

record, to or for such other person, or (iii) willfully to deceive or attempt to deceive such other person by any means whatsoever in regard to any such order or contract.

28.    Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2002), and Section 1.2 of the Regulations, 17 C.F.R. § 1.2 (2004), provide that the act, omission, or failure of any official, agent, or other person acting for any individual, association, partnership, corporation, or trust within the scope of his employment or office shall be deemed the act, omission, or failure of such individual, association, partnership, corporation, or trust, as well as of such official, agent or other person.

29.    Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2002), provides that any person who, directly or indirectly, controls any person who has violated any provision of the Act may be held liable for such violation in any action brought by the Commission to the same extent as the controlled person.

V.

FACTS

A.    **The Richmond Global Entities Acted as a Common Enterprise**

30.    The Richmond Global Entities held themselves out to the public, through a website and in customer documentation, as a unitary financial services company that managed funds for retail customers in the forex market through a Managed Currency Trading Account.

31.    The Richmond Global Entities shared office space, telephone numbers, a website, personnel, officers and customers. Retail customers dealt with one entity, which they knew as "Richmond Global."

32.    Funds of the various Richmond Global Entities, including customer funds, were often commingled.

33.   The Richmond Global Entities therefore acted as a common enterprise, and are jointly and severally liable for one anothers' violations of law.

**B.    The Richmond Global Entities' Fraudulent Operation**

34.   Defendants, through their website, telephone solicitations and other materials, made false and fraudulent representations to prospective customers to induce these individuals to open accounts with the Richmond Global Entities.

35.   To open a managed currency trading account, customers completed and signed account opening documents, as provided by and instructed by the Defendants, and sent them with their funds directly to the Richmond Global Entities.  Included with the account opening documentation was a power of attorney authorizing the Richmond Global Entities to trade on behalf of, or for the benefit of their customers.

36.   The Defendants promised their customers that they would be in regular telephone contact with customers about their account status, and would provide customers with account statements.

37.   After receiving the customers' funds, Defendants sent these funds, after deducting a disclosed two percent management fee, to one of three futures commission merchants ("FCMs"), after which the FCMs executed trades on behalf of the Defendants' customers.

38.   At rates set by the Richmond Global Entities, the FCMs deducted additional commissions on executed transactions from the customer funds they held.  These commissions, which were never disclosed to customers, were then paid directly to Richmond Global.

3.     Also on February 16, 2005, the Court granted the Commission's Application for an *ExParte* Statutory Restraining Order Freezing Defendants' Assets, Prohibiting Defendants from Destroying or Altering any Books, Records or other Documents and Appointing a Temporary Receiver and An Order to Show Cause why a Preliminary Injunction should not be Entered. *See Ex Parte* Restraining Order, docket entry no. 13. This Order states that it remains in full force and effect until further order of this Court.

4.     The Court unsealed this matter by an Order entered on February 17, 2005 and docketed on February 23, 2005. *See* February 17, 2005 Order, docket entry no. 4.

5.     The Richmond Global Entities and Danio have failed to answer to the Complaint and have failed to plead or otherwise defend the action.   On March 31, 2005, the Commission requested that the Clerk of the Court to enter a default against the Richmond Global Entities and Danio pursuant to Local Rule 55.1 and Rule 55(a) of the Federal Rules of Civil Procedure.  In its request, the Commission established that Richmond Global Entities and Danio were properly served and that they failed to appear, file an answer or otherwise move with respect to the Complaint. In addition, the Commission demonstrated that the Richmond Global Entities are business entities and Danio is not an infant, in the military or incompetent. *See* Request to Enter Default against Danio and the Richmond Global Entities, docket entry nos. 29-35.

6.     Based on this proper showing by the Commission, on April 5 and 6, 2005, the Clerk of the Court issued certificates of default holding the Richmond Global Entities and Danio in default. Copies of these certificates of default are attached as Exhibit 2.

7.     On January 5, 2007, the Commission moved for summary judgment against defendants Joseph Pappalardo ("Pappalardo"), Ronald Turner ("Turner") and Miron Vinokur ("Vinokur").  On April 24, 2007, the Court granted the Commission's motion and entered a

permanent injunction against Pappalardo, Turner and Vinokur and ordered them to pay a civil

monetary penalty, restitution and disgorgement. *See* Order dated April 24, 2007, docket no. 66.

Related Criminal Matter and Guilty Pleas

8.      In an indictment filed on February 10, 2005 in the U.S. District Court for the

Southern District of New York (05 Cr. 157 (BSJ)), Danio, along with Pappalardo, Turner and

Vinokur (collectively the "criminal defendants") were each charged with one count of

conspiracy to commit mail fraud and wire fraud, and with four counts of wire fraud in

connection with the same fraudulent conduct that is the basis for the Commission's Complaint in

the present case. *See* Indictment in U.S. v. Danio, et al., 05 Cr. 157 (BSJ) docket entry no. 1.

Specifically, the Indictment charged that the criminal defendants engaged in an illegal scheme to

defraud customers who invested in the forex market through the Richmond Global Entities. The

Indictment further charged that to effectuate this scheme, the criminal defendants made, or

caused sales brokers to make, various misrepresentations to potential retail customers to induce

them to invest with the Richmond Global Entities for the purpose of trading in the forex market

and that they provided customers with false and fraudulent account statements that disguised

commissions taken by the Richmond Global Entities as trading losses. In addition, the

Indictment charged that the criminal defendants caused customer funds, in five distinct instances,

to be improperly transferred from one of the Richmond Global Entities' clearing brokers to a

Richmond Global bank account. The indictment alleged that the criminal defendants

misappropriated approximately $981,500 of investors' funds.

9.      On December 21, 2005, Danio pled guilty to Count One of the criminal

indictment against him before the Honorable Barbara S. Jones relating to his conduct at

Richmond Global. Attached as Exhibit 3 is a copy of pertinent portions of the transcript of

Danio's plea hearing, in which he admits to having defrauded Richmond Global investors. Danio was sentenced to thirty months in jail, three years of supervised release, and ordered to pay $400,000 in restitution to the Court appointed receiver for the Richmond Global Entities. *See* the criminal judgment against Danio, attached as Exhibit 4.

10.    Vinokur pled guilty to Count One of the criminal indictment on November 2, 2005 before the Honorable Barbara S. Jones. Attached as Exhibit 5 is a copy of pertinent portions of the transcript of Vinokur's plea hearing, in which he admits to having defrauded Richmond Global investors. On March 3, 2006, Judge Jones sentenced Vinokur to a prison term of one year and one day, three years of supervised release, and an assessment of $100. *See* the criminal judgment against Vinokur, attached as Exhibit 6.

11.    On June 28, 2006, Pappalardo pled guilty to Count One of the Richmond Global-related criminal indictment before the Honorable Cheryl L. Pollak, United States Magistrate Judge for the Eastern District of New York (prior to his plea, the criminal case against Pappalardo was transferred to the Eastern District for plea and sentencing). Attached as Exhibit 7 is a copy of pertinent portions of the transcript of Pappalardo's plea hearing, in which he admits to having defrauded Richmond Global investors. On April 11, 2007, Pappalardo was sentenced to a prison term of two years, three years of supervised release, restitution of $400,000 and an assessment of $200. This sentence was imposed for his conduct relating to the Richmond Global Entities as well as for an unrelated criminal conviction. *See* the criminal judgment against Pappalardo, attached as Exhibit 8.

12.    On November 1, 2005, Turner pled guilty to all counts of the Richmond Global related criminal indictment before the Honorable Raymond J. Dearie, United States District Judge for the Eastern District of New York (prior to his plea, the criminal case against Turner

4

was transferred to Eastern District of New York). This plea is under seal. On August 28, 2007,

Turner was sentenced to a prison term of thirty months, three years of supervised release,

restitution of $400,000 and an assessment of $200. This sentence was imposed for his conduct

relating to the Richmond Global Entities as well as for an unrelated criminal conviction. *See* the

criminal judgment against Turner, attached as Exhibit 9.

I declare under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct.

Executed at New York, New York on September 17, 2007

Karin N. Roth

5

**EXHIBIT 1**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FILED UNDER SEAL

05 CV 2181

| | |
|---|---|
| U.S. Commodity Futures Trading Commission, | ) |
| | ) 05 CV _____ |
| Plaintiff, | ) |
| | ) |
| JUDGE SCHEINDLIN | ) |
| | ) |
| | ) COMPLAINT FOR INJUNCTIVE |
| Richmond Global Associates, LLC, | ) AND OTHER EQUITABLE |
| Richmond Global Director, LLC, | ) RELIEF AND FOR PENALTIES |
| Richmond Global MCA, LLC, | ) UNDER THE COMMODITY |
| Richmond Global Managed Account, LLC, | ) EXCHANGE ACT, AS |
| Richmond Global, Ltd., | ) AMENDED, 7 U.S.C. §§ 1-25 |
| RG Group Holdings, LLC, | ) |
| Vincenzo Danio, | ) |
| Joseph Pappalardo, | ) |
| Ronald Turner, and | ) |
| Miron Vinokur, | ) |
| | ) |
| | ) |
| Defendants. | ) |
| | ) |

I.

## SUMMARY

1.    At various times between December 2001 and the present (the "relevant time

period"), Richmond Global Associates, LLC ("RG Associates"), Richmond Global Director,

LLC ("RG Director"), Richmond Global MCA, LLC ("RG MCA"), Richmond Global Managed

Account, LLC ("RG Managed"), Richmond Global, Ltd. ("RG Ltd."), RG Group Holdings, LLC

("RG Group") (collectively, the "Richmond Global Entities"), Vincenzo Danio ("Danio"),

Joseph Pappalardo ("Pappalardo"), Ronald Turner ("Turner"), and Miron Vinokur ("Vinokur")

(collectively, including the Richmond Global Entities, the "Defendants") solicited funds from

customers purportedly to be used for trading foreign currency ("forex") contracts, which in fact, were forex futures contracts.

2.    During the relevant time period, Defendants and others under their control acted as a common enterprise in a scheme to defraud retail customers.  The Defendants and others under their control made misrepresentations to customers to induce them to open accounts with and provide funds to the Richmond Global Entities in order to trade in the forex market.  Through this scheme, Defendants fraudulently solicited and obtained more than $3.5 million dollars from at least 160 customers and used at least $981,500 of these funds for their own purposes.

3.    The Defendants made false promises of high returns, failed to disclose hidden commission charges and concealed these charges as trading losses in customer account statements, made false representations regarding the Defendants' experience and past performance in trading forex, and misappropriated customer funds.  Defendants also falsely represented to customers that they had the ability to minimize trading losses through the use of stop-loss mechanisms.

4.    Through the conduct described above, Defendants violated Section 4b(a)(2) of the Commodity Exchange Act (the "Act"), 7 U.S.C. § 6b(a)(2) (2002).

5.    Defendants Danio, Pappalardo and Turner are liable as controlling persons for the violations by the Richmond Global entities and others they controlled of Section 4b(a)(2) of the Act, pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2002).

6.    The Richmond Global Entities are liable for the violations of Section 4b(a)(2) of the Act by their officers, directors, managers, employees, and agents, pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2002), and Section 1.2 of the Commission's Regulations

promulgated thereunder (the "Regulations"), 17 C.F.R. § 1.2 (2004), as all such violations were within the scope of their office or employment with the Richmond Global entities.

7.    The Defendants are also jointly and severally liable for the acts and practices of one another as participants in an illegal common enterprise.

8.    Unless restrained and enjoined by this Court, Defendants are likely to continue to engage in the acts and practices alleged in this Complaint and in similar acts and practices, as more fully described below.

9.    Accordingly, pursuant to Section 6c(a) of the Act, 7 U.S.C. § 13a-1 (2002), Plaintiff U.S. Commodity Futures Trading Commission (the "Commission") brings this action to enjoin the unlawful acts and practices of Defendants, and to compel their compliance with the provisions of the Act.  In addition, the Commission seeks civil penalties, an *ex parte* statutory restraining order, a preliminary injunction, and the appointment of a receiver over any funds frozen to maintain the status quo for the victims of the Defendants.  Furthermore, this action will ultimately seek permanent injunctive relief, other relief, including restitution, disgorgement, and civil monetary penalties, and such other equitable relief as the Court may deem necessary or appropriate.

## II.

## JURISDICTION AND VENUE

10.    The Act prohibits fraud in connection with the trading of commodity futures contracts and establishes a comprehensive system for regulating the purchase and sale of such futures contracts.  This Court has jurisdiction over this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, which authorizes the Commission to seek injunctive relief against any person whenever it shall appear that such person has engaged, is engaging, or is about to engage in any

act or practice constituting a violation of any provision of the Act or any rule, regulation or order

thereunder. In addition, Sections 2(c)(2)(B) and 2(c)(2)(C) of the Act, 7 U.S.C. §§ 2(c)(2)(B)

and 2(c)(2)(C) (2002) provide that the Commission has jurisdiction over certain retail

transactions in foreign currency for future delivery, including the transactions alleged in this

complaint.

      11.   Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C.

§ 13a-1(e) (2002), in that Defendants are found in, inhabit, or transact business in this district,

and the acts and practices in violation of the Act have occurred, are occurring, or are about to

occur within this district, among other places.

III.

**THE PARTIES**

A.    **Plaintiff**

      12.   The U.S. Commodity Futures Trading Commission is an independent federal

regulatory agency that is charged with responsibility for administering and enforcing the

provisions of the Act, 7 U.S.C. §§ 1 et seq. (2002), and the Regulations, 17 C.F.R. §§ 1 et seq.

(2004).

B.    **Defendants**

      13.   Richmond Global Ltd. was incorporated in August 2001, as a New York domestic

business corporation with offices located at 106 New Dorp Plaza, Suite 2b, Staten Island, New

York. RG Ltd. has never been registered with the Commission in any capacity. RG Ltd. is not a

futures commission merchant ("FCM"), an affiliate of a FCM, a broker or dealer, an associated

person of a broker or dealer, an insurance company, a regulated subsidiary of an insurance

4

company, a financial holding company or an investment bank holding company (collectively, an "enumerated counterparty").

14. Richmond Global Director LLC became a New York limited liability company in April 2002, with offices located at the same Staten Island address. RG Director was registered with the Commission as a commodity pool operator between April 2002 and October 2002. RG Director is not an enumerated counterparty.

15. Richmond Global MCA LLC became a New York limited liability company in June 2003, with offices located at the same Staten Island address. RG MCA has never been registered with the Commission in any capacity and was not an enumerated counterparty.

16. Richmond Global Managed Account LLC became a New York limited liability company in April 2002, with offices located at the same Staten Island address. RG Managed has never been registered with the Commission in any capacity and is not an enumerated counterparty.

17. Richmond Global Associates, LLC became a New York limited liability company in February 2003, with offices at the same Staten Island address, and was purportedly created as a "branch office" of Richmond Global. RG Associates has never been registered with the Commission in any capacity and is not an enumerated counterparty.

18. RG Group Holdings, LLC became a New York limited liability company in November 2003, with offices at the same Staten Island address. RG Group has never been registered with the Commission in any capacity and is not an enumerated counterparty.

19. Vincenzo Danio, who resides in Staten Island, New York, has held himself out as the President of RG Director, RG MCA and RG Managed, the bookkeeper of RG Ltd, and the Senior Account Manager of RG Associates. Danio was a signatory on six of the seven of the

Richmond Global Entities bank accounts. On monthly and quarterly statements sent to the

Richmond Global Entities customers, Danio was identified as the Director of Client Services.

Danio has never been registered with the Commission in any capacity.

20. Joseph Pappalardo who resides in Staten Island, New York, has held himself out as

the Vice President and Senior Account Manager of RG Associates. He is also a signatory on RG

Associates' bank accounts. Pappalardo has never been registered with the Commission in any

capacity.

21. Ronald Turner who resides in Staten Island, New York, has held himself out as

President of RG Associates. He is a signatory on bank accounts maintained by RG Associates.

Turner has never been registered with the Commission in any capacity.

22. Miron Vinokur who resides in Staten Island, New York, has held himself as a

Senior Vice President of RG Associates and a Vice President of RG Director. Vinokur has never

been registered with the Commission in any capacity.

IV.

<strong><u>STATUTORY BACKGROUND</u></strong>

23. Section 2(c)(2)(B)(i)-(ii) of the Act, 7 U.S.C. § 2(c)(2)(B)(i)-(ii) (2002), provides

that the Commission shall have jurisdiction over an agreement, contract or transaction in foreign

currency that is a sale of a commodity for future delivery, and is "offered to, or entered into with,

a person that is *not* an eligible contract participant, unless the counterparty, or the person offering

to be the counterparty, of the person is" a regulated entity, as defined therein (emphasis added).

Section 2(c)(2)(B)(i)-(ii) of the Act was enacted by Congress as part of the Commodity Futures

Modernization Act of 2000 ("CFMA"), CFMA § 2(5), Pub. L. No. 106-554, 114 Stat. 2763

(2000), in an effort "to clarify the jurisdiction of the Commodity Futures Trading Commission

6

over certain retail foreign exchange transactions and bucket shops that may not be otherwise regulated."

24.   Section 1a(12)(A)(xi) of the Act, 7 U.S.C. § 1a(12)(A)(xi) (2002), defines an "eligible contract participant" as, *inter alia*, an individual who has total assets exceeding:  (a) $10 million; or (b) $5 million and who enters into the agreement, contract, or transaction in order to manage the risk associated with an asset owned or liability incurred, or reasonably likely to be owned or incurred by the individual.  Thus, persons whose total assets are below those levels are not eligible contract participants.

25.   Section 2(c)(2)(B) of the Act, 7 U.S.C. § 2(c)(2)(B)(ii)(I) through (VI) (2002), further provides in pertinent part that the Commission shall have jurisdiction over an agreement, contract, or transaction in foreign currency involving  persons that are not eligible contract participants unless the counterparty, or the person offering to be the counterparty, of the person is a counterparty enumerated in that section.

26.   Section 2(c)(2)(C) of the Act, 7 U.S.C. § 2(c)(2)(C) (2002), however, provides that the Commission retains jurisdiction over such agreements, contracts, or transactions in foreign currency where one of the counterparties is an FCM for purposes of enforcing section 4b of the Act, 7 U.S.C. §6b (2002), among others.

27.   Section 4b(a)(2) of the Act, 7 U.S.C. § 6b(a)(2) (2002), provides, in pertinent part, it is unlawful for any person in or in connection with any sale of any futures contract of any commodity that is or may be used for hedging or determining the price basis of any transaction or for delivering any commodity in interstate commerce for or on behalf of any other person (i) to cheat or defraud or attempt to cheat or defraud such other person, (ii) willfully to make or cause to be made any false report or statement thereof, or to enter or cause to be entered any false

record, to or for such other person, or (iii) willfully to deceive or attempt to deceive such other person by any means whatsoever in regard to any such order or contract.

28.  Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2002), and Section 1.2 of the Regulations, 17 C.F.R. § 1.2 (2004), provide that the act, omission, or failure of any official, agent, or other person acting for any individual, association, partnership, corporation, or trust within the scope of his employment or office shall be deemed the act, omission, or failure of such individual, association, partnership, corporation, or trust, as well as of such official, agent or other person.

29.  Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2002), provides that any person who, directly or indirectly, controls any person who has violated any provision of the Act may be held liable for such violation in any action brought by the Commission to the same extent as the controlled person.

V.

## FACTS

A.    **The Richmond Global Entities Acted as a Common Enterprise**

30.  The Richmond Global Entities held themselves out to the public, through a website and in customer documentation, as a unitary financial services company that managed funds for retail customers in the forex market through a Managed Currency Trading Account.

31.  The Richmond Global Entities shared office space, telephone numbers, a website, personnel, officers and customers.  Retail customers dealt with one entity, which they knew as "Richmond Global."

32.  Funds of the various Richmond Global Entities, including customer funds, were often commingled.

33.   The Richmond Global Entities therefore acted as a common enterprise, and are jointly and severally liable for one anothers' violations of law.

B.    **The Richmond Global Entities' Fraudulent Operation**

34.   Defendants, through their website, telephone solicitations and other materials, made false and fraudulent representations to prospective customers to induce these individuals to open accounts with the Richmond Global Entities.

35.   To open a managed currency trading account, customers completed and signed account opening documents, as provided by and instructed by the Defendants, and sent them with their funds directly to the Richmond Global Entities.  Included with the account opening documentation was a power of attorney authorizing the Richmond Global Entities to trade on behalf of, or for the benefit of their customers.

36.   The Defendants promised their customers that they would be in regular telephone contact with customers about their account status, and would provide customers with account statements.

37.   After receiving the customers' funds, Defendants sent these funds, after deducting a disclosed two percent management fee, to one of three futures commission merchants ("FCMs"), after which the FCMs executed trades on behalf of the Defendants' customers.

38.   At rates set by the Richmond Global Entities, the FCMs deducted additional commissions on executed transactions from the customer funds they held.  These commissions, which were never disclosed to customers, were then paid directly to Richmond Global.

39.    Each of the FCMs provided the Richmond Global Entities with transaction records showing the profit/loss from each executed forex futures trade and the commission charged on the transaction and returned to the Richmond Global Entities.

40.    The account statements issued by the Richmond Global Entities to the customers detailed only the customers' net cash position:  the balance at the beginning of the period, customer deposits, customer withdrawals, profit or loss, management fees, and the balance at the end of the period.  The statements did not provide any information regarding the forex futures trading executed on the customer's behalf or for the customer's benefit.

C.    **Defendants Cheated and Defrauded Customers**

41.    Defendants or others under their control made misrepresentations to customers to induce them to open accounts with and provide funds to the Richmond Global Entities in order to trade in the forex market.  Specifically, the Defendants made false promises of high returns, failed to disclose hidden commission charges and made false representations regarding the Defendants' experience and past performance in trading forex and the purported minimal risks of trading forex.

42.    Defendants falsely represented to customers that the Richmond Global Entities employed as many as twelve researchers and analysts and had between $10 and 12 million under management in the forex market, when in fact they did not employ researchers or analysts, and never had more than $ 1.2 million under management in the forex market.

43.    Defendants falsely represented to retail customers that the Richmond Global Entities generated profits as high as 40% annually, and that they would, in the future, generate profits of 45% annually, when in fact they seldom generated any net profits for their customers trading in the forex market.

44.   Defendants falsely represented to retail customers that money invested in the forex market was like money placed in a bank account, when Defendants knew that investments in the forex market were, in fact, highly speculative and volatile.

45.   Defendants further misrepresented that stop-loss mechanisms were in place to limit trading losses to 10% of the customers' investments, when in fact customer losses far larger than that were common.

46.   Defendants falsely represented to retail customers that the Richmond Global Entities charged customers only a 2% management fee and 10% of any profits generated through trading. Defendants, however, charged customers undisclosed commission fees ranging from approximately 16% to 39%.

47.   Defendants received these funds by instructing the FCMs executing the trades to deduct a portion of the customers' funds and to return those funds to the Defendants as commissions.  Commissions totaling approximately $981,500 were returned from the FCMs to the Defendants and the Defendants then used these funds for their own purposes.

48.   In order to conceal the unauthorized commissions, Defendants issued false account statements to customers that falsely and misleadingly characterized the undisclosed commissions as trading losses.

49.   Defendants therefore misappropriated customer funds.

50.   Defendants agreed to receive, and received, $30,000 from an undercover FBI agent ("UCA") posing as a hedge fund manager seeking to invest funds in the forex market with the Richmond Global entities.  Defendants agreed with the UCA that they and the UCA would charge the fund undisclosed commissions on trades, and that Defendants and the UCA would split the commissions secretly charged to the hedge fund's account.

**D.    Richmond Global Traded Futures Contracts on Behalf of Their Customers**

51.    Defendants, for or on behalf of their customers, entered into foreign currency futures contracts with one of three FCMs.  The contracts traded were for Japanese yen, British pounds, Euros, and other foreign currencies, with the price set at the time the contract was entered into. Subsequent to the time a contract position was established (or, in some cases, the same date the position was entered into), the position in the currency was terminated, presumably offset at a price that reflected market conditions at that time.  The contract between the FCMs and the Richmond Global Entities, which was entered into for and on behalf of, and for the benefit of, the ultimate customers, provided explicitly that the contracts could be offset.

52.    Customers were required to maintain certain margin requirements.

53.    There was no indication in any of the customer records and materials that physical currency was ever actually bought or sold for the customers.  None of these customer accounts were opened for a business or personal need to make or take delivery of foreign currencies, and there was no indication that customers were required to hold, or possessed the requisite bank accounts or necessary credit to acquire or deliver, currency against any of the contracts purchased on their behalf.  There is no indication that customers ever intended that their contracts be used to take delivery of any foreign currencies.

54.    The contracts traded for these customers were traded in multiples of ten units of currency and delivery specifications such as location and timing were identical across the various contracts, and they were effectively standardized and interchangeable with one another.  The transactions offered to customers were entirely paper transactions.  As such, the contracts contain the characteristics of a futures contract.

55.  Neither the known customers to the forex transactions nor the Richmond Global Entities appear to be eligible contract participants, because their assets are less than $5 million and they opened their accounts in order to speculate on price changes in foreign currencies.

E.  **Controlling Persons**

56.  Danio acted as a controlling person.  He was a signatory on six of the seven known Richmond Global bank accounts.  On the two RG MCA bank accounts, Danio's title was listed as President.  On the two RG Ltd. bank accounts, his title was listed as bookkeeper.  On the RG Director bank account, he was identified as an authorized signer.  On the RG Managed Account bank account, he was initially identified as an authorized signer and was later identified as Secretary.  An undated signature card also identifies him as President of RG Managed.  On a letter sent to at least one customer, Danio signed as the President of RG Director.  On monthly and quarterly statements sent to the Richmond Global Entities' customers prior to January 2004, Danio was identified as the Director of Client Services for RG Director.  On monthly and quarterly statement sent to retail customers after January 2004, Danio was identified as the Director of Client Services for "Richmond Global."  Danio signed at least one letter sent to customers of the Richmond Global Entities as Senior Account Manager of RG Associates.  Danio also dealt with customer complaints and inquiries for the Richmond Global Entities.

57.  Danio failed to act in good faith, or knowingly induced, directly or indirectly, the the acts constituting the violations alleged herein, in that he fraudulently solicited customers.

58.  Pappalardo acted as a controlling person.  He was a signatory on the RG Associates account, where his title was listed as Vice President.  In addition, he signed at least one loan agreement as Vice President of RG Associates.  In addition, Pappalardo signed at least one letter sent to customers as Vice President Senior Account Manager of RG Associates.

59. Pappalardo failed to act in good faith, or knowingly induced, directly or indirectly, the the acts constituting the violations alleged herein, in that he fraudulently solicited customers.

60. Turner acted as a controlling person. Turner is President of RG Associates and is a signatory on bank accounts maintained by RG Associates. Turner signed at least one letter sent to customers as President of RG Associates.

61. Turner failed to act in good faith, or knowingly induced, directly or indirectly, the acts constituting the violations alleged herein, in that he fraudulently solicited customers.

### VI.

### VIOLATIONS OF THE COMMODITY EXCHANGE ACT AND COMMISSION REGULATIONS

### COUNT I

**Fraud in the Sale of Futures Contracts**

62. Paragraphs 1 through 61 are re-alleged and incorporated herein.

63. During the relevant time period, Defendants cheated or defrauded or attempted to cheat or defraud customers or prospective customers of the Richmond Global Entities and willfully deceived or attempted to deceive customers or prospective customers by, among other things: making false promises of high returns, failing to disclose hidden commission charges, issuing false reports which conceal the undisclosed commission charges as trading losses, and making false representations regarding the Defendants' experience, past performance in trading forex and the purported minimal risks of trading forex, and misappropriated customer funds, all in violation of Section 4b(a)(2) of the Act, 7 U.S.C. § 6b(a)(2) (2002). Defendants' conduct alleged above was in connection with the orders to make, or the making of, contracts of sale of commodities for future delivery, made or to be made, for or on behalf of any other persons, and

such contracts for future delivery were or could be used for the purposes set forth in Section 4b(a)(2) of the Act, 7 U.S.C. § 6b(a)(2) (2002).

64.    During the relevant time period, Defendants Danio, Pappalardo and Turner directly or indirectly controlled the Richmond Global Entities, their employees, and others and did not act in good faith or knowingly induced, directly or indirectly, the acts constituting the violations described in this Count I. Thus, pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2002), as described in this Count, Defendants Danio, Pappalardo and Turner are liable for the violations described in this Count, to the same extent as the Richmond Global Entities.

65.    Pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2002), and Commission Regulation 1.2, 17 C.F.R. § 1.2 (2004), the Richmond Global Entities are liable for any violations of Section 4b(a)(2), 7 U.S.C. § 6b(a)(2) (2002), of the Act by their officers, directors, managers, employees, and agents, in that all such violations were within the scope of their office or employment with the Richmond Global Entities.

66.    The Richmond Global Entities acted as a common enterprise, and therefore are jointly and severally liable for the actions of one another.

67.    Each material misrepresentation or omission made during the relevant period, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of Section 4b(a)(2) of the Act, 7 U.S.C. § 6b(a)(2) (2002).

## VII.

## RELIEF REQUESTED

WHEREFORE, the Commission respectfully requests that this Court, as authorized by Section 6c of the Act, 7 U.S.C. § 13a-1 (2002), and pursuant to the Court's own equitable powers:

A.    Find that Defendants violated Section 4b(a)(2) of the Act, 7 U.S.C. § 6b(a)(2) (2002);

B.    Enter an *ex parte* statutory restraining order and orders of preliminary and permanent injunctions restraining and enjoining Defendants and all persons insofar as they are acting in the capacity of their agents, servants, successors, assigns, and attorneys, and all persons insofar as they are acting in active concert or participation with them who receive actual notice of such order by personal service or otherwise, from directly or indirectly:

    1.    destroying, mutilating, concealing, altering or disposing of any books and records, documents, correspondence, brochures, manuals, electronically stored data, tape records or other property of Defendants, wherever located, including all such records concerning Defendants' business operations;

    2.    refusing to permit authorized representatives of the Commission to inspect, when and as requested, any books and records, documents, correspondence, brochures, manuals, electronically stored data, tape records or other property of Defendants, wherever located, including all such records concerning Defendants' business operations; and

    3.    withdrawing, transferring, removing, dissipating, concealing, or disposing of, in any manner, any funds, assets, or other property, wherever situated, including but not limited to, all funds, personal property, money or securities held in safes, safety deposit boxes and all funds on deposit in any financial institution, bank or savings and loan account held by, under the control, or in the name of any of the Defendants for the amounts indicated in this complaint; and

16

C.    Enter an *ex parte* statutory restraining order and order of preliminary injunction appointing a temporary receiver to take into his or her immediate custody, control, and possession all cash, cashier's checks, funds, assets, and property of Defendants, including funds or property of investors wherever found, whether held in the name of any of the Defendants or otherwise, including, but not limited to, all books and records of account and original entry, electronically stored data, tape recordings, all funds, securities, contents of safety deposit boxes, metals, currencies, coins, real or personal property, commodity futures trading accounts, bank and trust accounts, mutual fund accounts, credit card line-of-credit accounts and other assets, of whatever kind and nature and wherever situated, and authorizing, empowering and directing such receiver to collect and take charge of and to hold and administer the same subject to further order of the Court, in order to prevent irreparable loss, damage and injury to investors, to conserve and prevent the dissipation of funds, and to prevent further evasions and violations of the federal commodity laws by Defendants; and

D.    Enter an *ex parte* statutory restraining order and orders of preliminary and permanent injunctions prohibiting Defendants and any other person or entity associated with them, including any successor thereof, from:

1.    engaging in conduct, in violation of Section 4b(a)(2) of the Act, 7 U.S.C. § 6b(a)(2) (2002); and

2.    soliciting funds for, engaging in, controlling, or directing the trading of any commodity futures or options accounts for or on behalf of any other person or entity, whether by power of attorney or otherwise;

E.    Enter an *ex parte* statutory restraining order and orders of preliminary and permanent injunctions directing Defendants to provide Plaintiff immediate and continuing access to their books and records;

F.    Enter an order appointing a permanent equity receiver to take into his or her immediate custody and control, all cash, cashier's checks, funds, assets, and property of Defendants, including funds or property of investors wherever found, whether held in the name of any of the Defendants or otherwise, including, but not limited to, all books and records of account and original entry, electronically stored data, tape recordings, all funds, securities, contents of safety deposit boxes, metals, currencies, coins, real or personal property, commodity futures trading accounts, bank and trust accounts, mutual fund accounts, credit card line-of-credit accounts and other assets, of whatever kind and nature and wherever situated, and authorizing, empowering and directing such receiver to collect and take charge of and to hold and administer the same subject to further order of the Court, in order to prevent irreparable loss, damage and injury to investors, to conserve and prevent the dissipation of funds, and to prevent further evasions and violations of the federal commodity laws by Defendants;

G.    Enter an *ex parte* statutory restraining order and orders of preliminary and permanent injunctions directing Defendants to take such steps as are necessary to transfer possession of all assets including the repatriation to the territory of the United States all funds and assets of Defendants' customers described herein which are held by Defendants or are under their direct or indirect control, jointly or singly, and deposit such funds into the Registry of this Court or otherwise as the Court may order, and provide the Commission, the Receiver, and the Court with a written description of the funds and assets so repatriated;

18

H.    Enter an order of permanent injunction directing Defendants, and any successors thereof, to disgorge, pursuant to such procedure as the Court may order, all benefits received including, but not limited to, salaries, commissions, loans, fees, revenues and trading profits derived, directly or indirectly, from acts or practices which constitute violations of the Act as described herein, including pre-judgment interest thereon from the date of such violations;

I.    Enter an order of permanent injunction directing Defendants to make full restitution to every customer whose funds were received by them as a result of acts and practices which constituted violations of the Act and Regulations, as described herein, and interest thereon from the date of such violations;

J.    Enter an order of permanent injunction assessing a civil monetary penalty against each defendant in the amount of not more than the higher of $120,000 for each violation of the Act committed on or before October 23, 2004, and $130,000 for each violation committed thereafter or triple the monetary gain to the defendant;

K.    Enter an *ex parte* statutory restraining order and orders of preliminary and permanent injunctions directing that Defendants make an accounting to the court of all their assets and liabilities, together with all funds they received from and paid to clients and other persons in connection with commodity futures transactions or purported commodity futures transactions, and all disbursements for any purpose whatsoever of funds received from commodity transactions, including salaries, commissions, interest, fees, loans and other disbursements of money and property of any kind, from, but not limited to, December 2001 through and including the date of such accounting;

L.    Enter an order of permanent injunction requiring Defendants to pay costs and fees as permitted by 28 U.S.C. §§ 1920 and 2412(a)(2) (2002);

M.    Order such other and further remedial ancillary relief as the Court may deem

appropriate.

                                        Respectfully submitted,

Dated:  New York, NY

        February 15 , 2005

                                        ATTORNEYS FOR PLAINTIFF
                                        COMMODITY FUTURES TRADING
                                        COMMISSION

                                        Stephen J. Obie
                                        Regional Counsel


                                        By: Karin A. Roth
                                        Karin Roth [KR-2669]
                                        Senior Trial Attorney

                                        Steven Ringer [SR-9491]
                                        Chief Trial Attorney

                                        David W. MacGregor
                                        Chief Trial Attorney

                                        Division of Enforcement
                                        U.S. Commodity Futures Trading Commission
                                        Eastern Regional Office
                                        140 Broadway, 19th Floor
                                        New York, New York 10005
                                        (646) 746-9764
                                        (646) 746-9940 (facsimile)
                                        kroth@cftc.gov

**EXHIBIT 2**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
                                              :
U.S. COMMODITY FUTURES TRADING                :
COMMISSION                                    :     **DECLARATION IN SUPPORT**
                                              :     **OF APPLICATION FOR ENTRY**
                    Plaintiffs,               :     **OF DEFAULT AGAINST**
                                              :     **RICHMOND GLOBAL**
                                              :     **DIRECTOR, LLC**
          v.                                  :
                                              :     05 Civ. 2181 (SAS)
RICHMOND GLOBAL ASSOCIATES, L.L.C.            :
et al.                                        :
                    Defendants.               :
                                              :
-------------------------------------------------------------x

## DECLARATION OF KARIN N. ROTH

I, Karin N. Roth, declare, pursuant to the penalty of perjury, as follows:

1.      I am a member of the Bar of this Court and am a Trial Attorney with the U.S.

Commodity Futures Trading Commission (the "CFTC"), plaintiff in the above-entitled action,

and I am familiar with the facts and circumstances in this action.

2.      I submit this declaration pursuant to Rule 55(a) of the Federal Rules of Civil

Procedure and Rule 55.1 of the Civil Rules for the Southern District of New York, in support of

plaintiff's application for a certificate of default against defendant Richmond Global Director,

LLC ("RG Director").

3.      RG Director is a business entity and is not an infant, serving in the military, or an

incompetent person.

4.      This action was commenced on February 16, 2005, by the filing of the summons

and complaint.  (*See* Docket Entry No. 5).  Copies of the summons and complaint were served on

RG Director on February 17, 2005, by personal service on Vincenzo Danio, President of RG

Director, pursuant to N.Y. C.P.L.R. 311-a (2005). Proof of such service was filed. (*See* Docket Entry No. 6).

5.     RG Director has failed to answer the complaint, and the time for RG Director to answer the complaint has expired. RG Director has failed to appear in, plead, or otherwise defend this action.

WHEREFORE, plaintiff requests the entry of Default against RG Director.



_____/s/ Karin N.Roth_____
Karin N. Roth [KR-2669]

Dated: March 31, 2005
       New York, New York

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
                                                    :
U.S. COMMODITY FUTURES TRADING          :        **DECLARATION IN SUPPORT**
COMMISSION                                         :        **OF APPLICATION FOR ENTRY**
                                                    :        **OF DEFAULT AGAINST**
                    Plaintiffs,               :        **RICHMOND GLOBAL**
                                                    :        **ASSOCIATES LLC**
                    v.                         :
                                                    :        05 Civ. 2181 (SAS)
RICHMOND GLOBAL ASSOCIATES, L.L.C.    :
et al.                                             :
                    Defendants.              :
                                                    :
-----------------------------------------------------------------x

## DECLARATION OF KARIN N. ROTH

I, Karin N. Roth, declare, pursuant to the penalty of perjury, as follows:

1.      I am a member of the Bar of this Court and am a Trial Attorney with the U.S.

Commodity Futures Trading Commission (the "CFTC"), plaintiff in the above-entitled action,

and I am familiar with the facts and circumstances in this action.

2.      I submit this declaration pursuant to Rule 55(a) of the Federal Rules of Civil

Procedure and Rule 55.1 of the Civil Rules for the Southern District of New York, in support of

plaintiff's application for a certificate of default against defendant Richmond Global Associates,

LLC ("RG Associates").

3.      RG Associates is a business entity and is not an infant, serving in the military, or

an incompetent person.

4.      This action was commenced on February 16, 2005, by the filing of the summons

and complaint.  (*See* Docket Entry No. 5).  Copies of the summons and complaint were served on

RG Associates on February 18, 2005, by personal service on Ronald Turner, President of RG

Asociates and agent to receive process, pursuant to N.Y. C.P.L.R. 311-a (2005).  Proof of such service was filed.  (*See* Docket Entry No. 6).

      5.      RG Associates has failed to answer the complaint, and the time for RG Associates to answer the complaint has expired.  RG Associates has failed to appear in, plead, or otherwise defend this action.

      WHEREFORE, plaintiff requests the entry of Default against RG Associates.

                _____/s/ Karin N. Roth_____
                    Karin N. Roth [KR-2669]

Dated: March 31, 2005
       New York, New York

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
                                     :

U.S. COMMODITY FUTURES TRADING     :       **DECLARATION IN SUPPORT**
COMMISSION                            :       **OF APPLICATION FOR ENTRY**
                                       :       **OF DEFAULT AGAINST**
              Plaintiffs,          :       **<u>VINCENZO DANIO</u>**
                                       :

              v.                    :       05 Civ. 2181 (SAS)
                                       :

RICHMOND GLOBAL ASSOCIATES, L.L.C.   :
et al.                                  :
                Defendants.      :
                                       :
--------------------------------------------------------------x

## DECLARATION OF KARIN N. ROTH

      I, Karin N. Roth, declare, pursuant to the penalty of perjury, as follows:

      1.     I am a member of the Bar of this Court and am a Trial Attorney with the U.S. Commodity Futures Trading Commission (the "CFTC"), plaintiff in the above-entitled action, and I am familiar with the facts and circumstances in this action.

      2.     I submit this declaration pursuant to Rule 55(a) of the Federal Rules of Civil Procedure and Rule 55.1 of the Civil Rules for the Southern District of New York, in support of plaintiff's application for a certificate of default against defendant Vincenzo Danio ("Danio").

      3.     Danio is not an infant, serving in the military, or an incompetent person.

      4.     This action was commenced on February 16, 2005, by the filing of the summons and complaint.  (*See* Docket Entry No. 5).  Copies of the summons and complaint were served on Danio on February 17, 2005, by personal service pursuant to N.Y. C.P.L.R. 308 (2005).  Proof of such service was filed.  (*See* Docket Entry No. 6).

     5.    Danio has failed to answer the complaint, and the time for Danio to answer the complaint has expired.  Danio has failed to appear in, plead, or otherwise defend this action.

     WHEREFORE, plaintiff requests the entry of Default against Danio.

                             _____/s/ Karin N. Roth_____
                                   Karin N. Roth [KR-2669]

Dated: March 31, 2005
       New York, New York

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
                                                          :
U.S. COMMODITY FUTURES TRADING            :
COMMISSION                                        :        **DECLARATION IN SUPPORT**
                                                          :        **OF APPLICATION FOR ENTRY**
                        Plaintiffs,               :        **OF DEFAULT AGAINST**
                                                          :        **RICHMOND GLOBAL**
                                                          :        **MANAGED ACCOUNT, LLC**
            v.                                        :
RICHMOND GLOBAL ASSOCIATES, L.L.C.   :        05 Civ. 2181 (SAS)
et al.                                                :
                        Defendants.               :
                                                          :
-------------------------------------------------------------x

### DECLARATION OF KARIN N. ROTH

I, Karin N. Roth, declare, pursuant to the penalty of perjury, as follows:

1.      I am a member of the Bar of this Court and am a Trial Attorney with the U.S.

Commodity Futures Trading Commission (the "CFTC"), plaintiff in the above-entitled action,

and I am familiar with the facts and circumstances in this action.

2.      I submit this declaration pursuant to Rule 55(a) of the Federal Rules of Civil

Procedure and Rule 55.1 of the Civil Rules for the Southern District of New York, in support of

plaintiff's application for a certificate of default against defendant Richmond Global Managed

Account, LLC. ("RG Managed").

3.      RG Managed is a business entity and is not an infant, serving in the military, or an

incompetent person.

4.      This action was commenced on February 16, 2005, by the filing of the summons

and complaint.  (*See* Docket Entry No. 5).  Copies of the summons and complaint were served on

RG Managed on February 17, 2005, by personal service on Vincenzo Danio, President of RG

Managed., pursuant to N.Y. C.P.L.R. 311-a (2005). Proof of such service was filed. (*See* Docket Entry No. 6).

5.     RG Managed has failed to answer the complaint, and the time for RG Managed to answer the complaint has expired. RG Managed has failed to appear in, plead, or otherwise defend this action.

WHEREFORE, plaintiff requests the entry of Default against RG Managed.


_____/s/ Karin N.Roth_____
Karin N. Roth [KR-2669]


Dated: March 31, 2005
New York, New York

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
                                                    :
U.S. COMMODITY FUTURES TRADING          :         **DECLARATION IN SUPPORT**
COMMISSION                                          :         **OF APPLICATION FOR ENTRY**
                                                    :         **OF DEFAULT AGAINST**
                        Plaintiffs,        :         **RICHMOND GLOBAL MCA**
                                                    :         **LLC**
                                                    :
            v.                                      :         05 Civ. 2181 (SAS)
RICHMOND GLOBAL ASSOCIATES, L.L.C.      :
et al.                                              :
                        Defendants.        :
                                                    :
-------------------------------------------------------------x

### DECLARATION OF KARIN N. ROTH

I, Karin N. Roth, declare, pursuant to the penalty of perjury, as follows:

1.      I am a member of the Bar of this Court and am a Trial Attorney with the U.S.

Commodity Futures Trading Commission (the "CFTC"), plaintiff in the above-entitled action,

and I am familiar with the facts and circumstances in this action.

2.      I submit this declaration pursuant to Rule 55(a) of the Federal Rules of Civil

Procedure and Rule 55.1 of the Civil Rules for the Southern District of New York, in support of

plaintiff's application for a certificate of default against defendant Richmond Global MCA, LLC.

("RG MCA").

3.      RG MCA is a business entity and is not an infant, serving in the military, or an

incompetent person.

4.      This action was commenced on February 16, 2005, by the filing of the summons

and complaint.  (*See* Docket Entry No. 5).  Copies of the summons and complaint were served on

RG MCA on February 17, 2005, by personal service on Vincenzo Danio, President of RG MCA,

pursuant to N.Y. C.P.L.R. 311-a (2005).  Proof of such service was filed.  (*See* Docket Entry No. 6).

5.     RG MCA has failed to answer the complaint, and the time for RG MCA to answer the complaint has expired.  RG MCA has failed to appear in, plead, or otherwise defend this action.

WHEREFORE, plaintiff requests the entry of Default against RG MCA.

_____/s/ Karin N. Roth_____
Karin N. Roth [KR-2669]


Dated: March 31, 2005
New York, New York

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                              :

| | |
|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION | : **DECLARATION IN SUPPORT** |
| | : **OF APPLICATION FOR ENTRY** |
| Plaintiffs, | : **OF DEFAULT AGAINST** |
| | : **RICHMOND GLOBAL LTD** |
| | : |
| v. | : 05 Civ. 2181 (SAS) |
| RICHMOND GLOBAL ASSOCIATES, L.L.C. et al. | : |
| Defendants. | : |
| | : |

------------------------------------------------------------x

## DECLARATION OF KARIN N. ROTH

I, Karin N. Roth, declare, pursuant to the penalty of perjury, as follows:

1.     I am a member of the Bar of this Court and am a Trial Attorney with the U.S. Commodity Futures Trading Commission (the "CFTC"), plaintiff in the above-entitled action, and I am familiar with the facts and circumstances in this action.

2.     I submit this declaration pursuant to Rule 55(a) of the Federal Rules of Civil Procedure and Rule 55.1 of the Civil Rules for the Southern District of New York, in support of plaintiff's application for a certificate of default against defendant Richmond Global Ltd. ("RG Ltd").

3.     RG Ltd is a business entity and is not an infant, serving in the military, or an incompetent person.

4.     This action was commenced on February 16, 2005, by the filing of the summons and complaint.  (*See* Docket Entry No. 5).  Copies of the summons and complaint were served on RG Ltd. on February 17, 2005, by personal service on Vincent Danio, an officer of RG Ltd.,

pursuant to N.Y. C.P.L.R. 311 (2005).  Proof of such service was filed.  (*See* Docket Entry No.

6).

5.      RG Ltd has failed to answer the complaint, and the time for RG Ltd to answer the

complaint has expired.  RG Ltd has failed to appear in, plead, or otherwise defend this action.

WHEREFORE, plaintiff requests the entry of Default against RG Ltd.


_____/s/ Karin N.Roth_____
Karin N. Roth [KR-2669]


Dated:  March 31, 2005
        New York, New York

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
                                  :

U.S. COMMODITY FUTURES TRADING  :      **DECLARATION IN SUPPORT**
COMMISSION                         :      **OF APPLICATION FOR ENTRY**
                                :      **OF DEFAULT AGAINST**
              Plaintiffs,       :      <u>**RG GROUP HOLDINGS LLC**</u>
                                :

              v.                 :      05 Civ. 2181 (SAS)

RICHMOND GLOBAL ASSOCIATES, L.L.C.  :
et al.                            :
             Defendants.    :
                                :
-------------------------------------------------------------x

## DECLARATION OF KARIN N. ROTH

      I, Karin N. Roth, declare, pursuant to the penalty of perjury, as follows:

      1.     I am a member of the Bar of this Court and am a Trial Attorney with the U.S. Commodity Futures Trading Commission (the "CFTC"), plaintiff in the above-entitled action, and I am familiar with the facts and circumstances in this action.

      2.     I submit this declaration pursuant to Rule 55(a) of the Federal Rules of Civil Procedure and Rule 55.1 of the Civil Rules for the Southern District of New York, in support of plaintiff's application for a certificate of default against defendant RG Group Holdings, LLC ("RG Group Holdings").

      3.     RG Group Holdings is a business entity and is not an infant, serving in the military, or an incompetent person.

      4.     This action was commenced on February 16, 2005, by the filing of the summons and complaint.  (*See* Docket Entry No. 5).  Copies of the summons and complaint were served on RG Group Holdings on February 17, 2005, by personal service on Vincent Danio, President of

RG Group Holdings, pursuant to N.Y. C.P.L.R. 311-a (2005).  Proof of such service was filed.

(*See* Docket Entry No. 6).

5.    RG Group Holdings has failed to answer the complaint, and the time for RG

Group Holdings to answer the complaint has expired.  RG Group Holdings has failed to appear

in, plead, or otherwise defend this action.

WHEREFORE, plaintiff requests the entry of Default against RG Group Holdings.


                        Karin N. Roth [KR-2669]


Dated:  March 31, 2005
        New York, New York

2

**EXHIBIT 3**

5CLDDANP
                              PLEA

1    the possession of the government.  Are you aware of the fact

2    that that is in your agreement?

3              THE DEFENDANT:  Yes, your Honor.

4              THE COURT:  OK.  And do you understand that that also

5    means that having given up that right, if there is any physical

6    evidence in this case, it will not be preserved by the

7    government and it will not be available for DNA testing in the

8    future; do you understand that?

9              THE DEFENDANT:  Yes, your Honor, I do.

10             THE COURT:  OK.  Mr. Finzi, would you put the elements

11   for Count One, the offense in Count One, on the record, please.

12             MR. FINZI:  Yes, your Honor.

13             Count One charges a conspiracy under Title 18, U.S.

14   Code, Section 371.  In order to prove a conspiracy at trial,

15   the government would have to show three things beyond a

16   reasonable doubt:  First, that two or more people entered into

17   an unlawful agreement whose object was to commit mail and wire

18   fraud in this case; second, that the defendant became a member

19   of that conspiracy knowingly and willfully; and, third, that

20   the defendant or another co-conspirator undertook an overt act

21   in furtherance of the conspiracy.

22             Finally, the government would have to show that some

23   act either by the defendant or by a co-conspirator was

24   committed in the Southern District of New York.

25             With respect to the objects of that conspiracy, mail

5CLDDANP
PLEA

1   fraud and wire fraud, the first two elements are the same.  The

2   government would have to show that at or about the time alleged

3   in the Indictment, the defendant devised a scheme or artifice

4   to defraud or to obtain money by false or fraudulent pretenses;

5   second, that the defendant knowingly and willfully devised and

6   participated in this scheme to defraud with knowledge of its

7   fraudulent nature and with the specific intent to defraud.

8          Then with respect to the wire fraud count, the

9   government would have to show the use of interstate wires; and

10  with respect to the mail fraud count, the government would have

11  to show that the United States mails were used in furtherance

12  of the scheme.

13         THE COURT:  All right.  Mr. Danio, I asked Mr. Finzi

14  to go through those elements for you because that is what the

15  government would have to prove, each and every one of those

16  elements, to a jury beyond a reasonable doubt before you can be

17  convicted.

18         Knowing that, do you still wish to go forward with

19  your plea?

20         THE DEFENDANT:  Yes, your Honor, I do.

21         THE COURT:  OK.  Would you summarize your evidence,

22  Mr. Finzi.

23         MR. FINZI:  Sure, your Honor.

24         If this case went to trial, the government would show

25  through documentary evidence and the testimony of eyewitnesses,

5CLDDANP
                              PLEA

1    including victims, that between roughly December of 2001 and

2    about February of 2005, I think, the defendant participated

3    with others in a scheme to raise money, investments, from

4    investors by making false representations about the nature of

5    the investment that was being made.  The false representations

6    included false statements about the nature of the business,

7    about the commissions being charged and about the

8    profitability, both past and future, of the investments to be

9    made.

10             THE COURT:  All right.  Thank you.

11             Mr. Danio, would you tell me in your own words what

12   you did that makes you believe that you are guilty of the

13   charge in Count One.

14             THE DEFENDANT:  Yes, your Honor.

15             MR. FVOCCARO:  Judge, he has a prepared allocution, if

16   that is all right, your Honor.

17             THE COURT:  That's fine.

18             Have you gone over that, and is it true, Mr. Danio?

19   Is it accurate, what you are about to read to me?

20             THE DEFENDANT:  Yes, it is, your Honor.

21             THE COURT:  OK.  Go ahead.

22             THE DEFENDANT:  From on or about December of 2001,

23   through about February of 2005, within New York and -- the

24   Southern District and elsewhere, I, together with others,

25   engaged in a scheme to mislead customers who invested in the

5CLDDANP
                              PLEA

1    Forex market through various Richmond Global entities.

2           THE COURT:  I'm sorry, the Forex market through what?

3           MR. FVOCCARO:  He said, "through the various Richmond

4    Global entities."  Those were the entities through which they

5    raised money, Judge.

6           THE COURT:  If you could just slow down a little,

7    Mr. Danio, so the reporter can hear you, and raise your voice a

8    little.  OK?

9           THE DEFENDANT:  So to effect this scheme, I made

10   misleading representations to potential retail customers over

11   the telephone to attract customers to open accounts and which

12   entrusted funds to Richmond Global for the purpose of trading

13   in the Forex market.

14          I also provided these customers through the mail with

15   misleading account statements that disguised commissions taken

16   by Richmond Global as trading losses.

17          MR. FVOCCARO:  That is it, your Honor.

18          THE COURT:  All right.  So the mailings you just told

19   me were false because they disguised commissions as trading

20   losses, is that right?

21          THE DEFENDANT:  That is correct, Judge.

22          THE COURT:  And you knew that that's what those

23   mailings did, right; you knew they were false?

24          THE DEFENDANT:  Yes, your Honor, I knew they were

25   misleading.

5CLDDANP
PLEA

1    THE COURT:  All right.  What about the false

2    statements that you yourself made?  Give me an example.

3    THE DEFENDANT:  If you had invested with the company,

4    you would make a deposit -- if you had invested into the

5    market, into Richmond Global, to trade in the Forex market, the

6    spot Forex market, currency market, if you had a trading cost

7    of $100 and a loss of $100, it did not detail in deep

8    description that it was one or the other, it came in one

9    column, and effectively not allowing the client to make a true

10    judgment call on how effective the trading tool was.

11    THE COURT:  Mr. Finzi, is the allocution sufficient

12    for your purposes?

13    MR. FINZI:  I think it is with respect to the

14    mailings, your Honor.

15    I think the question your Honor was asking went more

16    to the initial part of solicitation of investors.

17    THE COURT:  Right.

18    MR. FINZI:  Maybe a way to phrase it is to ask

19    Mr. Danio to say what kind of things were misrepresented to

20    potential investors at the time he sought the initial

21    investment.

22    THE COURT:  All right.  Mr. Danio, you did tell me

23    that you would tell people false -- you would make false

24    representations to people to get them to invest.  Can you give

25    me an example of one or two of those things?

5CLDDANP
                              PLEA

1           THE DEFENDANT:  I, together with others, made

2    exaggerations of employees or staff, the potential downside or

3    potential upside, misleading to the better side of

4    profitability.

5           THE COURT:  So, in other words, you told them you were

6    a bigger company than you really were; is that what you are

7    saying?

8           THE DEFENDANT:  Yes.

9           THE COURT:  OK.  And you also told them that their

10   profit would be higher than you really believed, is that right;

11   or what are you trying to tell me?

12          THE DEFENDANT:  No, that's not right, your Honor, not

13   that it would be higher than they were but that it would be a

14   less risky investment for that type of upside potential that we

15   had described.

16          THE COURT:  All right.  And you knew that was false,

17   isn't that right?

18          THE DEFENDANT:  Yes, I knew that was misleading.

19          THE COURT:  OK.  Anything else?

20          MR. FINZI:  One final thing, your Honor, with respect

21   to venue, if you could just confirm --

22          THE COURT:  You did say in New York.

23          Was this in Manhattan?

24          THE DEFENDANT:  I believe, the Southern District and

25   New York, your Honor.

5CLDDANP
PLEA

1     THE COURT:  OK.  The Southern District is a bunch of

2  places.  Was it in Manhattan; New York, New York?

3     THE DEFENDANT:  Yes, your Honor.

4     THE COURT:  OK.  Yes?

5     THE DEFENDANT:  Yes, your Honor.

6     THE COURT:  OK.  Very good.

7     Mr. Danio, when you were speaking to these potential

8  investors and telling them lies and when you sent out some of

9  the materials that you did that had misrepresentations in them,

10  did you know that what you were doing was wrong and illegal?

11     THE DEFENDANT:  Yes, your Honor, it was not right or

12  ethical.

13     THE COURT:  Are you pleading guilty to the conspiracy

14  charge because you are guilty of that crime?

15     THE DEFENDANT:  Yes, I together with others.

16     THE COURT:  OK.  How do you now plead to Count One of

17  the Indictment, guilty or not guilty?

18     THE DEFENDANT:  Guilty, your Honor.

19     THE COURT:  OK.  You have acknowledged to me that you

20  are in fact guilty as charged in the Indictment in Count One.

21  I am satisfied you know your rights and that you are waiving

22  them knowingly and voluntarily.  Accordingly, I find your plea

23  is knowing and voluntary.  I find it is supported by an

24  independent basis in fact containing each of the essential

25  elements of the offense.  I accept your guilty plea and enter a

5CLDDANP
                          PLEA

1    judgment of guilty on Count One.

2         All right.  I am going to order the presentence

3    investigation report.

4         The Probation Department, Mr. Danio, is going to want

5    to interview you in connection with that report.  It is very

6    important in my decision as to what your sentence will be.  So,

7    please, be truthful and accurate with the probation officer.

8    Your counsel will have a right to be there with you, if he

9    wishes to, and you both have a right to examine the report

10   before the sentencing so that you can comment on it, and I urge

11   you to take advantage of that.

12        Do we have a sentencing date?

13        THE CLERK:  90 days would be March 21st at 4:30.

14        THE COURT:  Is that convenient for counsel?

15        MR. FVOCCARO:  That is fine, your Honor.

16        THE COURT:  March 21 at 4:30.

17        All right.  I gather, Mr. Danio is out on a bond?

18        MR. FINZI:  Yes, your Honor.

19        THE COURT:  And you will want that continued,

20   Mr. Finzi?

21        MR. FINZI:  Yes, your Honor.

22        THE COURT:  OK.  Mr. Danio, I just want to advise you,

23   I have every expectation that you will be here on March 21.

24   However, I need to tell you that if you don't show up, you

25   could be guilty of bail-jumping, and that could subject you to

5CLDDANP
PLEA

1    an additional fine and/or a prison term above and beyond

2    whatever you will be sentenced to with respect to these

3    charges.  Do you understand that?

4            THE DEFENDANT:  Yes, your Honor, I understand that.

5            THE COURT:  OK.  Unless there is anything else, then,

6    we are adjourned.

7            MR. FVOCCARO:  Thank you, Judge..

8            MR. FINZI:  Thank you, your Honor.

9            THE COURT:  March 21.

11                        -   -   -

**EXHIBIT 4**

℀AO 245B   (Rev. 06/05) Judgment in a Criminal Case
Sheet 1

# UNITED STATES DISTRICT COURT

SOUTHERN _____ District of _____ NEW YORK _____

| UNITED STATES OF AMERICA | **JUDGMENT IN A CRIMINAL CASE** |
|---|---|
| **V.** | |
| VICENZO DANIO | |

Case Number: 05 CR. 157 - 01 (BSJ)

USM Number: 57426-054

James Froccaro
_____
Defendant's Attorney

## THE DEFENDANT:

X pleaded guilty to count(s) _____ One (1) _____

☐ pleaded nolo contendere to count(s) _____
   which was accepted by the court.

☐ was found guilty on count(s) _____
   after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. §371 | Conspiracy to Commit Mail and Wire Fraud | January 2005 | 1 |

   The defendant is sentenced as provided in pages 2 through _____6_____ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

X Count(s) _____ all open _____ ☐ is   X are   dismissed on the motion of the United States.

   It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/13/06

11/1/2006
Date of Imposition of Judgment

_____
Signature of Judge

Hon. Barbara S. Jones, U.S.D.J.
Name and Title of Judge

11/9/06
Date

AO 245B    (Rev. 06/05) Judgment in Criminal Case
            Sheet 2 — Imprisonment

DEFENDANT:         VICENZO DANIO
CASE NUMBER:       05 CR. 157 - 01 (BSJ)

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of:

**Thirty (30) months**

X    The court makes the following recommendations to the Bureau of Prisons:
**It is recommended that the defendant be designated to the Federal Prison Camp at Lewisburg or at a facility as close to the New York City metropolitan area as possible. It is also recommended that the defendant be allowed to participate in the 500 hour resideutial drug treatment program provided by the Bureau of Prisons.**

☐    The defendant is remanded to the custody of the United States Marshal.

☐    The defendant shall surrender to the United States Marshal for this district:

    ☐    at _____ ☐ a.m. ☐ p.m.    on _____ .

    ☐    as notified by the United States Marshal.

X    The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    X    before 2 p.m. on _____January 9, 2007_____ .

    ☐    as notified by the United States Marshal.

    ☐    as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

a_____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL



AO 245B    (Rev. 06/05) Judgment in a Criminal Case
Sheet 3 — Supervised Release

Judgment—Page    3    of    6

DEFENDANT:        VICENZO DANIO
CASE NUMBER:      05 CR. 157 - 01 (BSJ)

# SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of :

**Three (3) years**

    The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

X    The above drug testing condition is suspended due to the imposition of a special condition requiring drug treatment or testing.
    (Check, if applicable.)

X    The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon. (Check, if applicable.)

X    The defendant shall cooperate in the collection of DNA as directed by the probation officer. (Check, if applicable.)

☐    The defendant shall register with the state sex offender registration agency in the state where the defendant resides, works, or is a student, as directed by the probation officer. (Check, if applicable.)

☐    The defendant shall participate in an approved program for domestic violence. (Check, if applicable.)

    If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

    The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

1)    the defendant shall not leave the judicial district without the permission of the court or probation officer;

2)    the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;

3)    the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4)    the defendant shall support his or her dependents and meet other family responsibilities;

5)    the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;

6)    the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;

7)    the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;

8)    the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9)    the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;

10)    the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11)    the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12)    the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and

13)    as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.



AO 245B    (Rev. 06/05) Judgment in a Criminal Case
           Sheet 3A — Supervised Release

Judgment—Page ___4___ of ___6___

DEFENDANT:        VICENZO DANIO
CASE NUMBER:      05 CR. 157 - 01 (BSJ)

## ADDITIONAL SUPERVISED RELEASE TERMS

The defendant will participate in a program approved by the United States Probation Office, which program may include testing to determine whether the defendant has reverted to using drugs or alcohol. The Court authorizes the release of available drug treatment evaluations and reports to the substance abuse treatment provider, as approved by the Probation Officer. The defendant will be required to contribute to the costs of services rendered (co-payment), in an amount determined by the probation officer, based on ability to pay or availability of the third-party payment.

The defendant is to report to the nearest Probation Office within 72 hours of release from custody.

It is recommended that the defendant be supervised by the district of residence.



Judgment — Page __5__ of __6__

DEFENDANT:        VICENZO DANIO
CASE NUMBER:      05 CR. 157 - 01 (BSJ)

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | **Assessment** | **Fine** | **Restitution** |
|---|---|---|---|
| **TOTALS** | $  100.00 | $ | $  400,000.00 |

☐  The determination of restitution is deferred until _____. An *Amended Judgment in a Criminal Case* (AO 245C) will be after such determination.

X  The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| **Name of Payee** | **Total Loss*** | **Restitution Ordered** | **Priority or Percentage** |
|---|---|---|---|
| John W. Moscow, Esq.<br>Rosner Moscow & Napierala<br>26 Broadway, 22nd Floor<br>New York, NY 10004-1808 | $400,000.00 | $400,000.00 | 100% |

| **TOTALS** | $ ___$400,000.00___ | $____$400,000.00____ |
|---|---|---|

☐  Restitution amount ordered pursuant to plea agreement  $ _____

☐  The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐  The court determined that the defendant does not have the ability to pay interest and it is ordered that:

    ☐  the interest requirement is waived for the    ☐  fine    ☐  restitution.

    ☐  the interest requirement for the    ☐  fine    ☐  restitution is modified as follows:

* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.



Judgment — Page   6   of   6

DEFENDANT:    VICENZO DANIO
CASE NUMBER:    05 CR. 157 - 01 (BSJ)

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties are due as follows:

**A**   X   Lump sum payment of $  _100.00_  due immediately, balance due

     ☐   not later than _____ , or
     X   in accordance    ☐ C,   ☐ D,   ☐ E, or   X F below; or
        with

**B**   ☐   Payment to begin immediately (may be combined with    ☐ C,    ☐ D, or    ☐ F below); or

**C**   ☐   Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of
     _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

**D**   ☐   Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of
     _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a
     term of supervision; or

**E**   ☐   Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after release from
     imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F**   X   Special instructions regarding the payment of criminal monetary penalties:

     Restitution shall be paid in the amount of 10% of defendant's gross monthly income beginning 30 days from
     defendant's release from custody. Restitution will be made payable to Clerk of the Court, U.S.D.C-
     S.D.N.Y., then forwarded to the receiver who will send prorated distribution to the victim.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐   Joint and Several

     Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount, Joint and Several Amount,
     and corresponding payee, if appropriate.

☐   The defendant shall pay the cost of prosecution.

☐   The defendant shall pay the following court cost(s):

☐   The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

**EXHIBIT 5**

5B2HVINP

1   understand about your plea and your sentence that isn't in this

2   agreement?

3           THE DEFENDANT:  I understand everything.

4           THE COURT:  Has anything been left out of it?

5           THE DEFENDANT:  Not at all.

6           THE COURT:  Is there any understanding that you have

7   that is not written down?

8           THE DEFENDANT:  No, your Honor.

9           THE COURT:  Other than the plea agreement, has anybody

10  made you any promises or has anybody threatened you or forced

11  you in any way to plead guilty this afternoon or to enter into

12  the plea agreement?

13          THE DEFENDANT:  No, your Honor.

14          THE COURT:  Mr. Finzi, would you state the elements of

15  the crime charged.

16          MR. FINZI:  Certainly, your Honor.

17          As your Honor alluded to, the count that Mr. Vinkor is

18  pleading guilty to is a conspiracy count.

19          The elements of conspiracy are that two or more people

20  entered into an unlawful agreement, the object of which was to

21  commit mail and wire fraud in this case; second, that the

22  defendant knowingly and willfully became a member of that

23  conspiracy; third, that the defendant or another coconspirator

24  undertook an act in furtherance of that conspiracy; and fourth,

25  that some act in furtherance of the conspiracy be undertaken in

5B2HVINP

1    the Southern District of New York.

2            With respect to the objects, the underlying objects of

3    the conspiracy, which here are wire fraud and mail fraud, the

4    government would show, first, that on or about the time alleged

5    in the indictment the defendant devised or participated in a

6    scheme or artifice to defraud; second, that the defendant

7    knowingly and willfully devised or participated in that scheme

8    with knowledge of its fraudulent nature and with the specific

9    intent to defraud; and third, with respect to mail fraud, that

10   it involved the use of the mails and with respect to wire

11   fraud, that it involved the use of an interstate wire.

12           THE COURT:  Thank you, Mr. Finzi.

13           Mr. Vinkor, the reason that I asked the assistant to

14   state the elements of the crime with which you are charged and

15   you are intending to plead guilty is because that is what the

16   government has to prove, each and every one of those elements

17   beyond a reasonable doubt.

18           Knowing that, do you still wish to go forward with

19   your plea?

20           THE DEFENDANT:  Yes, I do, your Honor.

21           THE COURT:  Would you summarize your evidence against

22   this defendant, Mr. Finzi.

23           MR. FINZI:  Certainly, your Honor.

24           If this case went to trial, the government would show,

25   mostly through the testimony of victim witnesses, that the

5B2HVINP

1    defendant was part of a group operating under a name, an

2    umbrella of groups operating under the name Richmond Global

3    that sold interests in commodities to individual investors, and

4    in the course of doing that, mostly making cold calls to

5    prospective investors, they inflated the returns, diminished or

6    understated the risk of the investment, and made a series of

7    false promises about the operations of the entity itself and

8    its performance.

9         The government would show that through, again, the

10   testimony of victim witnesses, possibly a cooperating witness,

11   and documentary evidence seized in the course of the

12   investigation.

13        THE COURT:  All right.  Thank you.

14        MR. FINZI:  Thank you, your Honor.

15        THE COURT:  All right.  Mr. Vinkor, tell me in your

16   own words what you did that makes you believe that you are

17   guilty of the charge in the indictment in Count One.

18        THE DEFENDANT:  During the period of March 2003 to

19   February 2005, I engaged with others in a scheme to defraud

20   investors in a company known as Richmond Global Associates,

21   where I was employed as a salesman.

22        THE COURT:  Could you just go back over that last

23   sentence again.  I couldn't hear you.

24        THE DEFENDANT:  To defraud investors in a company

25   known as Richmond Global Associates.

5B2HVINP

1          THE COURT:  Right.

2          THE DEFENDANT:  Where I was employed as a salesman.

3          I helped sell investments in the foreign exchange

4   currency market knowing that representations made by myself and

5   others were, you know, with respect to positive performance and

6   optimistic predictions, the existence of a stop loss program

7   and other representations used to sell and hold onto

8   investments were untrue.

9          During the scheme, I used the telephone and the U.S.

10  mails and spoke to investors who were located in Southern

11  District of New York.

12         THE COURT:  Could you tell me in your own words a

13  little bit more about what the falsehoods were.  I think you

14  said something about --

15         THE DEFENDANT:  Such as a stop loss, to defraud more

16  investors, used the stop loss to sell to investors, telling

17  them that they have a limited loss liability.

18         THE COURT:  And that wasn't true?

19         THE DEFENDANT:  And that was untrue, your Honor.

20         THE COURT:  And you also told them about positive

21  results that were not true, is that right?

22         THE DEFENDANT:  That is correct, your Honor.

23         THE COURT:  When you entered into this illegal

24  agreement with others to defraud these investors, where was

25  this?

5B2HVINP

1           THE DEFENDANT:  The location?

2           THE COURT:  The location?

3           THE DEFENDANT:  Staten Island, New York.

4           THE COURT:  Did some of the mailings and wires come

5    into the Southern District of New York, which would be in

6    Manhattan?

7           THE DEFENDANT:  I don't believe so.

8           THE COURT:  Is there any venue issue here, Mr. Finzi?

9           MR. FINZI:  I don't believe there is, your Honor.

10          If I could have a second to confer with Mr. Epstein.

11          THE COURT:  OK.

12          (Pause)

13          MR. FINZI:  Your Honor, I think there are two answers

14   to the question.  One is certainly other members of the

15   conspiracy, the government would be prepared to show that other

16   members of the conspiracy made calls and sent faxes to

17   individual investors in the Southern District of New York.  But

18   beyond that, and just out of an abundance of caution, I think

19   if we asked Mr. Epstein if he would waive any venue challenge,

20   my assumption is he would agree.

21          MR. EPSTEIN:  We don't contest the appropriateness of

22   the venue, your Honor.

23          THE COURT:  I actually believe that the law is that a

24   guilty plea is an automatic waiver with respect to venue.

25          In any event, so the record is completely clear, you

5B2HVINP

1    are not contesting venue, correct?

2              MR. EPSTEIN:  Correct.

3              THE COURT:  And the government has represented, which

4    you don't contest, that there were, I believe you said calls

5    and/or faxes into Manhattan by other coconspirators, right, Mr.

6    Finzi?

7              MR. FINZI:  That is correct, both calls and faxes,

8    your Honor.

9              THE COURT:  Is there anything else you want me to ask

10   this defendant other than the following question, which is that

11   when you entered into this agreement or conspiracy with those

12   other people to defraud investors, did you know that what you

13   were doing was wrong and illegal?

14             THE DEFENDANT:  I did find that out, yes.

15             THE COURT:  You did?

16             THE DEFENDANT:  I did.

17             THE COURT:  You did know it at the time, yes?

18             THE DEFENDANT:  Not at the beginning but at the end,

19   yes.

20             THE COURT:  So sometime during the period of time --

21             THE DEFENDANT:  Yes.

22             THE COURT:  -- while you were engaged in this you

23   figured out and you knew it was wrong and illegal, is that

24   right?

25             THE DEFENDANT:  That is correct, your Honor.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

5B2HVINP

1          THE COURT:  But you stayed in it, right?

2          THE DEFENDANT:  I have, your Honor.

3          THE COURT:  Anything else, Mr. Finzi?

4          MR. FINZI:  No, your Honor.  Thank you.

5          THE COURT:  Mr. Vinkor, are you pleading guilty

6  because you are guilty of the crime?

7          THE DEFENDANT:  Yes.

8          THE COURT:  How do you now plead to Count One of the

9  indictment?  Guilty or not guilty?

10         THE DEFENDANT:  Guilty.

11         THE COURT:  You have acknowledged to me that you are

12 guilty as charged in Count One of the indictment.  I'm

13 satisfied that you know your rights and that you are waiving

14 them knowingly and voluntarily.  So I find your plea is knowing

15 and voluntary.  I find it is supported by an independent basis

16 in fact containing each of the essential elements of the

17 offense, and I accept your guilty plea and enter a judgment of

18 guilty on Count One of indictment 05 Cr. 157.

19         I am going to order the customary presentence

20 investigation report.

21         Do we have a sentencing date?

22         THE DEPUTY CLERK:  90 days would be February 2, 2006.

23         THE COURT:  What time?

24         MR. EPSTEIN:  Your Honor, is it possible to request --

25 I have been asked by Mr. Vinkor, he is very interested in

**EXHIBIT 6**

✎AO 245B    (Rev. 06/05) Judgment in a Criminal Case
            Sheet 1

# UNITED STATES DISTRICT COURT

|                    SOUTHERN                    | District of |                    NEW YORK                    |
| --- | --- | --- |

| UNITED STATES OF AMERICA | **JUDGMENT IN A CRIMINAL CASE** |
| --- | --- |
| **V.** | |

| MIRON VINOKUR | Case Number: | 05 CR. 157 - 04 (BSJ) |
| --- | --- | --- |
| | USM Number: | 57429-054 |
| | Bennett Epstein | |
| | Defendant's Attorney | |

## THE DEFENDANT:

X pleaded guilty to count(s)    One (1)

☐ pleaded nolo contendere to count(s)
  which was accepted by the court.

☐ was found guilty on count(s)
  after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| **Title & Section** | **Nature of Offense** | **Offense Ended** | **Count** |
| --- | --- | --- | --- |
| 18 U.S.C. §371 | Conspiracy to Commit Mail and Wire Fraud | Jan. 2005 | 1 |

The defendant is sentenced as provided in pages 2 through ___6___ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s)

X Count(s)    all open    ☐ is    X are    dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _____

3/3/2006
Date of Imposition of Judgment

Signature of Judge

Hon. Barbara S. Jones, U.S.D.J.
Name and Title of Judge

3/27/06
Date

AO 245B    (Rev. 06/05) Judgment in Criminal Case
             Sheet 2 — Imprisonment

DEFENDANT:          MIRON VINOKUR
CASE NUMBER:        05 CR. 157 - 04 (BSJ)

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of:

**One (1) year and one (1) day**

☐  The court makes the following recommendations to the Bureau of Prisons:

☐  The defendant is remanded to the custody of the United States Marshal.

☐  The defendant shall surrender to the United States Marshal for this district:

    ☐  at _____ ☐ a.m.  ☐ p.m.  on _____ .

    ☐  as notified by the United States Marshal.

X  The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    X  before 2 p.m. on    April 14, 2006              .

    ☐  as notified by the United States Marshal.

    ☐  as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

a_____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

AO 245B    (Rev. 06/05) Judgment in a Criminal Case
Sheet 3 — Supervised Release

Judgment—Page ___3___ of ___6___

DEFENDANT:        MIRON VINOKUR
CASE NUMBER:     05 CR. 157 - 04 (BSJ)

# SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of :

**Three (3) years**

The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

☐   The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse. (Check, if applicable.)

X   The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon. (Check, if applicable.)

X   The defendant shall cooperate in the collection of DNA as directed by the probation officer. (Check, if applicable.)

☐   The defendant shall register with the state sex offender registration agency in the state where the defendant resides, works, or is a student, as directed by the probation officer. (Check, if applicable.)

☐   The defendant shall participate in an approved program for domestic violence. (Check, if applicable.)

If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

# STANDARD CONDITIONS OF SUPERVISION

1)   the defendant shall not leave the judicial district without the permission of the court or probation officer;

2)   the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;

3)   the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4)   the defendant shall support his or her dependents and meet other family responsibilities;

5)   the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;

6)   the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;

7)   the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;

8)   the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9)   the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;

10)   the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11)   the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12)   the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and

13)   as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

AO 245B    (Rev. 06/05) Judgment in a Criminal Case
Sheet 3A — Supervised Release

Judgment—Page ___4___ of ___6___

DEFENDANT:      MIRON VINOKUR
CASE NUMBER:    05 CR. 157 - 04 (BSJ)

## ADDITIONAL SUPERVISED RELEASE TERMS

The defendant is to report to the nearest Probation Office within 72 hours of release from custody.

The defendant shall obey the immigration laws and comply with the directives of the Bureau of Immigration and Customs Enforcement.



DEFENDANT: MIRON VINOKUR
CASE NUMBER: 05 CR. 157 - 04 (BSJ)

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

|  | **Assessment** | **Fine** | **Restitution** |
|---|---|---|---|
| **TOTALS** | $ 100.00 | $ | $ |

☐ The determination of restitution is deferred until _____ . An *Amended Judgment in a Criminal Case* (AO 245C) will be after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| **Name of Payee** | **Total Loss*** | **Restitution Ordered** | **Priority or Percentage** |
|---|---|---|---|
| | | | |

| | | | |
|---|---|---|---|
| **TOTALS** | $ _____$0.00_____ | $ _____$0.00_____ | |

☐ Restitution amount ordered pursuant to plea agreement $ _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

    ☐ the interest requirement is waived for the   ☐ fine   ☐ restitution.

    ☐ the interest requirement for the   ☐ fine   ☐ restitution is modified as follows:

* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

DEFENDANT:       MIRON VINOKUR
CASE NUMBER:     05 CR. 157 - 04 (BSJ)

Judgment — Page ___6___ of ___6___

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties are due as follows:

**A**  X  Lump sum payment of $ ___100.00___ due immediately, balance due

    ☐  not later than _____ , or
    ☐  in accordance    ☐ C,  ☐ D,  ☐ E, or  ☐ F below; or

**B**  ☐  Payment to begin immediately (may be combined with  ☐ C,  ☐ D, or  ☐ F below); or

**C**  ☐  Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of
    _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

**D**  ☐  Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of
    _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a
    term of supervision; or

**E**  ☐  Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after release from
    imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F**  ☐  Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐  Joint and Several

    Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount, Joint and Several Amount,
    and corresponding payee, if appropriate.

☐  The defendant shall pay the cost of prosecution.

☐  The defendant shall pay the following court cost(s):

☐  The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

**EXHIBIT 7**

24

## Proceedings

1  questions that you would like to ask me about the charges

2  or your rights or the plea agreement or anything else

3  before we proceed?

4          THE DEFENDANT:  No, your Honor.

5          THE COURT:  Are you ready to plead at this

6  time?

7          THE DEFENDANT:  Yes, your Honor.

8          THE COURT:  Counsel, do you know of any reason

9  why the defendant should not plead guilty?

10          MR. RUGGIERO:  No.

11          THE COURT:  Are you aware of any viable legal

12  defense to the charges?

13          MR. RUGGIERO:  No, your Honor.

14          THE COURT:  Let's start with the eastern

15  district charge in superseding indictment 05-cr-59-S-1

16  and I'm talking again about Count Six.  Mr. Pappalardo,

17  what is your plea to Count Six; guilty or not guilty?

18          THE DEFENDANT:  Guilty.

19          I want to turn now to Count One in the southern

20  district indictment.  You understand that this charge is

21  pending in the Southern District of New York.  That's

22  across the river in Manhattan.  The only way that you can

23  plead guilty to this charge here in the eastern district

24  is if you are willing to waive venue; that is, waive your

25  right to be tried in the southern district and agree to

Transcription Plus II          Rosalie Lombardi

Proceedings                                25

1  be tried or proceed here in the eastern district.

2          First of all, do you understand that concept?

3          THE DEFENDANT:  Yes, your Honor.

4          THE COURT:  And have you discussed this with

5  Mr. Ruggiero?

6          THE DEFENDANT:  Yes, your Honor.

7          THE COURT:  And are you willing at this time

8  waive venue and agree to proceed with this charge here in

9  the Eastern District of New York?

10         THE DEFENDANT:  Yes, your Honor.

11         THE COURT:  That being said, what is your plea

12 to Count One of 05-cr-157; guilty or not guilty?

13         THE DEFENDANT:  Guilty, your Honor.

14         THE COURT:  Are you making this plea of guilty

15 voluntarily and of your own free will?

16         THE DEFENDANT:  Yes, your Honor.

17         THE COURT:  Has anyone threatened or forced you

18 to plead guilty to this count?

19         THE DEFENDANT:  No, your Honor.

20         THE COURT:  Has anyone made any promise to you

21 what your sentence will be on this count?

22         THE DEFENDANT:  No, your Honor.

23         THE COURT:  All right.

24         I read or summarized the two charges for you

25 earlier.  I want you now to tell me in your own words

**Proceedings**                                      26

1  exactly what it is that you did in connection with each

2  of these charges.  And you can start with whichever one

3  you wish.

4           THE DEFENDANT:  Okay.  or the eastern district,

5  Count Six --

6           THE COURT:  Count Six.

7           THE DEFENDANT:  -- in 2002 in Staten Island, I

8  accompanied my co-defendant to collect an unlawful debt

9  owed to him.  My purpose was to go there to intimidate

10  the person who owed the money into paying by my presence

11  -- my mere presence.

12           THE COURT:  Okay.  This was some time between

13  January and December of 2002?

14           THE DEFENDANT:  Yes.

15           THE COURT:  Okay.

16           THE DEFENDANT:  Yes, your Honor.

17           THE COURT:  And you had agreed with this person

18  to go to collect this debt for him?

19           THE DEFENDANT:  Not for him, with him.

20           THE COURT:  With him; right.  I mean you agreed

21  to go with him so that he could collect the debt; right?

22           THE DEFENDANT:  Yes, your Honor.

23           THE COURT:  That's what I meant.  Okay.

24           Anything else I should inquire on this one?

25           MS. HILL:  (inaudible) Staten Island

27

**Proceedings**

1  (inaudible).

2           THE COURT:  Okay.  All right.

3           Tell me now about Count One.

4           THE DEFENDANT:  Okay.  I was vice president of

5  Richmond Global Associates from March of 2003 to February

6  2005.  I agreed with my co-defendants to get investors in

7  Richmond Global Associates by providing them with false

8  and fraudulent account statements that disguised

9  commissions taken by Richmond Global as trade losses.

10           I also gave false information, minimizing the

11  risk to induce investors.  Meaning that when I was on the

12  phone, I would lessen the risk and make it appear better

13  than what it was.

14           THE COURT:  Okay.  And where were you working

15  out of?

16           THE DEFENDANT:  Richmond Global -- it was an

17  office out of New Dorp Plaza in Staten Island.

18           THE COURT:  In Staten Island?

19           THE DEFENDANT:  Yes.

20           THE COURT:  Okay.

21           THE DEFENDANT:  And also we used the mail and

22  telephones to make these false statements.

23           THE COURT:  Okay.  Well, you've told me that

24  you've spoken to people over the phone --

25           THE DEFENDANT:  Yes.

Proceedings                                              28

1          THE COURT:  -- regarding investing, what was

2   the use of the mails?

3          THE DEFENDANT:  Sending out account statements,

4   you know, mail -- if we had a new account, we would send

5   them out the new order forms and things of that nature.

6          THE COURT:  Okay. And can we just talk a little

7   bit about the overt acts because I need to get you to

8   tell me whether or not you did the overt acts, at least

9   one of them --

10          THE DEFENDANT:  All right.

11          THE COURT:  -- specified in the indictment --

12   (f).  Did you have a conversation with a prospective

13   investor on or about September 16, 2004?  This would be

14   an investor who was located in Pennsylvania in an effort

15   to get him to invest in the ForEx market through Richmond

16   Global?

17          THE DEFENDANT:  Yes, your Honor; a fraudulent

18   conversation to induce him to invest money.

19          THE COURT:  Okay.

20          Ms. Hill, do I need him to allocate to any of

21   the other overt acts or is that sufficient?

22          MS. HILL:  That's sufficient.

23          THE COURT:  All right.

24          Anything else I should inquire of him with

25   respect to either count?

Transcription Plus II          Rosalie Lombardi

**Proceedings**                                                    29

1       MS. HILL:  No, your Honor.

2       THE COURT:  All right.

3       Based on the information given to me, I find

4  that the defendant is acting voluntarily, fully

5  understands his rights and the consequences of his plea

6  and that there is a factual basis for the plea.

7       I will recommend to Judge Dearie that he accept

8  your plea of guilty to Count Six of the eastern district

9  indictment and Count One of the southern district

10  indictment.

11       What happens now, Mr. Pappalardo, is you're

12  going to be meeting with someone from the probation

13  department to prepare the presentence report.  I urge you

14  to cooperate with them, obviously with counsel's advice.

15       Once that report is prepared, then a date will be set

16  for sentencing.

17       I see that Mr. Pappalardo is out on bail.  The

18  conditions of bail shall remain in effect pending

19  sentencing.  Is that appropriate?

20       MR. RUGGIERO:  Thank you.

21       MS. HILL:  And I think probation (inaudible).

22       THE COURT:  Oh, okay.

23       PRETRIAL SERVICES OFFICER:  It's Marty Giordino

24  (phonetic) with pretrial services, your Honor.

25       Since the beginning of supervision, the

Transcription Plus II          Rosalie Lombardi

**EXHIBIT 8**

AO 245B (Rev. 06/05) Judgment in a Criminal Case
Sheet 1

# UNITED STATES DISTRICT COURT

**EASTERN**     District of     **NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA | **JUDGMENT IN A CRIMINAL CASE** |
| V. | |
| | Case Number:    CR 05-59(S-1) & CR 05-868(RJD) |
| JOSEPH PAPPALARDO | USM Number:    57425-054 |
| | LAWRENCE F. RUGGIERO, ESQ. |
| | Defendant's Attorney |

## THE DEFENDANT:

X   pleaded guilty to count(s)    six(6)(S-1) under docket number CR 05-59(S-1) & count 1 under docket number CR 05-868.

☐ pleaded nolo contendere to count(s)
   which was accepted by the court.

☐ was found guilty on count(s)
   after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. 894(a)(1) | EXTORTIONATE COLLECTION OF A DEBT. | 12/02 | 6(S-1) CR 05-59 |
| 18 U.S.C. 371 | CONSPIRACY TO COMMIT MAIL & WIRE FRAUD | 1/05 | 1 CR 05 868 |

    The defendant is sentenced as provided in pages 2 through   7   of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s)

X Count(s)   ALL OPEN COUNTS    ☐ is   X are   dismissed on the motion of the United States.

    It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

APRIL 11, 2007
Date of Imposition of Judgment

s/ Judge Raymond J. Dearie
Signature of Judge

**RAYMOND J. DEARIE, U.S.D.J.**
Name and Title of Judge

APRIL 11, 2007
Date

AO 245B    (Rev. 06/05) Judgment in Criminal Case
Sheet 2 — Imprisonment

| | |
|---|---|
| DEFENDANT: | JOSEPH PAPPALARDO |
| CASE NUMBER: | CR 05-59 (S-1) & CR 05-868 (RJD) |

Judgment — Page   2   of   7

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of:

## TWENTY-FOUR(24) MONTHS ON BOTH COUNTS, TO RUN CONCURRENTLY.

X The court makes the following recommendations to the Bureau of Prisons:

IF CONSISTENT WITH THE BUREAU OF PRISONS POLICIES, PRACTICES AND GUIDELINES, THE COURT RECOMMENDS THAT THE DEFENDANT BE DESIGNATED TO AN INSTITUTION IN THE NORTHEAST REGION FOR FAMILY VISITATION/CONTACT REASONS. THE COURT FURTHER INVITES CONSIDERATION OF FCI OTISVILLE OR FCI FORT DIX FOR FAMILY CONTACT/VISITATION REASONS.

☐ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

  ☐ at _____ ☐ a.m. ☐ p.m. on _____ .

  ☐ as notified by the United States Marshal.

X The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

  X before 2 p.m. on   JUNE 11, 2007_____ .

  ☐ as notified by the United States Marshal.

  ☐ as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

at _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

AO 245B   (Rev. 06/05) Judgment in a Criminal Case
Sheet 3 — Supervised Release

Judgment—Page __3__ of __7__

DEFENDANT:        JOSEPH PAPALARDO
CASE NUMBER:   CR 05-59(S-1) & CR 05-868 (RJD)

# SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of :

THREE (3) YEARS.   SEE PAGE 4.

 

    The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance.  The defendant shall refrain from any unlawful use of a controlled substance.  The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

☐   The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse.  (Check, if applicable.)

☐   The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon.  (Check, if applicable.)

☐   The defendant shall cooperate in the collection of DNA as directed by the probation officer.  (Check, if applicable.)

☐   The defendant shall register with the state sex offender registration agency in the state where the defendant resides, works, or is a student, as directed by the probation officer.  (Check, if applicable.)

☐   The defendant shall participate in an approved program for domestic violence.  (Check, if applicable.)

    If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

    The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

# STANDARD CONDITIONS OF SUPERVISION

  1)   the defendant shall not leave the judicial district without the permission of the court or probation officer;

  2)   the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;

  3)   the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

  4)   the defendant shall support his or her dependents and meet other family responsibilities;

  5)   the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;

  6)   the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;

  7)   the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;

  8)   the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

  9)   the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;

10)   the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11)   the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12)   the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and

13)   as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

Case 0505-cr-021805-RSJD   Document 6766   Filed 09/03/2007   Page 59 of 770

Judgment—Page ___4___ of ___7___

DEFENDANT:        JOSEPH PAPPALARDO
CASE NUMBER:      CR 05-59(S-1) & CR 05-968   (RJD)

## SPECIAL CONDITIONS OF SUPERVISION

1) DEFENDANT NOT PERMITTED TO WORK IN THE STOCK MARKET;

2) DEFENDANT TO MAINTAIN FULL TIME EMPLOYMENT AND OR AN ACCREDITED COURSE OF STUDY, OR ANY COMBINATION OF THE TWO.

Judgment — Page  5  of  7

DEFENDANT:        JOSEPH PAPPALARDO
CASE NUMBER:      CR 05-59(S-1) & CR 05-868    (RJD)

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

|  | **Assessment** | **Fine** | **Restitution** |
|---|---|---|---|
| **TOTALS** | $  200.00 | $ | $  400,000.00 |

☐    The determination of restitution is deferred until _____. An *Amended Judgment in a Criminal Case* (AO 245C) will be entered after such determination.

☐    The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| **Name of Payee** | **Total Loss*** | **Restitution Ordered** | **Priority or Percentage** |
|---|---|---|---|
| | | | |

| **TOTALS** | $                    0 | $                    0 | |

☐    Restitution amount ordered pursuant to plea agreement   $ _____

☐    The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐    The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☐    the interest requirement is waived for the    ☐  fine   ☐  restitution.

☐    the interest requirement for the    ☐  fine   ☐  restitution is modified as follows:

* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

AO 245B    (Rev. 06/05) Judgment in a Criminal Case
Sheet 5A — Criminal Monetary Penalties

Judgment—Page ___6___ of ___7___

DEFENDANT:        JOSEPH PAPPALARDO
CASE NUMBER:      CR 05-59(S-1) & CR 05-868    (RJD)

## ADDITIONAL TERMS FOR CRIMINAL MONETARY PENALTIES

RESTITUTION IN THE AMOUNT OF $400,000.00 PAYABLE AT A RATE OF NOT LESS THAN 25% OF DEFENDANT'S NET INCOME.

AO 245B    (Rev. 06/05) Judgment in a Criminal Case
           Sheet 6 — Schedule of Payments

Judgment — Page __7__ of __7__

DEFENDANT:      JOSEPH PAPPALARDO
CASE NUMBER:    CR 05-59(S-10 & CR 05-868  (RJD)

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties are due as follows:

**A**  X  Lump sum payment of $ ___200.00___  due immediately, balance due

        ☐  not later than _____ , or
        ☐  in accordance  ☐ C,  ☐ D,  ☐ E, or  ☐ F below; or

**B**  ☐  Payment to begin immediately (may be combined with  ☐ C,  ☐ D, or  ☐ F below); or

**C**  ☐  Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

**D**  ☐  Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a term of supervision; or

**E**  ☐  Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F**  ☐  Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐  Joint and Several

Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.

☐  The defendant shall pay the cost of prosecution.

☐  The defendant shall pay the following court cost(s):

☐  The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

**EXHIBIT 9**

AO 245B (Rev. 06/05) Judgment in a Criminal Case
Sheet 1

# UNITED STATES DISTRICT COURT

**EASTERN** District of **NEW YORK**

UNITED STATES OF AMERICA

v.

RONALD TURNER

## JUDGMENT IN A CRIMINAL CASE

Case Number: CR 05-59(S-1) & CR 05-810 (RJD)

USM Number: 57428-054

RICHARD J. SHANLEY, ESQ.
Defendant's Attorney

**THE DEFENDANT:**

x pleaded guilty to count(s)  one(1) of CR 05-59(S-1) and count one(1) of CR 05-810

☐ pleaded nolo contendere to count(s)
which was accepted by the court.

☐ was found guilty on count(s)
after a plea of not guilty.

**FILED**
IN CLERKS OFFICE
U.S. DISTRICT COURT ED. N.Y.

★ AUG 2 8 2007 ★

P.M.
TIME A.M.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 USC 371 | SECURITIES & WIRE FRAUD CONSPIRACY. | 11/2004 | 1 CR 05-59(S-1) |
| 18 USC 371 | MAIL & WIRE FRAUD CONSPIRACY. | 1/2005 | 1 CR 05-810 |

The defendant is sentenced as provided in pages 2 through ___7___ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s)

X Count(s) ALL OPEN COUNTS   ☐ is  X are  dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

JULY 11, 2007
Date of Imposition of Judgment

Signature of Judge

RAYMOND J. DEARIE, U.S.D.J.
Name and Title of Judge

JULY 11, 2007
Date

A TRUE COPY
ATTEST
DATE........8/28..... 20..07
ROBERT C. HEINEMANN
CLERK
BY
DEPUTY CLERK

Judgment — Page   2   of   7

DEFENDANT:        RONALD TURNER
CASE NUMBER:     CR 05-59(S-1) & CR 05-810 (RJD)

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of:

## THIRTY(30) MONTHS ON EACH COUNT, TO RUN CONCURRENTLY.

X The court makes the following recommendations to the Bureau of Prisons:

**If consistent with the Bureau of Prisons policies, practices and guidelines, the Court recommends that the defendant be designated to an institution in the Northeast Region, as close to the New York City area as possible, for family contact/ visitation reasons, and invites consideration of FCI, Fort Dix. The Court strongly recommends that the Bureau of Prisons consider placement of defendant in a drug treatment prograam.**

☐ The defendant is remanded to the custody of the United States Marshal.

The defendant shall surrender to the United States Marshal for this district:

☐ at _____ ☐ a.m. ☐ p.m. on _____

as notified by the United States Marshal.

The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

X before 2 p.m. on    **SEPTEMBER 12, 2007**    .

☐ as notified by the United States Marshal.

☐ as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

at _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

AO 245B (Rev. 06/05) Judgment in a Criminal Case
Sheet 3 — Supervised Release

Judgment—Page __3__ of __7__

DEFENDANT: RONALD TURNER
CASE NUMBER: CR 05-59(S-1) & CR 05-810 (RJD)

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of :

THREE(3) YEARS. (SEE PAGE 4)

The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

☐ The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse. (Check, if applicable.)

☐ The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon. (Check, if applicable.)

☐ The defendant shall cooperate in the collection of DNA as directed by the probation officer. (Check, if applicable.)

☐ The defendant shall register with the state sex offender registration agency in the state where the defendant resides, works, or is a student, as directed by the probation officer. (Check, if applicable.)

☐ The defendant shall participate in an approved program for domestic violence. (Check, if applicable.)

If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

1) the defendant shall not leave the judicial district without the permission of the court or probation officer;

2) the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;

3) the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4) the defendant shall support his or her dependents and meet other family responsibilities;

5) the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;

6) the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;

7) the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;

8) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9) the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;

10) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and

13) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

AO 245B (Rev. 06/05) Judgment in a Criminal Case
Sheet 3C — Supervised Release

Judgment—Page __4__ of __7__

DEFENDANT: RONALD TURNER
CASE NUMBER: CR 05-59(S-1) & CR 05-810

## SPECIAL CONDITIONS OF SUPERVISION

1) RESTITUTION IN THE AMOUNT OF $1,400,000.00 AS FOLLOWS:
UNDER DOCKET NUMBER CR 05-59: $1,000,000.00 JOINTLY AND SEVERALLY WITH CO-DEFENDANT
CHRISTIAN KURETSKI

UNDER DOCKET NUMBER CR 05-810: $400,000.00 JOINTLY AND SEVERALLY WITH CO-DEFENDANTS
VINCENZO DANIO
JOSEPH PAPPALARDO
MIRON VINOKUR

PAYMENTS TO BEGIN 60 DAYS AFTER RELEASE FROM IMPRISONMENT AT A MONTHLY RATE OF
25% OF DEFENDANT'S NET INCOME. THE RATE TO BE ADJUSTED FROM TIME TO TIME AS
DIRECTED BY THE PROBATION DEPARTMENT;

2) FULL FINANCIAL DISCLOSURE AS AND WHEN DIRECTED BY THE COURT THROUGH THE OFFICE
OF THE PROBATION DEPARTMENT.

SEP-11-2007  14:31      USP LIV                                347 534 3747    P.06
AO 245B    (Rev. 08/05) Judgment in a Criminal Case
Sheet 5 — Criminal Monetary Penalties

Case 1:05-cr-02181-SAS    Document 67-5    Filed 09/18/2007    Page 68 of 70

Judgment — Page  5  of  7

DEFENDANT:              RONALD TURNER
CASE NUMBER:            CR 05-59(S-1)

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | Fine | Restitution |
|---|---|---|---|
| **TOTALS** | $ 200.00 | $ | $ 1,400,000.00 |

☐ The determination of restitution is deferred until _____. An *Amended Judgment in a Criminal Case* (AO 245C) will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss* | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| | | | |

| **TOTALS** | $            0 | $            0 | |

☐ Restitution amount ordered pursuant to plea agreement  $ _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☐ the interest requirement is waived for the   ☐ fine   ☐ restitution.

☐ the interest requirement for the   ☐ fine   ☐ restitution is modified as follows:

* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

Judgment — Page __6__ of __7__

DEFENDANT: RONALD TURNER
CASE NUMBER: CR 05-59(S-1) & CR 05-810 (RJD)

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties are due as follows:

A ☒ Lump sum payment of $ ___200.00___ due immediately, balance due

    ☐ not later than _____ , or
    ☐ in accordance ☐ C, ☐ D, ☐ E, or ☐ F below; or

B ☐ Payment to begin immediately (may be combined with ☐ C, ☐ D, or ☐ F below); or

C ☐ Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

D ☐ Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a term of supervision; or

E ☐ Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F ☐ Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐ Joint and Several

Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.

☐ The defendant shall pay the cost of prosecution.

☐ The defendant shall pay the following court cost(s):

☐ The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

SEP-11-2007  14:32        USP LIU                      347 534 3747      P.08
AO 245B  (Rev. 06/05) Judgment in a Criminal Case
         Sheet 6A — Schedule of Payments

Case 1:05-cr-02101-SAS   Document 67-5   Filed 09/18/2007   Page 70 of 70

Judgment—Page   7   of   7

DEFENDANT:        RONALD TURNER
CASE NUMBER:      CR 05-59(S-1) & CR 05-810 (RJD)

## ADDITIONAL DEFENDANTS AND CO-DEFENDANTS HELD JOINT AND SEVERAL

| Case Number Defendant and Co-Defendant Names (including defendant number) | Total Amount | Joint and Several Amount | Corresponding Payee, if appropriate |
|---|---|---|---|
| CR 05-59(S-1) -01 CHRISTIAN KURETSKI | $1,000,000.00 | $1,000,000.00 | |
| CR 05-59(S-1)-02 RONALD TURNER | $1,000,000.00 | $1,000,000.00 | |
| CR 05-810-01 VINCENZO DANIO | $400,000.00 | $400,000.00 | |
| CR 05-810-02 JOSEPH PAPPALARDO | $400,000.00 | $400,000.00 | |
| CR 05-810-03 RONALD TURNER | $400,000.00 | $400,000.00 | |
| CR 05-810-04 MIRON VINOKUR | $400,000.00 | $4,00,000.00 | |