UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

U.S. COMMODITY FUTURES
TRADING COMMISSION,                   :        05 CV 2181  (SAS)
                 Plaintiff,
       v.                             :

RICHMOND GLOBAL ASSOCIATES, LLC,      :
*et. al.*
                 Defendants.  :

                                   :

------------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR ENTRY OF JUDGMENT BY DEFAULT WITH ANCILLARY EQUITABLE RELIEF AGAINST RICHMOND GLOBAL ASSOCIATES, LLC, RICHMOND GLOBAL DIRECTOR, LLC, RICHMOND GLOBAL MCA, LLC, RICHMOND GLOBAL MANAGED ACCOUNT, LLC, RICHMOND GLOBAL, LTD., RG GROUP HOLDINGS, LLC AND VINCENT DANIO**

## I. INTRODUCTION

Plaintiff, U.S. Commodity Futures Trading Commission ("Commission"), has filed a Complaint ("Complaint") against defendants Richmond Global Associates, LLC, Richmond Global Director, LLC, Richmond Global MCA, LLC, Richmond Global Managed Account, LLC, Richmond Global, Ltd., RG Group Holdings, LLC (collectively the "Richmond Global Entities"), Vincent Danio ("Danio")(collectively the "Defaulting Defendants") among others. The Defaulting Defendants have failed to appear, answer or otherwise plead in response to the Complaint.  On March 8, 2006, the Clerk of the Court entered a default against Defaulting Defendants pursuant to Fed. R. Civ. P. 55(a).  The Commission now seeks entry of judgment by default pursuant to Fed. R Civ. P. 55(b)(2) and Local Civil Rule 55.2(b), as well as statutory and ancillary equitable relief against Defendants.

## II. PROCEDURAL BACKGROUND

<u>The Commission's Complaint</u>

On February 16, 2005, the Commission commenced this action under seal with the filing of the Complaint alleging that the defendants defrauded retail customers in connection with foreign currency futures transactions in violation of the Commodity Exchange Act (the "Act") and the Commission's Regulations promulgated thereunder (the "Regulations").[1] In its Complaint, the Commission alleged that the defendants fraudulently solicited retail customers by, among other things, making false promises of high returns, failing to disclose hidden commission charges, issuing account statements that falsely characterized undisclosed commissions as trading losses, making false representations regarding the risk of forex trading and regarding their experience and past performance in trading forex, and misappropriating customer funds.[2]

Also on February 16, 2005, the Court granted the Commission's application for an *Ex Parte* Statutory Restraining Order freezing defendants' assets, prohibiting them from destroying or altering any books, records or other documents and appointing a temporary receiver and an order to show cause why a preliminary injunction should not be entered ("SRO").[3] The Court's SRO remains in effect.[4] This matter was unsealed on February 23, 2005.[5]

The Richmond Global Entities and Danio have failed to answer to the Complaint and have failed to plead or otherwise defend the action.[6] Accordingly, on March 31, 2005, the

---

[1] Declaration of Karin N. Roth dated July___, 2007 ("Roth Decl.") at ¶ 2, Exh 1 ("Complaint").
[2] Complaint at ¶¶ 30-61.
[3] Roth Decl. at ¶ 3.
[4] *Id.*
[5] Roth Decl. at ¶ 4.
[6] Roth Decl. at ¶ 5. In addition to the Richmond Global Entities and Danio, the Complaint named as defendants Joseph Pappalardo ("Pappalardo"), Ronald Turner ("Turner") and Miron

Commission requested that the Clerk of the Court enter defaults against the Richmond Global

Entities and Danio.[7]  In its request, the Commission established that Richmond Global Entities

and Danio were properly served and that they failed to appear, file an answer or otherwise move

with respect to the Complaint.[8]  In addition, the Commission demonstrated that the Richmond

Global Entities are business entities and Danio is not an infant, in the military or incompetent.[9]

Based on this showing by the Commission, on April 5 and 6, 2005 the Clerk of the Court issued

certificates of default holding the Richmond Global Entities and Danio in default.[10]

Related Criminal Matter

In an indictment filed on February 10, 2005 in the U.S. District Court for the Southern

District of New York (05 Cr. 157 (BSJ)), Danio, along with non-defaulting defendants Joseph

Pappalardo ("Pappalardo"), Ronald Turner ("Turner") and Miron Vinokur ("Vinokur"), were

charged with one count of conspiracy to commit mail fraud and wire fraud, and with four counts

of wire fraud in connection with the same fraudulent conduct that is the basis for the

Commission's Complaint in the present case.[11]  As alleged in the criminal indictment, Danio,

---

Vinokur ("Vinokur").  On January 5, 2007, the Commission served its motion for summary
judgment against Pappalardo, Turner and Vinokur.  On April 24, 2007, the Court granted the
Commission's motion and entered a permanent injunction, and ordered Pappalardo, Turner and
Vinokur to pay a civil monetary penalty, restitution and disgorgement.
[7] Roth Decl. at ¶ 5.
[8] *Id.*
[9] *Id.*
[10] Roth Decl. at ¶ 6, Exh.s 2-8.
[11] Roth Decl. at ¶ 7. *See* criminal indictment in *United States. v. Danio*, et al., 05 Cr. 157 (BSJ)
docket entry no. 1.  Specifically, the Indictment charged that Pappalardo, Turner, Vinokur and
Danio engaged in an illegal scheme to defraud customers who invested in the forex market
through the Richmond Global Entities.  The Indictment further charged that to effectuate this
scheme, Pappalardo, Turner, Vinokur and Danio made, or caused sales brokers to make, various
misrepresentations to potential retail customers to induce them to invest with the Richmond
Global Entities for the purpose of trading in the forex market and that they provided customers
with false and fraudulent account statements that disguised commissions taken by the Richmond
Global Entities as trading losses.  In addition, the Indictment charged that Pappalardo, Turner,

3

Pappalardo, Turner and Danio were officers of the Richmond Global Entities.[12]

Danio pled guilty to Count One of the criminal complaint against him relating to his conduct at Richmond Global.[13]  Danio was sentenced to thirty months in jail, three years of supervised release, and ordered to pay $400,000 in restitution to the Court appointed receiver for the Richmond Global Entities.[14]  In pleading guilty, Danio admitted that "[he] made misleading representations to potential retail customers over the telephone to attract customers to open accounts and which entrusted funds to Richmond Global for the purpose of trading in the forex market.[15]  [He] also provided these customers through the mail with misleading account statements that disguised commissions taken by Richmond Global as trading losses."[16]  Danio further admitted that he knew the account statements that he and other representatives sent were misleading.[17]  Danio also exaggerated the number of staff employed at the Richmond Global Entities and falsely stated that customers' investments had low risk and high upside potential.[18]

Vinokur pled guilty to Count One of the criminal indictment and was sentenced to a prison term of one year and one day, three years of supervised release, and an assessment of $100.[19]  During his plea hearing, Vinokur admitted to having defrauded Richmond Global investors.[20]

---

Vinokur and Danio caused customer funds, in five distinct instances, to be improperly transferred from one of the Richmond Global Entities' clearing brokers to a Richmond Global bank account.  The indictment alleged that Pappalardo, Turner, Vinokur and Danio misappropriated approximately $981,500 of investors' funds.

[12] Roth Decl. at ¶ 9. Exh. 4

[13] Roth Decl. at ¶ 9, Exh.s 3-4.

[14] Roth Decl. at ¶ 9, Exh. 5.

[15] Roth Decl. at ¶ 9, Exh. 5.

[16] *Id.*

[17] *Id.*

[18] *Id.*

[19] Roth Decl. at ¶ 10, Exh. 6.

[20] Roth Decl. at ¶ 10, Exh. 5.

Pappalardo pled guilty to Count One of the Richmond Global-related criminal indictment.[21] During his plea hearing, Pappalardo admitted to having defrauded Richmond Global investors.[22] On April 11, 2007, Pappalardo was sentenced to a prison term of two years, three years of supervised release, restitution of $400,000 and an assessment of $200.[23] This sentence was imposed for his conduct relating to the Richmond Global Entities as well as for an unrelated criminal conviction.[24]

Turner pled guilty to all counts of the Richmond Global related criminal indictment[25] On August 28, 2007, Turner was sentenced to a prison term of thirty months, three years of supervised release, restitution of $400,000 and an assessment of $200.[26] This sentence was imposed for his conduct relating to the Richmond Global Entities as well as for an unrelated criminal conviction.[27]

## III. LEGAL DISCUSSION

<u>The Court Should Enter Judgment by Default against the Richmond Global Entities and Danio</u>

Rule 55 of the Federal Rules of Civil Procedure provides a two-step process for obtaining a default judgment. When a party against whom affirmative relief is sought has failed to plead or otherwise defend, the plaintiff may bring that fact to the attention of the Court. Rule 55(a) of the Federal Rules of Civil Procedure empowers the Clerk of the Court to enter a default against a

---

[21] Roth Decl. at ¶ 11, Exh. 8. At the same time Pappalardo also pled guilty to the extortionate collection of a debt in an unrelated criminal matter entitled *United States v. Kuretski et al.*, 05 CR 059 (RJD) that was pending in the Eastern District of New York. *Id.*

[22] Roth Decl. at ¶ 10, Exh. 7.

[23] Roth Decl. at ¶ 11, Exh. 8.

[24] *Id.*

[25] Roth Decl. at ¶ 12, Exh. 9. At the same time Turner also pled guilty to securities & wire fraud in an unrelated criminal matter entitled *United States v. Kuretski et al.*, 05 CR 059 that was pending in the Eastern District of New York. *Id.*

[26] Roth Decl. at ¶ 12.

[27] *Id.*

party that has not appeared or defended.[28]  On March 31, 2005, the Commission requested that the Clerk of the Court to enter a default against the Richmond Global Entities and Danio because they failed to answer or otherwise defend this action.  On April 5 and 6, 2005 the Clerk of the Court issued certificates of default holding the Richmond Global Entities and Danio in default.

Having obtained the entry of default, the plaintiff must next seek a judgment by default under Rule 55(b) of the Federal Rules of Civil Procedure.[29]  In all cases other than where a sum certain is sought, the party seeking judgment by default must apply to the court for entry of a default judgment.[30]  Since the Complaint seeks relief other than a sum certain, the Commission seeks entry of a default judgment by the Court in the instant matter.

The entry of a judgment by default is within the sound judicial discretion of the Court pursuant to Federal Rule of Civil Procedure 55(b).[31]  Courts within the Second Circuit have considered three factors when determining whether the entry of default judgment is warranted, namely:  (1) "whether the defendant's default was willful; (2) whether [the] defendant has a meritorious defense to [the] plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment."[32]

A.    The Richmond Global Entities and Danio's Willfully Defaulted

In the present case, the Richmond Entities and Danio's defaults were clearly willful.  The

---

[28]  *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005).

[29] Pursuant to Local Rule 55.2(b), attached as Exhibit 1 to the Roth Decl. is a copy of the Complaint in the instant matter.

[30]  Rule 55(b)(2) of the Federal Rules of Civil Procedure; *see also Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993)

[31]  The Court is "in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties." *Shah v. N.Y. State Dep't of Civil Serv.*, 168 F.3d 610, 615 (2d Cir. 1999) *quoting Enron Oil Corp. v. Diakurara*, 10 F.3d at 95.

[32] *See Trs. of the CWA Local 14156-Printers, publishers & Media Workers Benefit Fund v. Rumar Typesetting & Design*, 2006 WL 1227183 at *2 (S.D.N.Y. 2006); *see also SEC v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998).

Commission served the Richmond Global Entities with the Complaint on February 17-18, 2005

and Danio with the Complaint on February 17, 2005.[33]  Despite having ample opportunity to

respond to the Complaint, the Richmond Global Entities and Danio have not answered the

Complaint and have at no time expressed any intention to file an answer or otherwise appear in

this action. This constitutes a willful default.[34]


B.    The Richmond Global Entities and Danio Lack a Meritorious Defense

The Richmond Global Entities and Danio do not have a meritorious defense to the

Commission's Complaint.  Several officers of the Richmond Global Entities,[35] including Danio,

have admitted to having defrauded Richmond Global investors.  The Richmond Global Entities

and Danio have no meritorious defense, and in fact, no defense at all to the Commission's claims

that they violated Section 4b(a)(2)(C)(i) and (iii) of the Act. [36]

1.    Violations of Section 4b(a)(2)(C)(i) and (iii) of the Act

To establish a violation of Section 4b(a)(2)(C)(i) of the Act the defendant must have

made (1) a false or misleading representation or omission, (2) of a material fact, (3) with

scienter, and (4) in connection with a futures transaction.[37]

As shown in the Complaint and by Danio's criminal allocution, the Richmond Global

---

[33] *See* Request to Enter Default against Danio and the Richmond Global Entities, docket entries no. 29-35.
[34] *See Mason Tenders Dist. Council v. Duce Constr. Corp.* 2003 Dist. LEXIS 6881 at *3 (S.D.N.Y. 2003)(finding that the defendant's default was willful when it failed to make any appearance in the action and did not provide an explanation for such failure).
[35] *See* Criminal allocutions of Pappalardo, Vinokur and Danio, Roth Decl. at ¶¶ 9-11.
[36] *United States .v DiPaolo*, 2006 U.S. Dist. LEXIS, at *5 (S.D.N.Y. 2006); *see also Rumar Typesetting & Design*, 2006 WL 1227183 at *2.
[37] 7 U.S.C. § 6(b)(a)(2)(C)(i) & (iii); *see CFTC v. AVCO Financial Corp.*, 28 F. Supp.2d 104, 115 (S.D.N.Y. 1998), *aff'd in relevant part sub nom, CFTC v. Vartuli*, 228 F.3d 94 (2d Cir. 2000).

Entities and Danio fraudulently solicited funds from customers purportedly to trade foreign currency contracts. The Complaint and the allocution also shows that they made false and misleading statements during solicitation calls to potential retail customers by misrepresenting the profits that potential customers could reasonably expect to make trading in the foreign currency markets, minimizing the risks involved in trading foreign currency, and falsely claiming that stop-loss mechanisms would limit losses.[38] The Richmond Global Entities and Danio also falsely represented to customers that the Richmond Global Entities would charge only a 2% management fee and 10% of any profits generated through trading.[39] Customers were actually charged undisclosed commissions of approximately 16-39%.[40] In order to conceal the unauthorized commissions, the Richmond Global Entities and Danio issued false account statements that disguised commissions as trading losses, and that they knew the account statements they sent to customers were false.[41]

These misrepresentations made by the Richmond Global Entities and Danio were material. "A statement is material if there is a substantial likelihood that a reasonable investor would consider it important in making an investment decision."[42] Courts have held that representations regarding profitability of futures trading and the risk of loss resulting from such trading are clearly material.[43] Accordingly, the Richmond Global Entities' and Danio's misrepresentations, such that customers could expect large profits with minimal risks are material misrepresentations.

---

[38] Roth Decl. at ¶¶ 2, 9.

[39] *Id.*

[40] *Id.*

[41] *Id.*

[42] *CFTC v. AVCO Financial Corp.*, 28 F. Supp. 2d 104, 115 (S.D.N.Y. 1998), *aff'd in relevant part sub nom, CFTC v. Vartuli*, 228 F.3d 94 (2d Cir. 2000) *quoting Saxe v. E.F. Hutton & Co., Inc.*, 789 F.2d 105, 111 (2d Cir. 1986).

[43] *Saxe*, 789 F.2d at 115-16.

The Richmond Global Entities and Danio made these material misrepresentations with scienter. Scienter requires proof that the defendant committed the alleged wrongful acts "intentionally or with reckless disregard for his duties under the Act."[44] Courts have found that material misrepresentations of profitability and minimizations of the risk of loss were made with scienter where defendants have continued to make such claims even though the claims are belied by the losses that their previous customers have suffered.[45] In his criminal allocution, Danio stated he knew the information his was imparting to potential customers was false and misleading.[46] In addition, the Richmond Global Entities' continued misrepresentations, as detailed in the Complaint, that their customers would profit with little risk of loss while omitting the fact that customers had suffered serious losses shows that the Richmond Global Entities made these false claims with scienter.

The Richmond Global Entities' and Danio's material misrepresentations were made in connection with futures transactions. A representation is "'in connection with futures trading 'if it relates to the risk of the trading.'"[47] The contracts traded by the Richmond Global Entities were futures contracts[48] and the material misrepresentations made by the Richmond Global Entities and Danio related to the risks of trading these contracts.

---

[44] *Hammond v. Smith Barney, Harris Upham & Co.*, [1987-1990 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 24,617 at 36,657-59 (CFTC March 1, 1990) (scienter is a necessary element to establish futures fraud); *Do v. Lind-Waldock & Co.*, [1994-1996 Transfer Binder] Comm. Fut., L. Rep. (CCH) 26,516 at 43,321 (CFTC Sept. 27, 1995) (a reckless act is one where there is so little care that it is difficult to believe the [actor] was not aware of what he was doing); *see also Drexel Burnham Lambert Inc. v. CFTC*, 850 F.2d 742, 748 (D.C. Cir. 1988) (holding that "recklessness is sufficient to satisfy section 4b's scienter requirement").

[45] *E.g., AVCO*, 28 F. Supp. 2d at 116.

[46] Roth Decl. at ¶ 9.

[47] *CFTC v. Vartuli*, 228 F.3d 94, 102 (2d Cir. 2000)

[48] Roth Decl. at ¶ 6, Exh. B, Request for Admissions directed to Turner ("Turner RFA") p. 9, ¶ 36; Roth Decl. at ¶ 6, Exh. A, Request for Admissions directed to Pappalardo ("Pappalardo RFA") p. 11, ¶ 40.

Accordingly, the misrepresentations made by the Richmond Global Entities and Danio violated Section 4b(a)(2)(C)(i) and (iii) of the Act.

2.    Danio Is Also Liable for the Richmond Global Entities' Violations

In addition to his direct violations of the Act, Danio is also liable as a controlling person of the Richmond Global Entities for the fraud committed by the entities pursuant to Section 13(b) of the Act.[49] An individual who "directly or indirectly" controls a corporation that has violated the Act "may be held liable for such violation in any action brought by the Commission to the same extent as such controlled [corporation ]."[50] Based on his position within the Richmond Global Entities and his power to direct the entities' business practices, Danio knowingly induced, directly or indirectly, the Richmond Global Entities' violations of the Act.

Section 13(b) of the Act requires that to impose liability as a controlling person the person must exercise general control, *i.e.,* the power to direct the management and the policies of the firm, and possess "the power or ability to control the specific transaction or activity upon which the primary violation was predicated, even if such power [is] not exercised.'"[51] "A fundamental purpose of Section 13(b) is to allow the Commission to reach behind the business entity to its controlling individual and to impose liability for violations of the Act directly on such individual as well as on the entity itself."[52]

The Second Circuit has stated that the issue of control is to be determined based upon the totality of the circumstances, including an appraisal of the influence upon management and

---

[49] 7 U.S.C. § 13c(b).

[50] *CFTC v. Baragosh*, 278 F.3d 319, 330 (4th Cir. 2002).

[51] *Monieson v. CFTC*, 996 F.2d 852, 859 (7th Cir. 1993) *quoting Donohoe v. Consolidated Operating & Production Corp.*, 982 F.2d 1130, 1138 (7th Cir. 1992).

[52] *In re Glass*, [1996-1998 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 27,337 (CFTC 1998); *see also In re Apache Trading Corp.*, [1990-92 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 25, 252 at 38, 794 (CFTC 1992).

policies of a corporation by the alleged controlling person.[53] The controlling person must also either (1) knowingly induce, directly or indirectly, the acts constituting the violation; or (2) failed to have acted in good faith.[54] "Knowing inducement" includes any "actual or constructive knowledge of the core activities that constitute the violation at issue and allowing them to continue." [55]

Under these precedents, Danio was a controlling person of the Richmond Global Entities. He was a signatory on six of the seven known Richmond Global bank accounts.[56] A signature card also identifies him as President of Richmond Global Managed LLC.[57] Danio sent correspondence to at least one customer which he signed as the President of Richmond Global Director LLC.[58] Monthly and quarterly statements sent to the Richmond Global Entities' customers prior to January 2004, identified Danio as the Director of Client Services for Richmond Global Director LLC.[59] Monthly and quarterly statements sent to retail customers after January 2004, identified Danio as the Director of Client Services for "Richmond Global."[60] Danio signed at least one letter sent to customers of the Richmond Global Entities as Senior Account Manager of Richmond Global Associates.[61] Danio also dealt with customer complaints

---

[53] *AVCO*, 28 F. Supp.2d at 117 (*citing U.S. v. Corr*, 543 F.2d 1042, 1050 (2d Cir. 1976).
[54] *In re Apache Trading Corp.*¶ 25,252 at 38,794.
[55] *In re Spiegel*, [1987-90 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 24, 103 at 34, 767 (CFTC 1988).
[56] On the two Richmond Global MCA LLC bank accounts, Danio's title was listed as President. On the two Richmond Global Limited bank accounts, his title was listed as bookkeeper. On the Richmond Global Director LLC bank account, he was identified as an authorized signer. On the Richmond Global Managed Account LLC bank account, he was initially identified as an authorized signer and was later identified as Secretary. Roth Decl. at ¶ 2, Complaint ¶ 19.
[57] Roth Decl. at ¶ 2, Complaint at ¶ 56.
[58] *Id.*
[59] *Id.*
[60] *Id.*
[61] *Id.*

and inquiries for the Richmond Global Entities.[62]

As shown in the Complaint and by his plea allocution, Danio possessed the requisite degree of control and both failed to act in good faith and knowingly induced the acts constituting the violations of the anti-fraud provisions of the Act. Therefore, Danio is liable as a controlling person for the fraudulent solicitation practices of the Richmond Global Entities pursuant to Section 13(b) of the Act.

> ### 3.    The Richmond Global Entities' Liability as Principal for the Acts of Their Agents

The Richmond Global Entities are liable for the violations of Section 4b(a)(2) of the Act committed by their officers, employees and agents pursuant to Section 2(a)(1)(B) of the Act,[63] and Section 1.2 of the Commission's Regulations.[64]  Under Section 2(a)(1)(B) of the Act and Section 1.2 of the Commission's Regulations, "the act, omission, or failure of any official, agent, or other person acting for any . . . corporation . . . within the scope of his employment or office shall be deemed the act, omission, or failure of such . . . corporation."[65]  Accordingly, based on the facts described above and pleaded in the Complaint and those facts admitted by Danio, Pappalardo and Vinokur in their respective criminal allocutions, the Richmond Global entities are liable for the violations of Section 4b(a)(2) of the Act described above committed by Danio, Pappalardo, inokur and others because those violations were committed within the scope of their employment or office.[66]

The Commission Would Suffer Severe Prejudice if Motion is not Granted

---

[62] *Id.*

[63] 7 U.S.C. § 2(a)(1)(B) (2002).

[64] 17 CFR § 1.2 (2004).

[65] 7 U.S.C. § 2(a)(1)(B).

[66] *Knight v. First Commercial Group, Inc.,* [1996-1998 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 26,942 at 44,554 (CFTC 1997).

If the Court were to deny the Commission's motion for default, the Richmond Global Entities and Danio would escape all accountability for their fraudulent actions since the defaulting defendants have demonstrated no intention to defend on the merits. Since the Commission has met all three factors, a default judgment should be entered against the Richmond Global Entities and Danio.

## IV. RELIEF REQUESTED

As established above, the Commission is entitled to entry of default judgment imposing the relief requested in the Commission's Complaint including a permanent injunction, a civil monetary penalty, restitution, and a trading ban against the Richmond Global Entities and Danio.

Although a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages.[67] A court, therefore must conduct an inquiry in order to ascertain the amount of damages with reasonable certainty. [68] In determining the appropriate amount to be recovered from a defaulting party, the court may hold an evidentiary hearing or it may rely upon affidavits or other documentary evidence presented by the plaintiff.[69]

In the present case, the record establishes a basis for awarding damages with reasonable certainty, and a damage hearing is therefore unnecessary.

Entry of a Permanent Injunction

The Commission is entitled to injunctive relief upon a showing that a violation of the Act

---

[67] *Credit Lyonnais Sec., (USA), Inc., v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999); *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Crop.*, 973 F.2d 155, 158 (2d Cir. 1992), *cert. denied*, 506 U.S. 1080 (1993).

[68] *Operative Plasterers and Cement Masons Int'l Local 530 Welfare and Insurance Fund v. J&EL Assoc. Inc.*, 2003 U.S. Dist. LEXIS 11412 at *1 (S.D.N.Y. 2003); *In re Industrial Diamonds Antitrust Litigation*, 119 F. Supp.2d 418, 420 (S.D.N.Y. 2000).

[69] *See Tamarin v. Adams Caterers, Inc.*, 13 F.3d 51, 54 (2d Cir. 1993).

has occurred and that there is a reasonable likelihood of future violations.[70] Unlike private actions, which are rooted in the equity jurisdiction of the federal court, Commission actions for injunctive relief are creatures of statute.[71] The injunctive relief contemplated in Section 6c of the Act[72] is remedial in nature, and is designed to prevent injury to the public and to deter future illegal conduct.[73]

In determining whether a "reasonable likelihood" of future violations exists, courts generally have considered the egregiousness of the defendant's actions, the isolated, recurrent or systematic nature of the violations, the degree of scienter involved, the defendant's recognition of the wrongfulness of the conduct, and the likelihood that the defendant's customary business activities will present opportunities for future violations.[74] The likelihood of future violations of law can be inferred from a defendant's past illegal conduct,[75] and the "totality of circumstances and factors suggesting that the infraction might not have been an isolated occurrence are always

---

[70] See CFTC v. Cheung, 1994 WL 583169 at *2 (S.D.N.Y. 1994) (citing CFTC v. British American Commodities Corp., 560 F.2d 135, 141 (2d Cir. 1977), cert. denied, 438 U.S. 905 (1978)).

[71] CFTC v. British American Commodity Options Corp. 560 F.2d 135, 1142 (2d Cir. 1977) quoting SEC v. Management Dynamics, Inc., 515 F.2d 801, 808 (2d Cir. 1975) ("SEC appears in these proceedings not as an ordinary litigant, but as a statutory guardian charged with safeguarding the public interest in enforcing the [federal] laws. Hence, by making the showing required by statute that the defendant 'is engaged or about to engage' in illegal acts, the Commission is seeking to protect the public interest, and 'the standards of the public interest not the requirements of private litigation' measure the propriety and need for injunctive relief'") (internal citation omitted).

[72] 7 U.S.C. § 13a-1(c).

[73] Restrictive concepts ordinarily associated with private litigation, such as proof of irreparable injury or inadequacy of other remedies, are inapplicable to statutory actions brought by the Commission for injunctive relief. See CFTC v. Hunt, 591 F.2d 1211, 1220 (7th Cir. 1979), cert. denied, 442 U.S. 921; CFTC v. British American Commodity Options Corp., 560 F.2d 135, 141-142 (2d Cir. 1977), cert. denied, 438 U.S. 905 (1978); see also Hecht v. Bowles, 321 U.S. 331 (1944); CFTC v. Muller, 570 F.2d 1296, 1300 (5th Cir. 1978) (upholding imposition of a preliminary judgment).

[74] Hunt, 591 F.2d at 1220; SEC v. Holschuh, 694 F.2d 130, 144 (7th Cir. 1980).

[75] Hunt, 591 F.2d at 1220 (past misconduct is "highly suggestive of the likelihood of future violations") quoting SEC v. Management Dynamics, Inc., 515 F.2d, 801, 807 (2d Cir. 1975).

14

relevant."[76]

Here, as demonstrated above, in the Complaint, and in the related criminal allocutions, the Richmond Global Entities and Danio knowingly violated the anti-fraud provisions of the Act. These were not isolated instances, but a pattern of fraudulent behavior that indicates the likelihood of future violations of the Act.

Once the Commission makes its showing of illegality and establishes a reasonable likelihood of future violations, Section 6c(c) of the Act empowers the District Court to enforce compliance with the Act by taking "such action as is necessary to remove the danger of violation..."[77] Based upon the egregious, admitted fraud in this matter, the Commission respectfully requests that this Court issue a permanent injunction prohibiting the Richmond Global Entities and Danio (a) from violating Section 4b(a)(2) of the Act, (b) from trading on or subject to the rules of any trading facility registered with the Commission, and (c) directing the Richmond Global Entities and Danio to  make an accounting of all assets.[78]

Imposition of a Civil Monetary Penalty

Section 6c(d)(1) of the Act[79] permits the district court to assess against a person who violates the Act a civil monetary penalty of not more than the higher of $120,000 or triple the monetary gain to such person for each violation.[80]  Because enforcement proceedings under Section 6c of the Act involve the public interest rather than a private controversy, the equitable jurisdiction of the district court is very broad.[81]  "The purpose of sanctions under the Act is

---

[76] *Id.* at 1220, *quoting SEC v. Management Dynamics, Inc., supra,* 515 F.2d at 807.
[77] *CFTC v. Co Petro Marketing Group, Inc.,* 680 F.2d 566, 583 (9th Cir. 1981).
[78] *See* Complaint, Section VI "Relief Requested,"pp. 7-8.
[79] 7 U.S.C. § 13a-1(d)(1).
[80] *See also* Reg 143.8(2)(ii), 17 C.F.R. § 143.8(2)(ii).
[81] *CFTC v. Hunt,* 591 F.2d 1211, 1223 (7th Cir. 1979), *cert. denied,* 442 U.S. 921 (1979) *citing Porter v. Warner Holding Co.,* 328 U.S. 395, 398 (1946).

twofold: 'to further the [Act]'s remedial policies and to deter others in the industry from committing similar violations.'"[82] This Court should assess a civil monetary penalty that is appropriate to the gravity of the defendants' offenses and sufficient to act as a deterrent.[83]

A civil monetary penalty against the Richmond Global Entities and Danio is warranted because their conduct was intentional and they benefited personally from their fraudulent conduct.  In the Complaint, each of the six Richmond Global Entities was charged with two counts of violating Sections 4b (a)(2)(C)(i) and (iii) of the Act (one for each of the entities' direct conduct, and one under principal-agent liability).  Thus a civil monetary penalty of $240,000 should be imposed against each of the six Richmond Global Entities.  In the Complaint, Danio was charged with two counts of violating Sections 4b (a)(2)(C)(i) and (iii) of the Act (one for his direct conduct, and one as a controlling person of the Richmond Global Entities).  Thus, a civil monetary penalty of $240,000 should be imposed against Danio.  The Court should also assess post judgment interest which should accrue beginning on the date of entry of this Order and shall be determined by using the Treasury Bill rate prevailing on the date of this Order.[84]

<u>Restitution</u>

Federal courts have recognized that the authority granted by Section 6c of the Act permits courts to order restitution and other relief to comply with the basic objectives of the Act.[85] Restitution is intended "to make the damaged persons whole and compensate them for a

---

[82] *Reddy v. CFTC*, 191 F.3d 109, 123 (2d Cir. 1999).
[83] *Miller v. CFTC*, 197 F.3d 1227, 1236 (9th Cir. 1999).
[84] 28 U.S.C. § 1961.
[85] *See e.g., CFTC v. Co Petro, supra,* 680 F.2d at 583; *CFTC v. Hunt, supra,* 591 F.2d at 1222-23; *CFTC v. Skorupskas*, 605 F. Supp. 923, 943-944 (E.D. Mich. 1985) (the other relief granted included the appointment of a permanent receiver and disgorgement).

defendant's wrongful acts."[86] In this matter, the objectives of the Act are best served by ordering full restitution to all persons whose funds were received or disposed of by the defendants in violation of the Act.

Restitution is appropriate here because there is an accurate record of the total losses suffered by the customers of the Richmond Global Entities based on extensive review of the customer accounts by the Court-appointed Receiver's expert.[87] The Court-appointed Receiver's expert conducted an extensive review of the customer accounts and could accurately calculate total losses suffered by the Richmond Global Entities' customers. Thus, the Commission requests that the Court order each of six Richmond Global Entities and Danio to jointly and severally pay restitution in the total amount of $1,788,580, which is the amount, calculated by the Receiver's expert, owed to the Richmond Global Entities' customers as a result of the fraudulent conduct set forth in the Complaint.[88]

In addition, the District Court in the parallel criminal matter has ordered Danio to pay restitution of $400,000 to the Court-appointed receiver for the benefit of the Richmond Global Entities' customers. Any restitution paid by Danio pursuant to the District Court's Order in the parallel criminal matter should offset his restitution obligation under this Court's Order. Because the Commission seeks to repay the damaged customers first and foremost, the Commission respectfully requests that the judgment entered against the Richmond Global Entities and Danio provide that the full amount of money recovered from the defendants in this matter as restitution shall be used to repay the damaged customers before any funds collected are applied to pay any civil monetary penalty.

---

[86] *AVCO,* 28 F.Supp.2d at 121 *citing SEC v. Drexel Burnham Lambert,* 956 F. Supp. 503, 507 (S.D.N.Y. 1997)).
[87] Affidavit of Joseph Merlino dated January 4, 2006 ("Merlino Aff.") at ¶¶ 4-6.
[88] Merlino Aff. at ¶ 30.

## V. CONCLUSION

This Court should enter judgment by default against the Richmond Global Entities and Danio and a permanent injunction against them, together with a civil monetary penalty and the ancillary relief sought by the Commission, including restitution. This relief is both within the power of this Court and appropriate under the present circumstances.

Dated:     New York, New York
           September 17, 2007

Karin N. Roth [KR 2669]
David W. MacGregor
Division of Enforcement
U.S. Commodity Futures Trading Commission
140 Broadway, 19th Floor
New York, New York 10005
Ph. (646) 746-9764
Fax (646) 746-9940
Attorneys for Plaintiff